AEE

**FILED**

**FEBRUARY 28, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PATRICIA MENDEZ,                                )
                                                )
              Plaintiff,               )
                                                )   Case No.
v.                                              )
                                                )
SIEBERT GROUP 1, LLC-S.G. SERIES                )
4, PHILLIP SIEBERT, as owner of Siebert         )
Group 1, LLC-S.G. Series 4 and in his           )
individual capacity, THOMAS ISCHKUM,            )
KAREN ISCHKUM, GSF MORTGAGE                      )
CORPORATION, MORTGAGE                            )
ELECTRONIC REGISTRATION                          )
SYSTEMS, INC., COUNTRYWIDE                       )
HOME LOANS, INC., and UNKNOWN                    )
OCCUPANTS AND NONRECORD                          )
CLAIMANTS,                                       )
                                                )
              Defendants.              )

# 08 C 1216

**JUDGE SHADUR**
**MAGISTRATE JUDGE SCHENKIER**

### NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1331 and 1441(b)

PLEASE TAKE NOTICE that Defendants Seibert Group 1, LLC-S.G. Series 4 ("Siebert Group"), Phillip Siebert, as owner of Siebert Group 1, LLC-S.G. Series 4 and in his individual capacity, Thomas Ischkum, Karen Ischkum, GSF Mortgage Corporation ("GSF"), Mortgage Electronic Registration Systems Inc. ("MERS"), and Countrywide Home Loans, Inc. ("Countrywide") (collectively, "Defendants"), through undersigned counsel, hereby remove the state court action entitled *Patricia Mendez v. Seibert Group 1, LLC-S.G. Series 4, Phillip Siebert, as owner of Siebert Group 1, LLC-S.G. Series 4 and in his individual capacity, Thomas Ischkum, Karen Ischkum, GSF Mortgage Corporation, Mortgage Electronic Registration Systems, Inc., Countrywide Home Loans, Inc., and Unknown Occupants and Nonrecord Claimants*, Civil Action No. 08 CH 00363, filed in the Circuit Court of the Eighteenth Judicial Circuit, DuPage

71775.1

i

County, Chancery Division, pursuant to 28 U.S.C. §§ 1331 and 1441(b).

1.     On January 24, 2008, Plaintiff Patricia Mendez ("Plaintiff") commenced this action against Defendants by filing a complaint in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Chancery Division, bearing Number 08 CH 00363. A copy of all pleadings of which Defendants are aware is attached hereto as Exhibit 1.

2.     Plaintiff alleges that, in early 2007, she was unable to make monthly payments on the mortgage on her property. Compl. ¶ 14. She contacted Defendant Thomas Ischkum, who she alleges arranged for her to sell the property to Defendant Seibert Group 1, LLC-S.G., Series 4 and rent it back, with an option to repurchase. Compl. ¶¶ 14, 15, 18. On April 6, 2007, the Seibert Group transferred the property by warranty deed to Defendants Thomas and Karen Ischkum. Compl. ¶ 21. The Ischkums executed two mortgages on the property with Defendant GSF as mortgagee and with Defendant MERS as nominee. Compl ¶ 21. These mortgages were later assigned to Defendant Countrywide. Compl. ¶ 21. Plaintiff made rent payments on the property until August 2007. Compl. ¶ 22. In September 2007, Mr. Ischkum filed a forcible entry and detainer action against Plaintiff in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois. Compl. ¶ 22.

3.     Plaintiff has asserted the following claims:

- Count I: Equitable Mortgage against Seibert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum

- Count II: Action to Quiet Title against Thomas Ischkum and Karen Ischkum, GSF, MERS, Countrywide, and unknown occupants and nonrecord claimants

- Count III: Truth In Lending Violations (TILA) against Siebert Group and Phillip Siebert

2

- Count IV:  Home Ownership and Equity Protection Act (HOEPA) against Seibert Group and Phillip Siebert

- Count V: Mortgage Rescue Fraud Act against Seibert Group, Phillip Siebert, Thomas Ischkum, and Karen Ischkum

- Count VI: Unconscionability against Seibert Group, Phillip Siebert, GSF, Countrywide, Thomas Ischkum, and Karen Ischkum

- Count VII: Constructive Trust against Seibert Group, Phillip Siebert, GSF, Thomas Ischkum, and Karen Ischkum

- Count VIII: Breach of Fiduciary Duty against Thomas Ischkum and GSF

- Count IX: Illinois Consumer Fraud and Deceptive Business Practices Act against Thomas Ischkum, Phillip Siebert, Seibert Group, and GSF

4.      Defendants MERS and Countrywide were served with the complaint on February 7, 2008.  Defendants Siebert Group, Phillip Seibert, Thomas Ischkum, Karen Ischkum, and GSF were served with the complaint on February 8, 2008.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1441 and § 1446(b).

5.      This case is properly removed to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(b) because it is a civil action in which Plaintiff seeks relief under the Truth In Lending Act, 15 U.S.C. § 1501, *et seq* ("TILA"), and an amendment to TILA, the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"), both of which arise under the laws of the United States.  "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." § 1441(b).

3

6.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's remaining state law claims, which are so related to Plaintiff's TILA and HOEPA claims that they form the same case or controversy.

7.     The United States District Court for the Northern District of Illinois embraces the county in which the state court action is now pending.  Therefore, this action is properly removed to the Northern District of Illinois pursuant to 28 U.S.C. § 93(a) and 28 U.S.C. § 1441(a).

8.     Pursuant to 28 U.S.C. § 1446(d), Defendants are filing a written notice of this removal and a copy of the Notice of Removal with the clerk of the state court in which this action is currently pending and will serve a copy of this notice on all parties to the removed action.

WHEREFORE, Defendants respectfully remove this action from the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Chancery Division bearing Number 08 CH 00363, to this Court pursuant to 28 U.S.C. §§ 1331, 1441 and 1446.

4

Dated: February 28, 2008

Respectfully submitted,

BRYAN CAVE LLP

By: _____
    Steven R. Smith (#3128231)
    Jena M. Valdetero (#6290948)
    161 North Clark Street, Suite 4300
    Chicago, IL  60601-3315
    Telephone:  (312) 602-5000
    Facsimile:  (312) 602-5050

*Attorneys for Countrywide Home Loans,*
*Inc. and Mortgage Electronic Registration*
*Systems, Inc.*

By: _____
    Raymond Ostler
    Gomberg, Sharfman, Gold, and Ostler, P.C.
    208 South LaSalle Street, Suite 1200
    Chicago, IL 60604
    Telephone: (312) 332-6194
    Facsimile: (312) 332-4083

*Attorneys for Seibert Group 1, LLC-S.G.*
*Series 4, Phillip Siebert, Thomas Ischkum,*
*Karen Ischkum, and GSF Mortgage*
*Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing NOTICE OF

REMOVAL was served via U.S. Mail, this 28th day of February, 2008, to the following:

Prairie State Legal Services, Inc.
Elizabeth Newkirk Jahoda
Ana Collazo
Eliot Abarbanel
350 S. Schmale Rd., Suite 150
Carol Stream, IL 60188

*Jena Valdetero*

Jena Valdetero

71775.1

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DU PAGE COUNTY, ILLINOIS

| | |
|---|---|
| PATRICIA MENDEZ, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    2008CH000363 |
| | ) |
| SIEBERT GROUP 1, LLC-S.G. SERIES 4, | ) |
| PHILLIP SIEBERT, as owner of Siebert | )  Status Date: 05/27/08 |
| Group 1, LLC-S.G. Series 4 and in his individual | )  Assigned To: 2007 |
| capacity, THOMAS ISCHKUM, | ) |
| KAREN ISCHKUM, GSF MORTGAGE | ) |
| CORPORATION, MORTGAGE ELECTRONIC | ) |
| REGISTRATION SYSTEMS, INC., | ) |
| COUNTRYWIDE HOME LOANS, INC., | ) |
| and UNKNOWN OCCUPANTS AND | ) |
| NONRECORD CLAIMANTS, | ) |
| | ) |
|     Defendants. | ) |

**FILED**
Jan 24 2008 - 16:29 PM

*Chus Kachnacbas*

CLERK OF THE
18TH JUDICIAL CIRCUIT
DU PAGE COUNTY ILLINOIS

## COMPLAINT TO QUIET TITLE AND FOR OTHER RELIEF

Plaintiff, PATRICIA MENDEZ, by and through her attorneys, Prairie State Legal

Services, Inc., brings this Complaint against Defendants SIEBERT GROUP 1, LLC-S.G.

SERIES 4, PHILLIP SIEBERT, GSF MORTGAGE CORPORATION, INC.; MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC., COUNTRYWIDE HOME LOANS, INC.,

THOMAS ISCHKUM, KAREN ISCHKUM; and all unknown owners and nonrecord claimants,

and in support thereof, states as follows:

## COUNT I:EQUITABLE MORTGAGE

**(against Siebert Group 1, LLC-S.G. Series 4, Phillip Siebert, Thomas Ischkum and Karen**

**Ischkum)**



1.  Plaintiff, Patricia Mendez, lives in Wood Dale, DuPage County, Illinois.

2.  Ms. Mendez is 61 years old and has never purchased real estate. She is unsophisticated in real estate matters.

3.  Defendant Siebert Group 1, LLC-S.G. Series 4 ("Siebert Group") is an Illinois limited liability corporation registered to do business in Illinois.

4.  Defendant GSF Mortgage Corporation ("GSF Mortgage") is a Delaware corporation registered to do business in Illinois. GSF Mortgage is an Illinois Residential Mortgage licensee.

5.  Defendant Phillip Siebert is owner of Siebert Group, GSF Mortgage and Home Buyers Realty. He is licensed in Illinois as a Loan Originator.

6.  Defendant Thomas Ischkum ("Mr. Ischkum") is an employee of GSF Mortgage Corporation and a licensed Loan Originator.

7.  Defendant Karen Ischkum is an employee of GSF Mortgage Corporation.

8.  Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a company that serves as Nominee of mortgage lenders originating or holding mortgage loans. MERS is located at 1595 Springhill Road, Vienna, Virginia 22182. MERS is a Delaware corporation that does business in Illinois.

9.  Defendant Countrywide Home Loans, Inc. ("Countrywide") is a New York corporation registered to do business in Illinois.

10. At all times relevant to this litigation, Ms. Mendez was the owner in fee simple of the real estate situated in DuPage County, Illinois, commonly known as 366 N. Central Ave., Wood Dale, Illinois, and described as follows:

LOT 7 IN BLOCK 14 IN H.O. STONE AND COMPANY'S IRVING PARK

BOULEVARD ADDITION TO WOOD DALE, BEING A SUBDIVISION OF PART OF
THE SOUTHWEST QUARTER OF SECTION 10 AND THE NORTHWEST
QUARTER OF SECTION 15, TOWNSHIP 40 NORTH, RANGE 11, EAST OF THE
THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF
RECORDED DECEMBER 12, 1925 AS DOCUMENT 204618, IN DUPAGE
COUNTY, ILLINOIS.

Permanent Index Number(s): 03-10-320-023.

(hereinafter "the property").

11. Ms. Mendez's parents built the property in 1944 and she has lived there almost her

entire life. She received title to the property in 1993 when it was transferred to her in a quitclaim

deed from her mother.

12. In 1999, Ms. Mendez was contacted by Mr. Ischkum in his capacity as a mortgage

broker for GSF Mortgage, regarding refinancing a mortgage she had obtained in 1997. With Mr.

Ischkum's assistance, she refinanced the mortgage.

13. She subsequently refinanced a mortgage two more times. Mr. Ischkum assisted her

each time. The third refinance, in 2004, resulted in her mortgage being assigned to Chase Home

Finance (hereinafter "Chase").

14. In early 2007, because of unemployment, Ms. Mendez was having trouble making

her monthly mortgage payments of $1054.20 due to her lender, Chase. She paid her mortgage

three weeks late in December 2006, and was unable to pay her mortgage in January 2007,

February 2007 and March 2007. She again contacted Ischkum for assistance. Mr. Ischkum

assured her he "would take care of it" and told her he would help her.

15. A few days after she contacted Mr. Ischkum, Pat Cardoni visited Ms. Mendez at her

home. She had never spoken with Mr. Cardoni before, but he told her he worked with Mr.

3

Ischkum. On information and belief, Mr. Cardoni is an employee of Home Buyers Realty, a company owned by defendant Phillip Siebert. Mr. Cardoni came to Plaintiff's house and had her sign some paperwork. Although Mr. Cardoni is a registered real estate agent, Ms. Mendez was not aware that he was a real estate agent. He explained she would be selling her house and renting it back, with an option to repurchase the house. He did not tell her that Mr. Ischkum was going to buy the house.

16. Mr. Cardoni told her repairs would need to be made to the house before this transaction could begin. He indicated he would arrange for the repairs to be made. A contractor, WMC Contractors, LLC, arranged by Mr. Cardoni or Mr. Ischkum, began making repairs to her house almost immediately.

17. Plaintiff attended the closing on March 16, 2007. She was not represented by counsel. Mr. Ischkum was not present at the closing, but Mr. Cardoni was there.

18. At the closing, Plaintiff signed a warranty deed and sold her property for $165,000 to Siebert Group. Ms. Mendez was not informed at the closing that the property would eventually be sold to Mr. Ischkum. Fees and payouts at the closing included the following:

      a. $108,632 to Chase to pay off her mortgage;

      b. $10,500 to WMC Contractors, LLC, the contractor who made the home repairs;

      c. $11,035.89 to Siebert Group as "prepaid rent";

      d. $550 "document preparation fee" to counsel for Siebert Group;

      e. $9,900 real estate commission to Home Buyers Realty;

      f. $8,863 cash to Plaintiff;

      g. $958 to Nationwide Credit Clearing for credit repair; and

h. $8707.62 to several of Plaintiff's creditors, including credit card companies.
See Exhibit A, attached hereto and made a part hereof, which is a copy of the HUD-1 Statement.

19. Also at the closing, Ms. Mendez signed an Option to Purchase contract. See Exhibit B, attached hereto and made a part hereof, which is a copy of the Option to Purchase. She also signed two leases. The first lease covered one month, March 2007, and is with Siebert Group. See Exhibit C, attached hereto and made a part hereof, which is a copy of the Siebert Group Lease. The second lease began in April 2007 and was with Thomas Ischkum. See Exhibit D, attached hereto and made a part hereof, which is a copy of the Ischkum Lease.

20. On March 25, 2007, GSF Mortgage Corporation had the property appraised. The home appraised for $250,000.

21. On April 6, 2007, Siebert Group transferred the property by warranty deed to Thomas and Karen Ischkum for $173,000. The Ischkums executed two mortgages on the property, both with GSF Mortgage as mortgagee, with Mortgage Electronic Registration Systems, Inc. (MERS) as a nominee. These mortgages were later assigned to Countrywide. Ms. Mendez began paying her "rent" to the Ischkums at the GSF Mortgage Corporation office at the rate of $1001.60 per month. Total "rent" owed according to the lease was $1557.15, and the difference of $555.55 was deducted each month from the $11,000 in prepaid rent plaintiff paid at closing.

22. Thereafter, Plaintiff remained on the property and, despite her continuing unemployment, made her rent payments each month beginning in March until July with assistance from family and friends. In August, 2007, Plaintiff fell behind in her payments, and Mr. Ischkum filed a forcible entry and detainer action in September 2007. She cannot afford the payments, a fact known to Ischkum at the lease's inception, as her rent payment was roughly equivalent to her

5

Chase mortgage payment. The forcible entry and detainer action was subsequently dismissed without prejudice by Mr. Ischkum.

23. Without the relief sought herein, Plaintiff stands to lose all the equity she had in the house, approximately $140,000, as well as title to her childhood home.

24. Pursuant to 765 ILCS 905/5, the transaction between Plaintiff and Siebert Group is an equitable mortgage and not an outright transfer of title.

25. The following facts, among others, indicate that the transaction described in paragraphs 14-19, *supra*, was an equitable mortgage and not a sale:

a. The inadequacy of the consideration. Ms. Mendez received a benefit of approximately $141,000 for a property appraised at a value of $250,000 which was subsequently sold to defendants Ischkum for $173,000. (See paragraphs 18, 20 and 21);

b. The fact that there is a disparity in knowledge and experience between the parties, as the Defendants have a much better understanding of real estate sales, investment, and finance matters than Plaintiff (see paragraphs 2, 5 and 6);

c. The fact that Plaintiff was not represented by counsel (see paragraph 17);

d. The fact that Plaintiff remained in the property after the "sale" of the home and made monthly payments in the nature of payments on a mortgage loan (see paragraph 22);

e. The fact that Plaintiff retained an option to repurchase the home within 20 months, which was in fact in the nature of the repayment of a debt (see paragraph 19); and

f. The fact that Plaintiff sought assistance from Mr. Ischkum, a mortgage broker,

6

because he had assisted her with obtaining loans in the past (see paragraphs 12-13).

26. No foreclosure action has been filed regarding the property by anyone in accordance with the Illinois Mortgage Foreclosure law, 735 ILCS 5/15-1101, *et seq.*

27. This count is being pled against Siebert Group 1, LLC-S.G. Series 4, Phillip Siebert as owner of Siebert Group and in his individual capacity, Thomas Ischkum and Karen Ischkum.

WHEREFORE, Plaintiff prays that the Court:

A.    Void the deed transfer and declare the various sale and leaseback transactions to have created an "equitable mortgage" securing a sum to be determined at trial which represents the amount that Siebert Group LLC paid to Chase to pay off Ms. Mendez's mortgage less all damages suffered by Plaintiff as a result of the causes of action herein alleged;

B.    Declare that legal title to the property remains with plaintiff unless properly foreclosed in accordance with the Illinois Mortgage Foreclosure law, 735 ILCS 5/15-1101 et. seq.

C.    Grant Plaintiff such other and further relief as it deems equitable and proper.


## Count II: ACTION TO QUIET TITLE

### (against Thomas Ischkum and Karen Ischkum, GSF Mortgage Corporation, Mortgage Electronic Registration Systems, Countrywide Home Loans, and unknown occupants and nonrecord claimants )

1-26. Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count II, verbatim, as though fully set forth herein.

27. This count is being pled against Defendants Thomas Ischkum and Karen Ischkum and against Defendant GSF Mortgage Corporation, Defendant Mortgage Electronic Registration

7

Systems and Defendant Countrywide Home Loans.

28.  The occurrences alleged above in paragraphs 1-26 of this Count II cast doubt on plaintiff's title to the property and the defendants mentioned in paragraph 27 of this Count II have asserted interests in the property that are adverse to plaintiff's interest.

29.  Because Defendant Siebert Group had only an equitable mortgage interest in the property, their attempt to transfer title to Thomas Ischkum and Karen Ischkum is void.

30.  Therefore, the Ischkums' attempts to encumber the property is also void.

31.  GSF Mortgage Corporation, as Mr. Siebert's company and the Ischkums' employer, knew that Siebert Group only had an equitable mortgage because GSF Mortgage knew that Ms. Mendez had sold her property for far less than fair market value, retained an option to repurchase, and entered into a lease agreement to remain in the property.

32.  At the time of the issuance of the loan Plaintiff was in actual, open, exclusive, and visible possession of the subject property.   Because occupancy of residential property is public notice of a title interest or claim therein, Defendants had a duty to inquire into the nature of that interest.  Furthermore, GSF Mortgage had actual knowledge of the lease agreement between Plaintiff and Mr. Ischkum as well as Plaintiff's continuing possession and occupancy of the property through the date when GSF Mortgage issued its mortgage loan to the Ischkums.

33.    At the time it issued the mortgage, GSF Mortgage had notice of the claims Plaintiff asserts in this action and actual or constructive notice that at the time of the issuance of its loan, Defendant Siebert Group held at most an equitable mortgage interest in the subject property.

34.  Due diligence on the part of GSF Mortgage would have confirmed through title records, tax records, and Plaintiff herself, that Plaintiff was the true owner of the property who

had never validly transferred her fee simple interest in the subject property, but instead had given Siebert Group an "equitable mortgage" on that property.

WHEREFORE, the Plaintiff prays that the Court:

A.    Void the transfer of title from Siebert Group LLC to Thomas and Karen Ischkum.

B.    Void the mortgage liens executed by Thomas and Karen Ischkum in favor of GSF Mortgage and declare that Thomas Ischkum, Karen Ischkum, GSF Mortgage, Mortgage Electronic Registration Systems and Countrywide Home Loans, do not have any interest in the Property;

C.    In the alternative, declare that the various sale and leaseback transactions created an "equitable mortgage" securing a sum to be determined at trial which represents the amount that Siebert Group paid to Chase to pay off Ms. Mendez's mortgage, less all damages suffered by Plaintiff as a result of the causes of action herein alleged;

D.    In the alternative, declare that the GSF mortgages (now held by Countrywide) constitute at most an equitable assignment of Defendant Siebert Group's equitable mortgage interest in an amount to be determined at trial, which amount shall not exceed the amount that Plaintiff would have owed to Siebert Group;

E.    Further declare, if the Court finds an equitable mortgage exists, that Defendants Siebert Group and Thomas and Karen Ischkum are responsible for any shortfall between: (1) the amount Thomas and Karen Ischkum owe GSF Mortgage and (2) the amount for which Plaintiff is responsible under the equitable mortgage;

F.    Invalidate the title interests of any Unknown Owners or Nonrecord Claimants whose purported interests depend upon the validity of said mortgage lien; and

9

G.    Award such other relief as is equitable and just.

## Count III: Truth in Lending Violations

## (against Siebert Group and Phillip Siebert)

1-26.  Plaintiff repeats and reallages paragraph 1 through 26 of Count I as paragraph 1 through 26 of Count III, verbatim, as though fully set forth herein.

27.  This Count is being pled against Defendant Siebert Group LLC and Defendant Phillip Siebert, individually and as owner of Siebert Group LLC.

28.  The subject transaction, though structured as a deed transfer from Ms. Mendez to Siebert Group, is properly construed as an equitable mortgage loan.

29.  According to the Option to Purchase, the subject transaction is properly construed as a mortgage loan requiring 18 payments of $1001.60 per month beginning in April 2007 and running through September 2008, with a final balloon payment of $218,000 due in October 2008.

30.  Under 12 C.F.R. § 226.18 of the Truth in Lending Act ("TILA"), the amount financed on said mortgage loan is, according to the HUD-1, $141,519.60 (the funds received by Plaintiff).

31.  Given this payoff and the above terms of the mortgage loan, the annual percentage rate ("APR") of Ms. Mendez's loan is 32.9%.  12 C.F.R. § 226.18.

32.  Mortgage loans are covered by the TILA amendment known as the Home Ownership and Equity Protection Act ("HOEPA") if the APR exceeds by more than 8% the applicable Treasury security yield.  15 U.S.C. § 1602(aa).

10

33. Here, the applicable Treasury security yield was not more than 4.83% (the two-year Treasury security yield on February 15, 2007).

34. Ms. Mendez's loan APR of 32.9% exceeds the applicable Treasury rate by more than 28%.

35. Because Ms. Mendez's loan APR of 32.9% exceeds the applicable Treasury security yield by more than 8%, her loan is a high-cost loan covered by HOEPA. 15 U.S.C. § 1602(aa).

36. Thomas Ischkum, an employee of GSF Mortgage and a licensed loan originator, initiated the transaction and therefore brokered the loan between Plaintiff and Siebert Group.

37. Because the loan transaction was covered by HOEPA and was brokered, Siebert Group is therefore a "creditor" for the purposes of TILA. 12 C.F.R. § 226.2.

38. As a result of the subject transaction, Siebert Group acquired an interest in plaintiff's home that secures payment or performance of an obligation as set forth in 15 U.S.C. 1602(aa)(1) and Regulation Z, 12 C.F.R. §226.32.

39. The transaction between Siebert Group and Ms. Mendez was a "consumer credit transaction" as that term is defined in the Truth in Lending Act, 15 U.S.C. § 1602(h), and Regulation Z, 12 C.F.R. § 226.2(a)(12).

40. The transaction between Siebert Group LLC and Ms. Mendez was a "closed-end credit transaction" as that term is defined in 12 C.F.R. §§ 226.17 through 226.24.

41. In the course of issuing a mortgage loan to Ms. Mendez, Siebert Group and Phillip Siebert committed material violations of TILA by failing to make the following disclosures required by TILA and its implementing Regulation Z, 12 C.F.R. §226.18: (a) the Annual

11

Percentage Rate (APR), (b) the amount financed, (c) the itemization of amount financed, (d) the finance charge, (e) the total of payments, and (f) the schedule of payments.

42. Siebert Group and Phillip Siebert committed an additional material violation of TILA by failing to provide a written notice of Ms. Mendez's absolute three-day right to rescind the transaction. 12 C.F.R. §226.23.

43. These material violations give Ms. Mendez an extended three-year right to rescind the equitable loan transaction; such rescission automatically voids the lienhold or security interest held by Siebert Group or its successors. 15 U.S.C. § 1635(f), 12 C.F.R. §226.23(a)(3).

44. Ms. Mendez hereby exercises her right to rescind the subject loan by delivering a copy of this Complaint upon Defendants Siebert Group and Phillip Siebert and to all Defendants through service of this Complaint.

45. Subsequent to rescission, Defendants Siebert Group and Phillip Siebert must take whatever action is required to void the equitable mortgage lien, and they must take steps to ensure the return of all money or property that has been given to anyone in connection with the subject transaction (including but not limited to returning all of Ms. Mendez's monthly payments made on the loan). 15 U.S.C. § 1635.

WHEREFORE, Plaintiff prays that this Court:

A.     Declare the equitable mortgage and lien void as having been properly rescinded;

B.     Require Defendants Siebert Group LLC and Phillip Siebert to take whatever actions are required by 15 U.S.C. §1635 to effectuate voiding the lien and rescinding the equitable mortgage and returning Plaintiff her money or property;

12

C.    Award statutory damages of $2,000 under 15 U.S.C. 1640(a)(2) for the disclosure violation;

D.    Award actual damages of $140,000, the amount of the lost equity in the home, under 15 U.S.C. 1640(a)(1);

E.    Award recoverable costs under 15 U.S.C. §1640(a)(3); and

F.    Award such other relief as is equitable and just.

### Count IV: Home Ownership and Equity Protection Act

#### (against Siebert Group and Phillip Siebert)

1-26.    Plaintiff repeats and reallages paragraph 1 through 26 of Count I as paragraph 1 through 26 of Count IV, verbatim, as though fully set forth herein.

27.    This Count is being pled against Defendant Siebert Group and Defendant Phillip Siebert, individually and as owner of Siebert Group.

28.    The Home Ownership and Equity Protection Act, P.L. No 103-325 (September 23, 1994) amended the Truth in Lending Act by adding what is now 15 U.S.C. §1639. Simultaneously with the passage of this Act, Regulation Z was amended to implement the requirements of this Act.

29.- 40.    Plaintiff realleges paragraphs 29 - 40 of Count III as paragraphs 29 - 40 of this Count IV.

41.    Because Ms. Mendez's loan transaction is covered by the Home Ownership and

13

Equity Protection Act ("HOEPA"), Siebert Group was required to give Ms. Mendez a special cautionary notice setting forth the terms of the loan, including the APR and the required monthly payments, three or more business days prior to the loan closing. 12 C.F.R. §§ 226.31 and 226.32.

42.  Siebert Group did not give Ms. Mendez this required notice.

43.  HOEPA prohibits balloon payments on covered loans with a term of less than five years. 15 U.S.C. § 1639(e), 12 C.F.R. § 226.32(d)(1).

44.  Because Ms. Mendez's loan is covered by HOEPA and requires a balloon payment after less than two years, it violates the HOEPA statute.

45.  Both of the above HOEPA violations give Ms. Mendez an extended three-year right to rescind the equitable loan transaction, which automatically voids the lienhold interest held by Siebert Group. 15 U.S.C. §§ 1635, 12 C.F.R. § 226.23.

46.  Ms. Mendez hereby exercises her right to rescind the subject loan by delivering a copy of this Complaint upon Defendants Siebert Group and Phillip Siebert and to all Defendants through service of this Complaint.

47.  Subsequent to rescission, Defendants Siebert Group and Phillip Siebert must take whatever action is required to void the equitable mortgage lien, and it must take steps to ensure the return of all money or property that has been given to anyone in connection with the subject transaction (including but not limited to returning all of Ms. Mendez's monthly payments made on the loan). 15 U.S.C. § 1635.

48.  HOEPA requires payments made by creditors to home improvement contractors to be made jointly payable to the consumer and the contractor or through a third party escrow agent in

14

accordance with a written agreement signed by the consumer. 15 U.S.C. § 1639(i), 12 C.F.R. § 226.34(a)(1).

49. Because the home improvement contractor, WMC Consulting LLC, was paid directly from the proceeds at the closing, and, on information and belief, the instrument was not also payable to Plaintiff, the payment violates HOEPA.

WHEREFORE, Plaintiff prays that this Court:

A.      Declare the equitable mortgage and lien void as having been properly rescinded;

B.      Require Defendants Siebert Group LLC and Phillip Siebert to take whatever actions are required by 15 U.S.C. §1635 to effectuate voiding the lien and rescinding the equitable mortgage and returning Plaintiff her money or property;

C.      Award statutory damages of $6,000 (consisting of $2,000 for the disclosure violation, $2,000 for the balloon payment violation and $2,000 for the home improvement contractor) under 15 U.S.C. § 1640(a)(2)(A);

D.      Award additional statutory damages in the amount of $32,943.89, the amount of all finance charges and fees paid by Plaintiff under 15 U.S.C. § 1640(a)(4);

E.      Award actual damages in the amount of $140,000, the amount of equity Plaintiff had in the home;

F.      Award recoverable costs under 15 U.S.C. §1640(a)(3); and

G.      Award such other relief as is equitable and just.

15

## Count V: MORTGAGE RESCUE FRAUD ACT

**(against Siebert Group, Phillip Siebert, Thomas Ischkum, and Karen Ischkum)**

1-26.  Plaintiff repeats and realleges paragraph 1 through 26 of Count I as paragraph 1 through 26 of Count V, verbatim, as though fully set forth herein.

27.  Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum are "distressed property purchasers" as that term is defined by the Mortgage Rescue Fraud Act (MRFA), 765 ILCS 940/5.

28.  Defendants Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum violated procedural requirements of the Mortgage Rescue Fraud Act, including but not limited to:

a.  Failure to provide distressed property conveyance contract with required terms, 765 ILCS 940/25, 765 ILCS 940/30; and

b.  Failure to provide notice of right to rescind distressed property conveyance contract, 765 ILCS 940/40.

29.  Defendants Siebert Group LLC, Phillip Siebert, Thomas Ischkum and Karen Ischkum violated substantive requirements of the MRFA set forth at 765 ILCS 940/50, including but not limited to:

a.  Entering into a distressed property conveyance without demonstrating Plaintiff's ability to make the required monthly payments and her reasonable ability to afford the repurchase, 765 ILCs 940/50(b)(1);

b.  Entering into a distressed property conveyance where the Plaintiff failed to receive 82%

16

of the value of the home and failed to receive the opportunity to repurchase the home for no more than 125% of the Defendants' original cost to purchase the home, 765 ILCS 940/50(b)(2);

c.  Arranging a distressed property conveyance that was unfair and commercially unreasonable; 765 ILCS 940/50(b)(3);

d.  Representing that they were acting on behalf of Plaintiff and assisting her to save the house, 765 ILCS 940/50(b)(4);

e.  Accepting a conveyance from Plaintiff and recording the instrument of conveyance before the time for Plaintiff to cancel the transaction had expired, 765 ILCS 940/50(b)(6); and

f.  Causing the property to be conveyed and encumbered without the knowledge or permission of Plaintiff, 765 ILCS 940/50(b)(12).

30.  Defendants Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum are, by virtue of the above, subject to liability under the Consumer Fraud and Deceptive Business Practices Act.  765 ILCs 940/55.

31.  The actions taken by defendants Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum as described above were intentional, willful and wanton.

32.  As a direct and proximate cause of Defendants' actions, Plaintiff has suffered substantial economic harm including, but not limited to, the loss of title to the property, the loss of approximately $140,000 equity in the property, and the further encumbrance of the property due to the mortgages executed by the Ischkums.

17

WHEREFORE, Plaintiff asks this court to enter an order:

    A.  Awarding actual damages of approximately $140,000 in equity taken by the

Defendants, and punitive damages of $200,000;

    B.  Voiding the Deed and subsequent mortgage liens and any other encumbrances;

    C.  Awarding recoverable costs; and

    D.  Awarding such other relief as is equitable and just.

## Count VI: UNCONSCIONABILITY

**(against Siebert Group, Phillip Siebert, GSF Mortgage Corporation, Countrywide, Thomas Ischkum and Karen Ischkum)**

1-26.  Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count VI, verbatim, as though fully set forth herein.

27.  This count is being pled against Defendants Siebert Group, Phillip Siebert, Thomas Ischkum, Karen Ischkum, GSF Mortgage Corporation and Countrywide.

28.  Throughout the course of the subject transaction, an enormous disparity in bargaining power existed between Plaintiff and Defendants.  Plaintiff is an unsophisticated homeowner who was facing desperate financial circumstances and the possible loss of her family home.  In contrast, the Defendants are experienced in business, finance and real estate matters and sought to profit from the disparity in bargaining power, and did so by deliberately taking advantage of Plaintiff.

18

29. The terms of the subject transaction are so one-sided as to be abusive and unconscionable. Defendants, for their benefit, used the disparity in bargaining power to cause a transfer of title to Plaintiff's home for approximately 64% of its value.

30. The circumstances of the transaction did not provide Plaintiff with a reasonable opportunity to understand the terms of the transaction, the likelihood of a default on her part, and the consequences to her if she did default.

WHEREFORE, the Plaintiff prays that this Court:

A.     Declare the aforementioned Deed filed in the DuPage County Recorders office, to be an unlawful and void cloud on title to said real estate, and that it be canceled of record, with sole title to the subject property restored to the Plaintiff;

B.     Declare the Deed issued to Defendants Thomas and Karen Ischkum by Siebert Group LLC to be an unlawful and void cloud on title to said real estate, and that it be canceled of record, with sole title to the subject property restored to Plaintiff;

C.     Decree the title to said real estate to be free and clear of any mortgage lien or interest in favor of GSF Mortgage, Countrywide, or any other purported assignee of GSF Mortgage and order the mortgage constitute an unlawful and void cloud on title to said real estate, and that it be canceled of record;

D.     Decree the subject property to be free of any mortgage or lien subsequent to and/or flowing from the deed;

E.     In the alternative, declare the various transactions to have created an "equitable mortgage" securing a sum to be determined at trial which represents the amount that Siebert

19

Group LLC paid to Chase to pay off Ms. Mendez's mortgage less all damages suffered by Plaintiff as a result of the causes of action herein alleged;

F.    Grant Plaintiff such other and further relief as it deems equitable and proper.

## Count VII: CONSTRUCTIVE TRUST

**(against Siebert Group, Phillip Siebert, GSF Mortgage Corporation, Thomas Ischkum and Karen Ischkum)**

1. - 26. Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count VII, verbatim, as though fully set forth herein.

27.    This count is being pled against Defendants GSF Mortgage Corporation, Siebert Group LLC, Phillip Siebert, Thomas Ischkum and Karen Ischkum.

28.    Ms. Mendez, who has limited experience with real estate transactions and mortgages, trusted Mr. Ischkum with respect to financial affairs related to her home.

29.    Mr. Ischkum gained Ms. Mendez's trust by successfully obtaining loans to solve Ms. Mendez's financial problems.

30.    As a result, Mr. Ischkum gained great influence over Ms. Mendez with respect to financial affairs related to her home.

31.    Mr. Mendez and Ms. Ischkum had a confidential relationship, which imposed fiduciary duties of loyalty and honesty on Mr. Ischkum.

32.    Thomas Ischkum and GSF Mortgage Corporation, through its agents, abused the

20

trust placed in them by Ms. Mendez, and breached their fiduciary duties of loyalty and honesty by obtaining title to Ms. Mendez's property and causing her to lose the equity in the home.

33.    By obtaining title to the subject property, by accepting monthly payments from Ms. Mendez and by further encumbering the subject property through the GSF Mortgage loan and enjoying the proceeds thereof, Defendants Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum have been unjustly enriched by receiving money and property properly belonging to plaintiff under circumstances that, in equity, the Defendants ought not be allowed to retain.

WHEREFORE, Plaintiff prays that this Court:

A.    Declare that a constructive trust is placed on the legal record title to the subject property, the proceeds from the GSF Mortgage loan taken out by Thomas and Karen Ischkum and the payments that Ms. Mendez has paid to Siebert Group LLC and Thomas and Karen Ischkum;

B.    Order the Defendants to transfer title and possession of wrongfully acquired property to the plaintiff;

C.    Award such other relief as is equitable and just.


## COUNT VIII: BREACH OF FIDUCIARY DUTY

### (against Thomas Ischkum and GSF Mortgage)

1-26.    Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count VIII, verbatim, as though fully set forth herein.

27.    This count is pled against Thomas Ischkum and GSF Mortgage.

21

28.  Mr. Ischkum, as a licensed loan originator and employee of GSF Mortgage Corporation, had extensive knowledge of real estate transactions, including purchases and mortgages.

29.  Ms. Mendez, in contrast, has limited experience with real estate transactions and mortgages.

30.  Mr. Ischkum, as an agent of GSF Mortgage, on three separate occasions assisted Ms. Mendez with obtaining a loan.

31.  Mr. Ischkum gained Ms. Mendez's trust by successfully obtaining those loans to solve Ms. Mendez's financial problems.

32.  As a result, Mr. Ischkum gained great influence over Ms. Mendez with respect to financial affairs related to her home.

33.  Mr. Mendez and Ms. Ischkum had a confidential relationship, which imposed fiduciary duties of loyalty and honesty on Mr. Ischkum.

34.  Mr. Ischkum breached these duties when he induced Plaintiff to enter into a transaction whereby he would ultimately obtain title to the property for less than fair market value and Plaintiff would lose the equity she had in the house.

35.  Plaintiff has suffered damages as a result of this conduct, as there is now a cloud on the title of her home and she is facing eviction from her home.

36.  Mr. Ischkum's breach of fiduciary duty was willful, wanton and intentional.

37.  Mr. Ischkum's abuse of his confidential relationship with Mendez is sufficient to

22

establish a constructive trust. <u>Kester v. Crilly</u>, 405 Ill. 425, 431 (1950).

WHEREFORE, Plaintiff requests the Court to enter an order:

A. Declaring that a constructive trust is placed on the legal title of the property for the benefit of Plaintiff;

B. Awarding actual damages in the amount of $140,000 and punitive damages in the amount of $200,000;

C. Ordering Mr. Ischkum to pay Plaintiff's litigation costs; and

D. Awarding such other relief as it deems equitable and just.

**Count IX: Illinois Consumer Fraud and Deceptive Business Practices Act**

**(against Thomas Ischkum, Phillip Siebert, Siebert Group, and GSF Mortgage)**

1-26. Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count IX, verbatim, as though fully set forth herein

27. This count is pled against Thomas Ischkum, Phillip Siebert, Siebert Group and GSF Mortgage.

28. Plaintiff is a "person" and "consumer" as defined by the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1(c) and 505/1(e).

29. At all times relevant to this case, the Defendants were engaged in commerce and trade in Illinois.

30. The Defendants employed deceptive acts and practices and made fraudulent

23

misrepresentations and misstatements and omissions of material fact, with the intent that Plaintiff rely upon such acts, practices, representations, misstatements and omissions of material fact.

31. Said deceptive acts and practices and fraudulent misrepresentations and misstatements and omissions of material fact include but are not limited to the following:

a. Misrepresenting the identity of the purchaser of the property and failing to disclose that Mr. Ischkum would be the owner of the property;

b. Misrepresenting to Plaintiff that the transaction would enable her to improve her credit so that she repurchase the house; and

c. Structuring the transaction as a sale-leaseback with an option to repurchase knowing that default was inevitable, with the intent to strip the equity from the property.

32. Said acts and practices and fraudulent misrepresentations and misstatements and omissions of material fact offend public policy, are immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to Plaintiff.

33. Said acts and practices and fraudulent misrepresentations and misstatements were willful, wanton and intentional.

34. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered substantial economic harm including but not limited to the loss of title to the property, the loss of approximately $140,000 equity in the property, and the further encumbrance of the property due to the mortgages executed by the Ischkums.

WHEREFORE, Plaintiff asks this Court to enter an order:

A.  Awarding actual damages of $140,000, the amount of equity taken by Defendants;

B.  Awarding punitive damages of $200,000;

C.  Voiding the Deed and subsequent mortgage liens and any other encumbrances;

D.  Awarding recoverable costs; and

E.  Awarding such other relief as is equitable and just.

Respectfully submitted,

*Elizabeth Jahoda*

Elizabeth Jahoda
Attorney for Patricia Mendez

PRAIRIE STATE LEGAL SERVICES, INC.
Elizabeth Newkirk Jahoda
Ana Collazo
Eliot Abarbanel
Attorney No. 67545
350 S. Schmale Road, Suite 150
Carol Stream, IL  60188
(630) 690-2130

25

## **VERIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned Patricia Mendez, Plaintiff, certifies that the statements set forth in the foregoing Complaint are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned Plaintiff certifies as aforesaid that she believes the same to be true.

_Patricia Mendez_
Patricia Mendez

SUBSCRIBED AND SWORN TO
before me this 24th day
of January, 2008.

_Diana R Kink_
NOTARY PUBLIC

OFFICIAL SEAL
DIANA R KINK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:

26

| A. | U.S. Department of Housing and Urban Development Settlement Statement | B. Type of Loan | | |
|---|---|---|---|---|

**ATTORNEYS' TITLE GUARANTY FUND, INC**

1. ☐ FHA    2. ☐ FmHA    3. ☐ Conv Unins

| 1 South Wacker 24th Floor Chicago, IL 60606-4654 (312) 372-8361 | 2408 Windsor Place P.O. Box 9136 Champaign, IL 61826-9136 (217) 359-2000 | 2500 South Highland Ave Suite 330 Lombard, IL 60148-5363 (630) 627-7441 | 100 West Main Street Suite 201 Belleville, IL 62220-1554 (618) 277-9440 |
|---|---|---|---|

4. ☐ VA    5. ☐ Conv Ins.    6. ☐ Seller Finance

6. File Number 0702362012239    7. Loan Number

8. Mortgage Ins Case Number

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name, Address, and Tax ID Number of Seller | F. Name and Address of Lender |
|---|---|---|
| Siebert Group LLC-S.G. Series 4 | Patricia Mendez 366 N. Central Avenue Wooddale IL 60191 | Cash Deal |

G. Property Location (Complete address, including legal description, if necessary)

366 N. Central Avenue
Wood Dale, IL 60191

H. Settlement Agent Name, Address and Tax ID Number
John T. Clery
1111 Plaza Drive Suite 580
Schaumburg, IL 60173
Tax ID: 36-3833234
Closer: CHI-MEMBER CLOSER

Place of Settlement
John T. Clery
1111 Plaza Drive Suite 580
Schaumburg, IL 60173

I. Settlement Date
3/16/2007
Fund: 3/16/2007

| J. | Summary of Borrower's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| 100. | Gross Amount Due From Borrower | | 400. | Gross Amount Due to Seller | |
| 101. | Contract Sales Price | $165,000.00 | 401. | Contract Sales Price | $165,000.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement Charges to borrower | $1,317.00 | 403. | | |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| | Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | |
| 106. | County property taxes | | 406. | County property taxes | |
| 107. | County property taxes | | 407. | County property taxes | |
| 108. | Special Assessment | | 408. | Special Assessment | |
| 109. | Homeowner Asc Dues | | 409. | Homeowner Asc Dues | |
| 110. | Flood insurance | | 410. | Flood insurance | |
| 111. | Other taxes | | 411. | Other taxes | |
| 112. | | | 412. | | |
| 113. | | | 413. | | |
| 114. | | | 414. | | |
| 115. | | | 415. | | |
| 116. | | | 416. | | |
| 120. | Gross Amount Due From Borrower | $166,317.00 | 420. | Gross Amount Due to Seller | $165,000.00 |
| 200. | Amounts Paid By Or in Behalf Of Borrower | | 500. | Reductions in Amount Due to Seller | |
| 201. | Deposit or earnest money | | 501. | Excess Deposit | |
| 202. | Principal amount of new loan(s) | | 502. | Settlement Charges to Seller (line 1400) | $32,610.12 |
| 203. | Existing loan(s) taken subject to | | 503. | Existing Loan(s) Taken Subject to | |
| 204. | Loan Amount 2nd Lien | | 504. | Payoff of first mortgage loan | $108,632.34 |
| 205. | | | 505. | Payoff of second mortgage loan | |
| 206. | | | 506. | Earnest money | |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| | Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | |
| 210. | County property taxes  01/01/06 thru 12/31/06 | $3,349.55 | 510. | County property taxes  01/01/06 thru 12/31/06 | $3,349.55 |
| 211. | County property taxes  01/01/07 thru 03/15/07 | $688.50 | 511. | County property taxes  01/01/07 thru 03/15/07 | $688.50 |
| 212. | Special Assessment | | 512. | Special Assessment | |
| 213. | Homeowner Asc Dues | | 513. | Homeowner Asc Dues | |
| 214. | Flood insurance | | 514. | Flood insurance | |
| 215. | Other taxes | | 515. | Other taxes | |
| 216. | Prepaid Rent | $11,035.89 | 516. | Prepaid Rent | $11,035.89 |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. | Total Paid By/For Borrower | $15,073.94 | 520. | Total Reduction Amount Due Seller | $156,316.40 |
| 300. | Cash At Settlement From/To Borrower | | 600. | Cash At Settlement To/From Seller | |
| 301. | Gross Amount due from borrower (line 120) | $166,317.00 | 601. | Gross Amount due to Seller (line 420) | $165,000.00 |
| 302. | Less amounts paid by/for borrower (line 220) | $15,073.94 | 602. | Less reductions in amt. due seller (line 520) | $156,316.40 |
| 303. | Cash From Borrower | $151,243.06 | 603. | Cash To Seller | $8,683.60 |

Previous Edition is Obsolete

Printed at: 1:38 PM March 16, 2007 HUD-1 (3/86)

**EXHIBIT**
_A_

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price | $165,000.00 | @ % = $9,900.00 | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. $9,900.00 | | to Home Buyers Realty | | |
| 702. | | to | | |
| 704. Commission Paid at Settlement | | | | |
| 800. Items Payable in Connection with Loan | | | $0.00 | $9,900.00 |
| 801. Loan Origination Fee   Percent | | to | | |
| 802. Loan Discount | | to | | |
| 803. Appraisal Fee | | to | | |
| 804. Credit Report | | to | | |
| 805. Lender's Inspection Fee | | to | | |
| 806. Application Fee | | to | | |
| 807. Assumption Fee | | to | | |
| 808. Document Preparation Fee | | to | | |
| 809. Tax Service Fee | | to | | |
| 810. Flood Certification Fee | | to | | |
| 900. Items Required by Lender To Be Paid in Advance | | | | |
| 901. Interest from | to | @ /day | | |
| 902. Mortgage Ins Premium for months | | to | | |
| 903. Hazard Ins Premium for years | | to | | |
| 1000. Reserves Deposited With Lender | | | | |
| 1001. Hazard insurance | | months @ | per month | |
| 1002. Mortgage insurance | | months @ | per month | |
| 1003. County property taxes | | months @ | per month | |
| 1004. County property taxes | | months @ | per month | |
| 1005. Special Assessment | | months @ | per month | |
| 1006. Homeowner Ass Dues | | months @ | per month | |
| 1007. Flood insurance | | months @ | per month | |
| 1008. Other taxes | | months @ | per month | |
| 1011. Aggregate Reserve Adjustment | | | | |
| 1100. Title Charges | | | | |
| 1101. Closing/Escrow Fee | | to   ATG/John T. Clery | $275.00 | $275.00 |
| 1102. EPL Endorsement | | to | | |
| 1103. ARM Endorsement | | to | | |
| 1104. Condo Endorsement | | to | | |
| 1105. Location Note | | to | | |
| 1106. Buyer's Attorney fees | | to   John Clery | $395.00 | |
| 1107. Seller's Attorney fees | | to   John T. Clery | | |
| (includes above items numbers: | | | | |
| 1108. Title Charges | | to ATG/John T. Clery ) | | |
| (includes above items numbers: | | ) | | $965.00 |
| 1109. Lender's coverage | $0.00 / $0.00 | | | |
| 1110. Owner's coverage | $165,000.00 / $965.00 | | | |
| 1111. Gap Risk Update | | to ATG/John T. Clery | $50.00 | $50.00 |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording Fee – Deed | Deed $40.00 ; Mortgage | ; Releases | $40.00 | |
| 1202. County tax stamps | Deed $82.50 ; Mortgage | to ATG Fees and Transfers | | $82.50 |
| 1203. State tax stamps | Deed $165.00 ; Mortgage | to ATG Fees and Transfers | | $165.00 |
| 1204. City tax stamps | | to | | |
| 1205. Record Assignment of Mortgage | | to | | |
| 1206. Release Status Verification Fee | | to   ATG Fees and Transfers | $0.00 | $39.00 |
| 1207. State Regulatory Fee | | to   ATG Fees and Transfers | $0.00 | $3.00 |
| 1300. Additional Settlement Charges | | | | |
| 1301. Survey | | to   Schaf-Sedig Land Surveyors | | $395.00 |
| 1302. Pest Inspection | | to | | |
| 1303. Delivery Handling Fee | | to   ATG Fees and Transfers | | $20.00 |
| 1304. Doc Prep. Fee | | to   John T. Clery | | $550.00 |
| 1305. Payment as Directed | | to   Nicor Gas | | $365.00 |
| 1306. Roof/Bath Credit | | to   WMC, LLC | | $10,500.00 |
| 1307. Payment as Directed | | to   Discover Financial Services | | $2,536.00 |
| 1308. Payment as Directed | | to   Capital One | | $1,450.00 |
| 1309. Payment as Directed | | to   Capital One | | $1,030.00 |
| 1310. Payment as Directed | | to   Cingular | | $411.62 |
| 1311. Payment as Directed | | to   HSBC | | $954.00 |
| 1312. Payment as Directed | | to   GEMB/WALMART | | $861.00 |
| 1313. Payment as Directed | | to   Capital One | | $793.00 |
| 1314. Payment as Directed | | to   Capital One | | $206.00 |
| 1315. Payment as Directed | | to   FFCC | | $84.00 |
| 1316. Payment as Directed | | to   FFCC | | $17.00 |
| 1317. LLC Attorney Fee | | to   John T. Clery | $300.00 | |
| 1318. LLC Fees | | to   CSC | $257.00 | |
| 1319. Payment as Directed | | to   Nationwide Credit & CO. | | $958.00 |
| 1320. | | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $1,317.00 | $32,610.12 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1 to 5 of this HUD-1 Settlement Statement.

Siebert Group LLC-S.G. Series 4

By: _____

_____
SETTLEMENT AGENT CERTIFICATION

_____
Patricia Mendez

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

_____    3-16-07
Settlement Agent                         Date

Warning: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Special Instructions: _____

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252, and/or Schedule D (Form 1040).

ATTORNEYS' TITLE GUARANTY FUND, INC.

Previous Edition is Obsolete HUD-1 (3/91)

## OPTION TO PURCHASE

It is hereby agreed that Patricia Mendez (hereinafter known as Mendez) shall have the option to purchase from Siebert Group 1, LLC and or its assigns-SG Series 4(hereinafter called Siebert Group 1, LLC and or its assigns) the real estate commonly known as 366 N. Central Avenue, Wood Dale, IL  60191 upon the terms as herein noted.

1) If Mendez exercises her Option to Purchase the property, the purchase price shall be $218,000.  Mendez shall have said Option to Purchase until October 6, 2008.

2) Mendez, if she exercises her option to purchase this property, shall give Siebert Group 1, LLC and or its assigns and or its assigns in writing, sixty days notice of her election to exercise her option to purchase. Therefore, if Mendez has not notified Siebert Group 1, LLC and or its assigns of her intention to exercise her Option to Purchase this property by August 6, 2008, she loses her Option rights to purchase this Property.  Furthermore, if Mendez has not notified Siebert Group 1, LLC and or its assigns by August 6, 2008, she shall have no right to purchase this property and Siebert Group 1, LLC and or its assigns may begin showing this property to prospective purchasers.

3) Notice of Mendez's intent to exercise her Option to Purchase shall be by certified mail; return receipt requested, to Siebert Group 1, LLC and or its assigns at 999 Plaza Drive, Suite 710, Schaumburg, Illinois 60173 or at an address designated by Siebert Group 1, LLC and or its assigns.

4) Mendez shall be responsible for all utilities and all repairs. Mendez shall obtain at her expense a renters insurance policy naming Siebert Group 1, LLC and or its assigns as additional insured covering all personal property in an amount that is acceptable to Siebert Group 1, LLC and or its assigns and including liability coverage.

5) Mendez will pay rent to Siebert Group 1, LLC and or its assigns, $1035.89 per month for rent.  This amount is rent up to and including April 6, 2007. Beginning April 7, 2007, Mendez shall pay the Tom Ischkum and or his assigns $1,557.15 per month minus a subsidy amount of $555.55 for a total of $1,001.60 to be paid to Tom Ischkum and or his assigns for 18 months.

6) If Mendez exercises her Option to Purchase then the closing shall take place no later than October 6, 2008.

7) If Mendez is at any time in default of the Lease or more than 30 days behind in a monthly payment, her Option Rights to Purchase shall terminate.

8) This Option to Purchase is assignable at any time by Siebert Group 1, Inc.

9) This Option to Purchase may be extended for six months by mutual agreement of the parties.  If the Option to Purchase is extended for a six month period, the rent amount shall be $1,557.15 per month.

In witness whereof, the parties have executed this OPTION TO PURCHASE on this _____ day of _3 / 1 /o/ _____, 2006.

_Patricia Mendez_
Patricia Mendez

_Fl__ferh_____
Siebert Group 1, LLC and or its
assigns—S.G. Series 4

**EXHIBIT**

B

GEORGE E. COLE®          No. 14 REC
LEGAL FORMS             March 1996

# RESIDENCE LEASE

CAUTION: Consult a lawyer before using or
acting under this form. Neither the publisher
nor the seller of this form makes any
warranty with respect thereto, including any
warranty of merchantability or fitness for a
particular purposes.

| TERM OF LEASE | |
|---|---|
| BEGINNING | ENDING |
| March 16, 2007 | April 6, 2007 |

**Above Space for Recorder's use only**

| DATE OF LEASE | ~~MONTHLY~~ RENT | SECURITY DEPOSIT |
|---|---|---|
| March 16, 2007 | $1,035.89 | n/a |

*If none, write "NONE;" paragraph 2 of this lease then INAPPLICABLE.

### LESSEE

NAME • Patricia Mendez
APT. NO. • 366 N. Central Avenue
ADDRESS OF • Wood Dale, IL 60191
PREMISES •

### LESSOR

NAME AND • Siebert Group 1, LLC—S G Series 4
BUSINESS • 999 Plaza Drive, Suite 710
ADDRESS • Schaumburg, IL 60191

In consideration of the mutual covenants and agreements herein stated, Lessor hereby leases to Lessee and Lessee hereby leases from Lessor for a private dwelling the designated above (the "Premises"), together with the appurtenances thereto, for the above Term.

## LEASE COVENANTS AND AGREEMENTS

1. RENT. Lessee shall pay Lessor or Lessor's agent as rent for the Premises the sum stated above in the box designated "~~MONTHLY~~ RENT", ~~monthly~~ in advance, until termination of this lease, at Lessor's address as Lessor may designate in writing. The first payment is due ~~on or before~~    at closing                , 19    , ~~and~~ ~~subsequent payments on the~~ _____ ~~day of each succeeding month.~~

2. SECURITY DEPOSIT. Lessee has deposited with Lessor the Security Deposit stated above as security for the performance of all covenants and agreements of Lessee hereunder. Lessor may at any time or times apply all or any portion thereof in payment of any amounts due Lessor from Lessee; and upon Lessor's demand Lessee shall in such case during the term of the lease promptly deposit with Lessor such additional amounts as may then be required to bring the Security Deposit up to the full amount stated above. Upon termination of the of the lease and full performance of all Lessee's obligations hereunder, so much of the Security Deposit as remains unapplied shall be returned to Lessee. This deposit does not bear interest unless and except as required by law. Where

**EXHIBIT**

C

all or a portion of the Security Deposit is applied by Lessor as compensation for property damage, Lessor when and as required by law shall provide to Lessee an itemized statement of such damage and of the estimated or actual cost of repairing same. If Lessor utilizes his or her own labor to repair any damage caused by the Lessee, the Lessor may include the reasonable cost of his or her labor to repair such damage.

3. CONDITION OF PREMISES. Lessee acknowledges that the Premises are in good repair, except as herein otherwise specified, and that no representations as to the condition or repair thereof have been made by the Lessor, or Lessor's agent, prior to or at the execution of this lease, that are not herein expressed.

4. REPAIR. The Lessee covenants and agrees with Lessor to take good care of and keep in clean and healthy condition the Premises and their fixtures, and to commit or suffer no waste therein; that no changes or alterations of the Premises shall be made or partitions erected, nor walls papered without the consent in writing of Lessor; that Lessee will make all repairs required to the walls, windows, glass, ceilings, paint, plastering, plumbing work, pipes, and fixtures belonging to the Premises, whenever damage or injury to the same shall have resulted from misuse or neglect; and Lessee agrees to pay for any and all repairs that shall be necessary to put the Premises in the same condition as when he entered therein, reasonable wear and loss by fire excepted, and the expense of such repairs shall be included within the terms of this lease and any judgment by confession entered therefor.

5. LIMITATION OF LIABILITY. Except as provided by Illinois statute, the Lessor shall not be liable for any damage occasioned by failure to keep the Premises in repair, and shall not be liable for any damage done or occasioned by or from plumbing, gas, water, steam or other pipes, sewerage, or the bursting, leaking or running from any cistern, tank, washstand, water closet or waste pipe, in, above, upon or about the Premises, nor for damage occasioned by water, snow or ice, being upon or coming through the roof, skylight, trap door or otherwise, nor for any damage arising from acts or neglect of any owners or occupants of adjacent or contiguous property.

6. USE; SUBLET; ASSIGNMENT. Lessee will not allow Premises to be used for any purpose that will increase the rate of insurance thereon, nor for any purpose other than that hereinbefore specified, nor to be occupied, in whole or in part, by any other person, and will not sublet the same, or any part thereof, nor assign this lease, without in each case the Lessor's written consent had, and will not permit any transfer, by operation of law, of the interest in the Premises acquired through this lease; and will not permit Premises to be used for unlawful purpose or purposes that will injure the reputation of the same or of the neighborhood; will keep no dogs, cats or other animals or pets in or about the Premises; will not permit the Premises to remain vacant or unoccupied for more than ten consecutive days; and will not permit any alteration of or upon any part of the Premises, nor allow any signs or placards posted or placed thereon, except by written consent of the Lessor; all alterations and additions to the Premises shall remain for the benefit of the Lessor unless otherwise provided in said consent.

7. RIGHT TO RELET. If Lessee shall abandon or vacate the Premises, the same shall be re-let by Lessor for such rent and upon such terms as Lessor may see fit, subject to Illinois statute; and if a sufficient sum shall not thus be realized, after paying the expenses of such re-letting and collecting, to satisfy the rent hereby reserved, Lessee agrees to satisfy and pay all deficiency.

8. HOLDING OVER. If the Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse of time or otherwise, then the Lessor may at Lessor's option within thirty days after the termination of the term serve written notice upon Lessee that such holding over constitutes either (a) renewal of this lease for one year, and from year to year thereafter, at double the rental specified under Section 1 for such period, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified under Section 1, or (c) creation of a tenancy at sufferance, at a rental of _____ dollars per day for the time Lessee remains in possession. If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee.

9. FLAMMABLES. Naphtha, benzine, benzole, gasoline, benzine-varnish, gunpowder, fireworks, nitroglycerine, phosphorus, saltpeter, nitrate of soda, camphene, spirit-gas, or any flammable fluid or oil, shall not be allowed or used on the Premises without the written permission of the Lessor.

10. TAXES AND UTILITIES. Lessee shall pay (in addition to the rent above specified) all water taxes and all gas, electricity and power bills, levied or charged on or in respect of the Premises, for and during the term of this lease, and in case no water taxes are levied specifically on or in respect of the Premises, to pay the _____ part of all water taxes levied or charged on or in respect of the building of which the Premises constitutes a part; and in case said water taxes and gas, electricity and power bills shall not be paid when due, Lessor shall have the right to pay the same, which amount so paid, together with any sums paid by Lessor to keep the premises and their appurtenances in good condition as hereinbefore specified, shall be due and payable with the next installment of rent due thereafter under the lease.

No. 14-REC

11. SIGNS. Lessor reserves the right to put up a "To Rent" sign sixty days prior to the expiration of this lease and a "For Sale" sign at any time during the term of this lease.

12. COMPLIANCE. Lessee will in every respect comply with the ordinances of the municipality aforesaid, with the rules and orders of the health officers thereof, with the orders and requirements of the police department, with the requirements of any underwriters' association so as not to increase the rates of insurance upon the building and contents thereof, and with the rules and orders of the fire department in respect to any matters coming within their jurisdiction.

13. DEFAULT BY LESSEE. If default be made in the payment of the above rent, or any part thereof, or in any of the covenants herein contained to be kept by the Lessee, Lessor may at any time thereafter at his election declare said term ended and reenter the Premises or any part thereof, with or (to the extent permitted by law) without notice or process of law, and remove Lessee or any persons occupying the same, without prejudice to any remedies which might otherwise be used for arrears of rent, and Lessor shall have at all times the right to distrain for rent due, and shall have a valid and first lien upon all personal property which Lessee now owns, or may hereafter acquire or have an interest in, which is by law subject to such distraint, as security for payment of the rent herein reserved.

14. RENT AFTER NOTICE OR SUIT. After the service of notice, or the commencement of a suit, or after final judgment for possession of the Premises, the Lessor may receive and collect any rent due, and the payment of said rent shall not waive or affect said notice, said suit, or said judgment.

15. FIRE AND CASUALTY. In case the Premises shall be rendered untenantable by fire or other casualty, Lessor may at his option terminate this lease, or repair the Premises within thirty days, and failing so to do, or upon the destruction of the Premises by fire, the term hereby created shall cease and determine.

16. PAYMENT OF COSTS. Except as provided by Illinois law, the Lessee further covenants and agrees to pay and discharge all reasonable costs, attorneys' fees and expenses that shall be made and incurred by Lessor in enforcing the covenants and agreements of this lease.

17. PLURALS; SUCCESSORS. The words "Lessor" and "Lessee" wherever herein occurring and used shall be construed to mean "Lessors" or "Lessees" in case more than one person constitutes either party to this lease, and all such persons shall be jointly and severally liable hereon; and all the covenants and agreements herein contained shall be binding upon, and inure to, their respective successors, heirs, executors, administrators and assigns and be exercised by his or their attorney or agent.

18. SEVERABILITY. If any clause, phrase, provision or portion of this lease or the application thereof to any person or circumstance shall be invalid, or unenforceable under applicable law, such event shall not affect, impair or render invalid or unenforceable the remainder of this lease nor any other clause, phrase, provision or portion hereof, nor shall it affect the application of any clause, phrase, provision or portion hereof to other persons or circumstances.

WITNESS the hands and seals of the parties hereto, as of the Date of Lease stated above.

Please print or type name(s) below signature(s).

LESSEE:

_____ (SEAL)

_____ (SEAL)

LESSOR:

_____ (SEAL)

_____ (SEAL)

## ASSIGNMENT BY LESSOR

On this _____, 19_____, for value received, Lessor hereby transfers, assigns and sets over to _____, all right, title and interest in and to the above Lease and the rent thereby reserved, except rent due and payable prior to _____, 19_____.

_____ (SEAL)

_____ (SEAL)

No. 14-REC

## GUARANTEE

On this _____, 19_____, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned Guarantor hereby guarantees the payment of rent and performance by Lessee, Lessee's heirs, executors, administrators, successors or assigns of all covenants and agreements of the above Lease.

_____(SEAL)

_____(SEAL)

State of Illinois, County of _____ ss.

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that

IMPRESS
SEAL
HERE

personally known to me to be the same person ___ whose name _____ subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that ___ he ___ signed, sealed and delivered the said instrument as _____ free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of right of homestead.

GIVEN under my hand and official seal this _____ day of _____, 19_____.

Commission expires _____, 19_____

_____
Notary Public

This document was prepared by _____
                                    (Name and Address)

Mail to: _____
           (Name and Address)

_____
(City)                                          (State)                    (Zip Code)

Or Recorder's Office  Box No. _____

Legal Description: _____

Permanent Real Estate Index Number(s) _____

Address(es) of Real Estate: _____

Page 4

No. 14-REC

GEORGE E. COLE®
LEGAL FORMS

No. 14 REC
March 1996

## RESIDENCE LEASE

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purposes.

| TERM OF LEASE | |
|---|---|
| BEGINNING | ENDING |
| April 7, 2007 | October 6, 2008 |

Above Space for Recorder's use only

| DATE OF LEASE | MONTHLY RENT | SECURITY DEPOSIT |
|---|---|---|
| April 6, 2007 | $1,557.15 minus a subsidy amount of $555.55 for a total of $1,001.60 | |

*If none, write "NONE;" paragraph 2 of this lease then INAPPLICABLE.

**LESSEE**

NAME
APT. NO:
ADDRESS OF
PREMISES

Patricia Mendez
366 N. Central Avenue
Wood Dale, IL 60191

NAME AND
BUSINESS
ADDRESS

**LESSOR**

Tom Ischkum or his assigns
999 Plaza Drive, Suite 710
Schaumburg, IL 60173

In consideration of the mutual covenants and agreements herein stated, Lessor hereby leases to Lessee and Lessee hereby leases from lessor for a private dwelling the designated above (the "Premises"), together with the appurtenances thereto, for the above Term.

## LEASE COVENANTS AND AGREEMENTS

1. RENT. Lessee shall pay Lessor or Lessor's agent as rent for the Premises the sum stated above in the box designated "MONTHLY RENT", monthly in advance, until termination of this lease, at Lessor's address as Lessor may designate in writing. The first payment is due on or before ___April 6, 2007___ , $$xxxxxxx , and subsequent payments on the ___5th___ day of each succeeding month.  A late charge of 5% will be charged if the rent payment is not received by the 11th of each month.

2. SECURITY DEPOSIT. Lessee has deposited with Lessor the Security Deposit stated above as security for the performance of all covenants and agreements of Lessee hereunder. Lessor may at any time or times apply all or any portion thereof in payment of any amounts due Lessor from Lessee, and upon Lessor's demand Lessee shall in such case during the term of the lease promptly deposit with Lessor such additional amounts as may then be required to bring the Security Deposit up to the full amount stated above. Upon termination of the of the lease and full performance of all Lessee's obligations hereunder, so much of the Security Deposit as remains unapplied shall be returned to Lessee. This deposit does not bear interest unless and except as required by law. Where



**EXHIBIT**

**D**

E1:01 (IBS)0002-12-130

all or a portion of the Security Deposit is applied by Lessor as compensation for property damage, Lessor when and as required by law shall provide to Lessee an itemized statement of such damage and of the estimated or actual cost of repairing same. If Lessor utilizes his or her own labor to repair any damage caused by the Lessee, the Lessor may include the reasonable cost of his or her labor to repair such damage.

3. CONDITION OF PREMISES. Lessee acknowledges that the Premises are in good repair, except as herein otherwise specified, and that no representations as to the condition or repair thereof have been made by the Lessor, or Lessor's agent, prior to or at the execution of this lease, that are not herein expressed.

4. REPAIR. The Lessee covenants and agrees with Lessor to take good care of and keep in clean and healthy condition the Premises and their fixtures, and to commit or suffer no waste therein; that no changes or alterations of the Premises shall be made or partitions erected, nor walls papered without the consent in writing of Lessor; that Lessee will make all repairs required to the walls, windows, glass, ceilings, paint, plastering, plumbing work, pipes, and fixtures belonging to the Premises, whenever damage or injury to the same shall have resulted from misuse or neglect; and Lessee agrees to pay for any and all repairs that shall be necessary to put the Premises in the same condition as when he entered therein, reasonable wear and loss by fire excepted; and the expense of such repairs shall be included within the terms of this lease and any judgment by confession entered therefor.

5. LIMITATION OF LIABILITY. Except as provided by Illinois statute, the Lessor shall not be liable for any damage occasioned by failure to keep the Premises in repair, and shall not be liable for any damage done or occasioned by or from plumbing, gas, water, steam or other pipes, sewerage, or the bursting, leaking or running from any cistern, tank, washstand, water closet or waste pipe, in, above, upon or about the Premises, nor for damage occasioned by water, snow or ice, being upon or coming through the roof, skylight, trap door or otherwise, nor for any damage arising from acts or neglect of any owners or occupants of adjacent or contiguous property.

6. USE; SUBLET; ASSIGNMENT. Lessee will not allow Premises to be used for any purpose that will increase the rate of insurance thereon, nor for any purpose other than that hereinbefore specified, nor to be occupied, in whole or in part, by any other person, and will not sublet the same, or any part thereof, nor assign this lease, without in each case the Lessor's written consent had, and will not permit any transfer, by operation of law, of the interest in the Premises acquired through this lease; and will not permit Premises to be used for unlawful purpose or purposes that will injure the reputation of the same or of the neighborhood; will keep no dogs, cats or other animals or pets in or about the Premises; will not permit the Premises to remain vacant or unoccupied for more than ten consecutive days; and will not permit any alteration of or upon any part of the Premises, nor allow any signs or placards posted or placed thereon, except by written consent of the Lessor: all alterations and additions to the Premises shall remain for the benefit of the Lessor unless otherwise provided in said consent.

7. RIGHT TO RELET. If Lessee shall abandon or vacate the Premises, the same shall be re-let by Lessor for such rent and upon such terms as Lessor may see fit, subject to Illinois statute; and if a sufficient sum shall not thus be realized, after paying the expenses of such re-letting and collecting, to satisfy the rent hereby reserved. Lessee agrees to satisfy and pay all deficiency.

8. HOLDING OVER. If the Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse of time or otherwise, then the Lessor may at Lessor's option within thirty days after the termination of the term serve written notice upon Lessee that such holding over constitutes either (a) renewal of this lease for one year and from year to year thereafter, at double the rental specified under Section I for such period, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified under Section I, or (c) creation of a tenancy at sufferance, at a rental of _____ dollars per day for the time Lessee remains in possession. If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee.

9. FLAMMABLES. Naphtha, benzine, benzole, gasoline, benzine-varnish, gunpowder, fireworks, nitroglycerine, phosphorus, saltpeter, nitrate of soda, camphene, spirit-gas, or any flammable fluid or oil, shall not be allowed or used on the Premises without the written permission of the Lessor.

10. TAXES AND UTILITIES. Lessee shall pay (in addition to the rent above specified) all water taxes and all gas, electricity and power bills, levied or charged on or in respect of the Premises, for and during the term of this lease, and in case no water taxes are levied specifically on or in respect of the Premises, to pay the _____ part of all water taxes levied or charged on or in respect of the building of which the Premises constitutes a part; and in case said water taxes and gas, electricity and power bills shall not be paid when due, Lessor shall have the right to pay the same, which amount so paid, together with any sums paid by Lessor to keep the premises and their appurtenances in good condition as hereinbefore specified, shall be due and payable with the next installment of rent due thereafter under the lease.

No. 14-REC

11. SIGNS. Lessor reserves the right to put up a "To Rent" sign sixty days prior to the expiration of this lease and a "For Sale" sign at any time during the term of this lease.

12. COMPLIANCE. Lessee will in every respect comply with the ordinances of the municipality aforesaid, with the rules and orders of the health officers thereof, with the orders and requirements of the police department, with the requirements of any underwriters' association so as not to increase the rates of insurance upon the building and contents thereof, and with the rules and orders of the fire department in respect to any matters coming within their jurisdiction.

13. DEFAULT BY LESSEE. If default be made in the payment of the above rent, or any part thereof, or in any of the covenants herein contained to be kept by the Lessee, Lessor may at any time thereafter at his election declare said term ended and reenter the Premises or any part thereof, with or (to the extent permitted by law) without notice or process of law, and remove Lessee or any persons occupying the same, without prejudice to any remedies which might otherwise be used for arrears of rent, and Lessor shall have at all times the right to distrain for rent due, and shall have a valid and first lien upon all personal property which Lessee now owns, or may hereafter acquire or have an interest in, which is by law subject to such distraint, as security for payment of the rent herein reserved.

14. RENT AFTER NOTICE OR SUIT. After the service of notice, or the commencement of a suit, or after final judgment for possession of the Premises, the Lessor may receive and collect any rent due, and the payment of said rent shall not waive or affect said notice, said suit, or said judgment.

15. FIRE AND CASUALTY. In case the Premises shall be rendered untenantable by fire or other casualty, Lessor may at his option terminate this lease, or repair the Premises within thirty days, and failing so to do, or upon the destruction of the Premises by fire, the term hereby created shall cease and determine.

16. PAYMENT OF COSTS. Except as provided by Illinois law, the Lessee further covenants and agrees to pay and discharge all reasonable costs, attorneys' fees and expenses that shall be made and incurred by Lessor in enforcing the covenants and agreements of this lease.

17. PLURALS; SUCCESSORS. The words "Lessor" and "Lessee" wherever herein occurring and used shall be construed to mean "Lessors" or "Lessees" in case more than one person constitutes either party to this lease, and all such persons shall be jointly and severally liable hereon; and all the covenants and agreements herein contained shall be binding upon, and inure to, their respective successors, heirs, executors, administrators and assigns and be exercised by his or their attorney or agent.

18. SEVERABILITY. If any clause, phrase, provision or portion of this lease or the application thereof to any person or circumstance shall be invalid, or unenforceable under applicable law, such event shall not affect, impair or render invalid or unenforceable the remainder of this lease nor any other clause, phrase, provision or portion hereof, nor shall it affect the application of any clause, phrase, provision or portion hereof to other persons or circumstances.

WITNESS the hands and seals of the parties hereto, as of the Date of Lease stated above.

Please print or type name(s) below signature(s).

LESSEE:

_Patricia Mendez_____ (SEAL)

LESSOR:

_____ (SEAL)

_____ (SEAL)          Thomas IschKum

_____ (SEAL)

## ASSIGNMENT BY LESSOR

On this _____ 19_____, for value received, Lessor hereby transfers, assigns and sets over to _____ all right, title and interest in and to the above Lease and the rent thereby reserved, except rent due and payable prior to _____, 19_____.

_____ (SEAL)

_____ (SEAL)

No. 14-REC

# GUARANTEE

On this _____, 19_____ in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned Guarantor hereby guarantees the payment of rent and performance by Lessee, Lessee's heirs, executors, administrators, successors or assigns of all covenants and agreements of the above Lease.

_____ (SEAL)

_____ (SEAL)

State of Illinois, County of _____ ss.

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that

_____

IMPRESS
SEAL
HERE

personally known to me to be the same person ___ whose name _____ subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that ___ he ___ signed, sealed and delivered the said instrument as _____ free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of right of homestead.

GIVEN under my hand and official seal this _____ day of

_____, 19_____.

Commission expires _____, 19_____

_____
Notary Public

This document was prepared by _____
(Name and Address)

Mail to: _____
(Name and Address)

_____
(City)                    (State)        (Zip Code)

Or Recorder's Office Box No. _____

Legal Description:

Permanent Real Estate Index Number(s) _____

Address(es) of Real Estate: _____

No. 14-REC

51:01 (18S)0002-12-130
TOTAL P.05

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

THOMAS ISCHKUM,                      )
    Plaintiff,                       )
                               )          2008 LM 356
    vs.                              )
                               )
PATRICIA MENDEZ,                     )
    Defendant.                       )
                               )

_____  )

PATRICIA MENDEZ,                     )
    Plaintiff,                       )
                               )
    v.                               )
                               )
SIEBERT GROUP 1, LLC-S.G. SERIES 4,  )          2008 CH 363
PHILLIP SIEBERT, as owner of Siebert )
Group 1, LLC-S.G. Series 4 and in his individual )
capacity, THOMAS ISCHKUM,            )
KAREN ISCHKUM, GSF MORTGAGE          )
CORPORATION, MORTGAGE ELECTRONIC     )
REGISTRATION SYSTEMS, INC.,          )
COUNTRYWIDE HOME LOANS, INC.,        )
and UNKNOWN OCCUPANTS AND            )
NONRECORD CLAIMANTS,                 )
    Defendants.                      )

## NOTICE OF MOTION

TO:   Raymond Ostler               Mortgage Electronic Registration Systems, Inc.
      Gomberg, Sharfman, Gold & Ostler   C T Corporation Systems, Agent
      208 S. LaSalle, Suite 1200         208 S. LaSalle St., Suite 814
      Chicago, IL 60604-1003            Chicago, IL 60604

      Countrywide Home Loans
      Prentice Hall Corporation, Agent
      33 N. LaSalle St.
      Chicago, IL 60602

You are hereby notified that on March 5, 2008, at 9:00 a.m., or as soon thereafter as plaintiff may be heard, I shall appear before the Honorable Judge Wheaton in Court Room No. 2007, or any other judge as may be holding court in her absence, in the court room usually occupied by her in the DuPage Judicial Center, 505 N. County Farm Road, Wheaton, IL 60187 and present the attached Motion to Consolidate, at which time and place you may appear as you see fit to do.


PATRICIA MENDEZ

BY: _Elizabeth Newkirk Jahoda_

Elizabeth Newkirk Jahoda, One of the
Attorneys for Plaintiff


Elizabeth Newkirk Jahoda
Eliot Abarbanel
Prairie State Legal Services, Inc.
DuPage County Attorney No. 67545
350 S. Schmale Road, Suite 150
Carol Stream, IL 60188
(630) 690-2130


## CERTIFICATE OF SERVICE

The undersigned certifies that she served a true and correct copy of the foregoing Notice of Motion and Motion to Consolidate by depositing the same in the U.S. Mail, addressed to Raymond Ostler, Countrywide Home Loans, and Mortgage Electronic Registration Systems, Inc. as shown above, on February 22, 2008, at Carol Stream, IL, with proper postage pre-paid.

_Diana Kirk_


SUBSCRIBED AND SWORN to
before me this 22 day
of February, 2008

_Elizabeth Newkirk Jahoda_
Notary Public

```
OFFICIAL SEAL
ELIZABETH NEWKIRK JAHODA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/04/10
```

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

THOMAS ISCHKUM,                    )
    Plaintiff,                     )
                                   )        2008 LM 356
    vs.                            )
                                   )
PATRICIA MENDEZ,                   )
    Defendant.                     )
                                   )
_____    )
                                   )
PATRICIA MENDEZ,                   )
    Plaintiff,                     )
                                   )
    v.                             )
                                   )
SIEBERT GROUP 1, LLC-S.G. SERIES  4,   )    2008 CH 363
PHILLIP SIEBERT, as owner of Siebert   )
Group 1, LLC-S.G. Series 4 and in his individual )
capacity, THOMAS ISCHKUM,          )
KAREN ISCHKUM, GSF MORTGAGE        )
CORPORATION, MORTGAGE ELECTRONIC   )
REGISTRATION SYSTEMS, INC.,        )
COUNTRYWIDE HOME LOANS, INC.,      )
and UNKNOWN OCCUPANTS AND          )
NONRECORD CLAIMANTS,               )
    Defendants.                    )

## MOTION TO CONSOLIDATE

Plaintiff-Defendant, PATRICIA MENDEZ, by her attorneys, Prairie State Legal Services,

Inc., pursuant to 735 ILCS 5/2-1006 and Rule 6.07 of the Rules of the Circuit Court of the

Eighteenth Judicial Circuit hereby moves this Honorable Court to consolidate the above-

captioned cases and to stay proceedings in case number 2008 LM 356.

    1. On January 24, 2008, Patricia Mendez (hereinafter "Ms. Mendez"), filed a multi-count

Complaint seeking, among other things, to quiet title to the property at 366 N. Central Avenue,

Wood Dale, IL (hereinafter "the property") and naming Thomas Ischkum (hereinafter "Mr. Ischkum") among the defendants in the Complaint.

2. Among other things, Ms. Mendez's Complaint alleges that she is the rightful owner of the property and that Mr. Ischkum and his associates violated state and federal law when they orchestrated and entered into a series of transactions whereby Ms. Mendez transferred her property for less than fair market value, and Mr. Ischkum ultimately received a deed to the property and a lease with Ms. Mendez.

3. Ms. Mendez's Complaint alleges that she signed a lease and an Option to Purchase which required her to pay rent to Mr. Ischkum in an amount comparable to her unaffordable mortgage payment and gave her the option of repurchasing her property after 18 months for considerably more than she sold it.

4. Ms. Mendez's Complaint also alleges that although she is still residing in the property, she has been unable to pay the rent, a fact that was known to Mr. Ischkum at the time he initiated the transactions, as the rent is comparable to Ms. Mendez's mortgage payment.

5. Ms. Mendez, in her Complaint, seeks numerous types of relief, including an order voiding her deed transfer and all subsequent deed transfers and mortgage liens on the property. The Complaint also seeks an order that sole title of the property be restored to Ms. Mendez.

6. On January 25, 2008, Thomas Ischkum (hereinafter "Mr. Ischkum") filed a Complaint in Forcible Entry and Detainer seeking possession of the property. Mr. Ischkum also sought rent in the amount of $6069.60. Mr. Ischkum's Complaint is attached as Exhibit A.

7. Consolidation of the two named cases is appropriate in this instance because:

    a.    Ms. Mendez's claims in her suit and her defenses to Mr. Ischkum's

2

forcible entry and detainer suit involve substantially the same subject matter, the same events, and the same general aspects, such that the disposition of Ms. Mendez's Complaint will settle the other, thereby avoiding multiple trials on the same issues.

b.    The two actions present virtually identical issues, arise from the same acts or events, involve the same or like issues, and depend largely upon the same evidence, and failure to consolidate actions could result in inconsistent judgments.

c.    Courts of Illinois clearly favor consolidation of cases where it can be done as a matter of judicial economy.

d.    Consolidation will expedite resolution of the lawsuits, conserve time of the court, and avoid additional expenses caused by unnecessary duplication.

e.    Failure to consolidate will severely prejudice the rights of Ms. Mendez, who may otherwise be subject to a summary eviction proceeding and removed from the premises of which she is alleged to be the proper owner.

8. Here, resolution of the eviction proceeding and the issue of possession requires an adjudication of title. If Ms. Mendez succeeds in her chancery action, the eviction action will fail because Mr. Ischkum will not have a superior right to possession. However, a serious contest regarding title and the resulting right to possession cannot be tried in a forcible entry and detainer action. Urbach v. Green, 15 Ill.App.2d 186, 188 (1ˢᵗ Dist. 1957). Therefore, to avoid inconsistent judgments, or a judgment by the forcible court without an adjudication of title, the

3

cases must be consolidated.

9.  Both cases have been filed in DuPage County Circuit Court and both are presently pending.

10.  There are no dispositive motions pending in either case.

11.  On February 20, 2008, the judge in the forcible entry and detainer action granted Ms. Mendez's Motion to Transfer the Case for Purposes of Consolidation.

12.  Local Rule 6.07 provides that this motion be presented to the judge who is requested to receive and hear the consolidated case.

13.  Consolidation will not prejudice any substantial right of any of the parties.

14.  Whether or not to consolidate cases rests largely in the discretion of the trial court. Winter v. Waldorf, 156 Ill. App. 3d 717, 725 (2nd Dist. 1987).  Courts in Illinois have found that consolidation is proper when cases are of the same nature, arise from the same act or event, involve the same or like issues and depend largely upon the same evidence. Robinson v. Robinson, 100 Ill.App.3d 437, 449 (2nd Dist. 1981).  A court may consolidate actions for its convenience whenever such can be done without prejudice to a substantial right. Shannon v. Stookey, 59 Ill.App.3d 573, 577 (5th Dist. 1978).  Where several actions are pending involving substantially the same subject matter, a court may stay proceedings in all but one action and see whether the disposition of one action may settle the others, thereby avoiding multiple trials on the same issue. Turner v. Williams, 326 Ill. App. 3d 541, 547 (2nd Dist. 2001).  Moreover, courts have found that consolidation is not an abuse of discretion where separate causes are of the same nature, involve same or like issues, and depend largely upon the same evidence. Winter v. Waldorf, 156 Ill. App. 3d 717, 725 (2nd Dist. 1987).

4

WHEREFORE, the Plaintiff-Defendant, PATRICIA MENDEZ, prays this Honorable

Court to consolidate the above-captioned cases into 2008 CH 363 and to stay proceedings in case

number 2008 LM 356.


Respectfully submitted,

Elizabeth Newkirk Jahoda
Attorney for Patricia Mendez


PRAIRIE STATE LEGAL SERVICES, INC.
Elizabeth Jahoda
Eliot Abarbanel
Attorney No. 67545
350 S. Schmale Road, Suite 150
Carol Stream, IL  60188
630-690-2130

5

8 3. 2008   09:23   8479568734                        AEWC 190                              PAGE   03

COMPLAINT IN FORCIBLE ENTRY AND DETAINER                                              3503 (Rev. 12/04)

**UNITED STATES OF AMERICA**
STATE OF ILLINOIS   IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT   COUNTY OF DU PAGE

THOMAS L. ISCHKUM                                    CASE NUMBER

                              PLAINTIFF(S)              2008LM000356

                    -vs-                             Assigned To: 1002

PATRICIA MENDEZ                                      **FILED**
                                                     Jan 25 2008 - 9:56 AM
                              DEFENDANT(S)            *Chris Kachiroubas*
                                                     CLERK OF THE
                                                     18TH JUDICIAL CIRCUIT
                                                     DU PAGE COUNTY, ILLINOIS

**COMPLAINT IN FORCIBLE ENTRY AND DETAINER**

THOMAS L. ISCHKUM _____ , plaintiff(s),
allege(s) that he/she/they, is/are entitled to possession of the following described premises, situated in the
CITY OF WOOD DALE, IL _____ , in DuPage County, Illinois, to wit:
                        (City/Description)
355 N. CENTRAL AVENUE, WOOD DALE, IL 60191 _____
                              (Address)
that the defendant(s) unlawfully withheld possession thereof from plaintiff(s), and furthermore the defendant(s)
is/are indebted to said plaintiff in the sum of $ 6,069.60 _____   for: UNPAID RENT
FOR BALANCE OF JULY, 2007 ($60.00) AND AUGUST, 2007 TO JANUARY, 2008 AT $1,001.60 EACH

WHEREFORE, plaintiff(s) pray(s) judgment against the defendant(s) for possession of said described premises,
and for the sum of $ 6,069.60 _____   and costs of the suit.

                                                     _____
                                                             Plaintiff

**AFFIDAVIT**

THOMAS ISCHKUM _____   being duly sworn, on oath state that he/she/they, the plaintiff(s) in
the within cause, that the demand of the plaintiff(s) in said cause is for the possession of the said premises and monies
due THOMAS ISCHKUM _____   and that the amount due to the said plaintiff(s) from the defendant(s) in
said cause after allowing to said defendant(s) all just deductions, credits and setoffs, if any is SIX THOUSAND
SIXTY-NINE _____   Dollars and SIXTY _____   Cents.

                                                     _____

Name: GOMBERG, SHARFMAN, GOLD                        SUBSCRIBED and SWORN to before me this

DuPage Attorney No: 30520 _____

Attorney for: PLAINTIFF _____            Date: 1-24-08 _____

Address: 208 S. LASALLE, #1200 _____
                                                     OFFICIAL SEAL
City/State/Zip: CHICAGO, IL 60604 _____   NOTARY PUBLIC STATE OF ILLINOIS
                                                     MY COMMISSION EXPIRES:12/15/10
Telephone: 312-332-6194 _____

CHRIS KACHIROUBAS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT ©
WHEATON, ILLINOIS 60189-0707

**EXHIBIT**
A