**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICIA MENDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08-cv-1216 |
| v. | ) | |
| | ) | |
| SIEBERT GROUP 1, LLC-S.G. SERIES | ) | Honorable Milton I. Shadur |
| 4, PHILLIP SIEBERT, as owner of Siebert | ) | |
| Group 1, LLC-S.G. Series 4 and in his | ) | |
| individual capacity, THOMAS ISCHKUM, | ) | |
| KAREN ISCHKUM, GSF MORTGAGE | ) | |
| CORPORATION, MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., COUNTRYWIDE | ) | |
| HOME LOANS, INC., and UNKNOWN | ) | |
| OCCUPANTS AND NONRECORD | ) | |
| CLAIMANTS, | ) | |
| | ) | |
| Defendants. | ) | |

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S AND**
**COUNTRYWIDE HOME LOANS, INC.'S ANSWER TO**
**PLAINTIFF'S COMPLAINT TO QUIET TITLE AND FOR OTHER RELIEF**

Defendants, Mortgage Electronic Registration Systems, Inc. ("MERS") and Countrywide

Home Loans, Inc. ("Countrywide"), by counsel, for their Answer and Affirmative Defenses to

Plaintiff's Complaint ("Complaint"), state as follows:

**COUNT I:  EQUITABLE MORTGAGE**

**(against Siebert Group 1, LLC-S.G. Series 4, Phillip Siebert, Thomas Ischkum and**

**Karen Ischkum)**

1.      Plaintiff, Patricia Mendez, lives in Wood Dale, DuPage County, Illinois.

**ANSWER:**[1]  Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 1 of Count I and, therefore, deny the allegations.

2.    Ms. Mendez is 61 years old and has never purchased real estate.  She is unsophisticated in real estate matters.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 2 of Count I and, therefore, deny the allegations.

3.    Defendant Siebert Group 1, LLC-S.G. Series 4 ("Siebert Group") is an Illinois limited liability corporation registered to do business in Illinois.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 3 of Count I and, therefore, deny the allegations.

4.    Defendant GSF Mortgage Corporation ("GSF Mortgage") is a Delaware corporation registered to do business in Illinois.  GSF Mortgage is an Illinois Residential Mortgage licensee.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 4 of Count I and, therefore, deny the allegations.

5.    Defendant Phillip Siebert is owner of Siebert Group, GSF Mortgage and Home Buyers Realty.  He is licensed in Illinois as a Loan Originator.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 5 of Count I and, therefore, deny the allegations.

---

[1] Count I is not directed at either Countrywide or MERS.  Accordingly, no response to the allegations is required.  Nonetheless, because Count I contains allegations about the parties to the lawsuit as well as general allegations relating to Plaintiff's Complaint, Countrywide and MERS respond individually to each allegation in Count I.

6.      Defendant Thomas Ischkum ("Mr. Ischkum") is an employee of GSF Mortgage Corporation and a licensed Loan Originator.

**ANSWER:**      Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6 of Count I and, therefore, deny the allegations.

7.      Defendant Karen Ischkum is an employee of GSF Mortgage Corporation.

**ANSWER:**      Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7 of Count I and, therefore, deny the allegations.

8.      Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a company that serves as Nominee of mortgage lenders originating or holding mortgage loans.  MERS is located at 1595 Springhill Road, Vienna, Virginia 22182.  MERS is a Delaware corporation that does business in Illinois.

**ANSWER:**      MERS and Countrywide admit the allegations in Paragraph 8 of Count I.

9.      Defendant Countrywide Home Loans, Inc. ("Countrywide") is a New York corporation registered to do business in Illinois.

**ANSWER:**      MERS and Countrywide admit the allegations in Paragraph 9 of Count I.

10.      At all times relevant to this litigation, Ms. Mendez was the owner in fee simple of the real estate situated in DuPage County, Illinois, commonly known as 366 N. Central Ave., Wood Dale, Illinois, and described as follows:

LOT 7 TN BLOCK 141N H.O. STONE AND COMPANY'S IRVING PARK BOULEVARD ADDITION TO WOOD DALE, BEING A SUBDIVISION OF PART OF THE SOUTHWEST QUARTER OF SECTION 10 AND THE NORTHWEST QUARTER OF SECTION 15, TOWNSHIP 40 NORTH, RANGE II, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 12, 1925 AS DOCUMENT 204618, IN DUPAGE COUNTY, ILLINOIS.

Permanent Index Number(s): 03-10-320-023.

(hereinafter "the property").

**ANSWER:**      Countrywide and MERS deny the allegations in Paragraph 10 of Count I.

11.     Ms. Mendez's parents built the property in 1944 and she has lived there almost her entire life.  She received title to the property in 1993 when it was transferred to her in a quitclaim deed from her mother.

**ANSWER:**     Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 of Count I and, therefore, deny the allegations.

12.     In 1999, Ms. Mendez was contacted by Mr. Ischkum in his capacity as a mortgage broker for GSF Mortgage, regarding refinancing a mortgage she had obtained in 1997.  With Mr. Ischkum's assistance, she refinanced the mortgage.

**ANSWER:**     Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 of Count I and, therefore, deny the allegations.

13.     She subsequently refinanced a mortgage two more times.  Mr. Ischkum assisted her each time.  The third refinance, in 2004, resulted in her mortgage being assigned to Chase Home Finance (hereinafter "Chase").

**ANSWER:**     Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 of Count I and, therefore, deny the allegations.

14.     In early 2007, because of unemployment, Ms. Mendez was having trouble making her monthly mortgage payments of $1054.20 due to her lender, Chase.  She paid her mortgage three weeks late in December 2006, and was unable to pay her mortgage in January 2007, February 2007 and March 2007.  She again contacted Ischkum for assistance.  Mr. Ischkum assured her he "would take care of it" and told her he would help her.

**ANSWER:**     Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 of Count I and, therefore, deny the allegations.

15.     A few days after she contacted Mr. Ischkum, Pat Cardoni visited Ms. Mendez at her home.  She had never spoken with Mr. Cardoni before, but he told her he worked with Mr. Ischkum.  On information and belief, Mr. Cardoni is an employee of Home Buyers Realty, a company owned by defendant Phillip

Siebert.  Mr. Cardoni came to Plaintiffs house and had her sign some paperwork. Although Mr. Cardoni is a registered real estate agent, Ms. Mendez was not aware that he was a real estate agent.  He explained she would be selling her house and renting it back, with an option to repurchase the house.  He did not tell her that Mr. Ischkum was going to buy the house.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15 of Count I and, therefore, deny the allegations.

16.    Mr. Cardoni told her repairs would need to be made to the house before this transaction could begin.  He indicated he would arrange for the repairs to be made.  A contractor, WMC Contractors, LLC, arranged by Mr. Cardoni or Mr. Ischkum, began making repairs to her house almost immediately.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16 of Count I and, therefore, deny the allegations.

17.    Plaintiff attended the closing on March 16, 2007.  She was not represented by counsel.  Mr. Ischkum was not present at the closing, but Mr. Cardoni was there.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17 of Count I and, therefore, deny the allegations.

18.    At the closing, Plaintiff signed a warranty deed and sold her property for $165,000 to Siebert Group.  Ms. Mendez was not informed at the closing that the property would eventually be sold to Mr. Ischkum.  Fees and payouts at the closing included the following:

a.    $108,632 to Chase to payoff her mortgage;

b.    $10,500 to WMC Contractors, LLC, the contractor who made the home repairs;

c.    $11,035.89 to Siebert Group as "prepaid rent";

d.    $550 "document preparation fee" to counsel for Siebert Group;

e.    $9,900 real estate commission to Home Buyers Realty;

     f.      $8,863 cash to Plaintiff;

     g.      $958 to Nationwide Credit Clearing for credit repair; and

     h.      $8707.62 to several of Plaintiffs creditors, including credit card companies.

See Exhibit A, attached hereto and made a part hereof, which is a copy of the HUD-I Statement.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 of Count I, including subparts (a)-(h) and, therefore, deny the allegations.  Countrywide and MERS refer to the contents of the documents cited in this paragraph in response to the allegations concerning their contents.

19.     Also at the closing, Ms. Mendez signed an Option to Purchase contract.  See Exhibit B, attached hereto and made a part hereof, which is a copy of the Option to Purchase.  She also signed two leases.  The first lease covered one month, March 2007, and is with Siebert Group.  See Exhibit C, attached hereto and made a part hereof, which is a copy of the Siebert Group Lease.  The second lease began in April 2007 and was with Thomas Ischkum.  See Exhibit D, attached hereto and made a part hereof, which is a copy of the Ischkum Lease.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 of Count I and, therefore, deny the allegations.  Countrywide and MERS refer to the contents of the documents cited in this paragraph in response to the allegations concerning their contents.

20.     On March 25, 2007, GSF Mortgage Corporation had the property appraised.  The home appraised for $250,000.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 of Count I and, therefore, deny the allegations.

21.     On April 6, 2007, Siebert Group transferred the property by warranty deed to Thomas and Karen Ischkum for $173,000.  The Ischkums executed two mortgages on the property, both with GSF Mortgage as mortgagee, with Mortgage Electronic Registration Systems, Inc. (MERS) as a nominee.  These mortgages were later assigned to Countrywide.  Ms. Mendez began paying her

"rent" to the Ischkums at the GSF Mortgage Corporation office at the rate of $1001.60 per month. Total "rent" owed according to the lease was $1557.15, and the difference of $555.55 was deducted each month from the $11,000 in prepaid rent plaintiff paid at closing.

**ANSWER:** Countrywide and MERS admit that MERS was the nominee for the mortgages on the Property held by Thomas and Karen Ischkum. MERS and Countrywide further admit that Countrywide services the mortgages. MERS and Countrywide lack knowledge or information sufficient to form a belief as to the truth of falsity of the remaining allegations in Paragraph 21 of Count I and, therefore, deny the remaining allegations.

22. Thereafter, Plaintiff remained on the property and, despite her continuing unemployment, made her rent payments each month beginning in March until July with assistance from family and friends. In August, 2007, Plaintiff fell behind in her payments, and Mr. Ischkum filed a forcible entry and detainer action in September 2007. She cannot afford the payments, a fact known to Ischkum at the lease's inception, as her rent payment was roughly equivalent to her Chase mortgage payment. The forcible entry and detainer action was subsequently dismissed without prejudice by Mr. Ischkum.

**ANSWER:** Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22 of Count I and, therefore, deny the allegations.

23. Without the relief sought herein, Plaintiff stands to lose all the equity she had in the house, approximately $140,000, as well as title to her childhood home.

**ANSWER:** Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 of Count I and, therefore, deny the allegations.

24. Pursuant to 765 ILCS 905/5, the transaction between Plaintiff and Siebert Group is an equitable mortgage and not an outright transfer of title.

**ANSWER:** Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 of Count I and, therefore, deny the allegations.

25.     The following facts, among others, indicate that the transaction described in paragraphs 14-19, *supra*, as an equitable mortgage and not a sale:

    a.    The inadequacy of the consideration.  Ms. Mendez received a benefit of approximately $141,000 for a property appraised at a value of $250,000 which was subsequently sold to defendants Ischkum for $173,000.  (See paragraphs 18, 20 and 21 );

    b.    The fact that there is a disparity in knowledge and experience between the parties, as the Defendants have a much better understanding of real estate sales, investment, and finance matters than Plaintiff (see paragraphs 2, 5 and 6);

    c.    The fact that Plaintiff was not represented by counsel (see paragraph 17);

    d.    The fact that Plaintiff remained in the property after the "sale" of the home and made monthly payments in the nature of payments on a mortgage loan (see paragraph 22);

    e.    The fact that Plaintiff retained an option to repurchase the home within 20 months, which was in fact in the nature of the repayment of a debt (see paragraph 19); and

    f.    The fact that Plaintiff sought assistance from Mr. Ischkum, a mortgage broker, because he had assisted her with obtaining loans in the past (see paragraphs 12-13).

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25 of Count I, including subparts (a)-(f), and, therefore, deny the allegations.

26.     No foreclosure action has been filed regarding the property by anyone in accordance with the Illinois Mortgage Foreclosure law, 735 ILCS 5/15-1101, et seq.

**ANSWER:**    Countrywide and MERS admit that they have not filed a foreclosure action on the property against Thomas and Karen Ischkum.  Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 26 of Count I and, therefore, deny the remaining allegations.

27.     This count is being pled against Siebert Group 1, LLC-S.G. Series 4, Phillip Siebert as owner of Siebert Group and in his individual capacity, Thomas Ischkum and Karen Ischkum.

**ANSWER:**    Countrywide and MERS lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27 of Count I and, therefore, deny the allegations.

WHEREFORE, Plaintiff prays that the Court:

A.    Void the deed transfer and declare the various sale and leaseback transactions to have created an "equitable mortgage" securing a sum to be determined at trial which represents the amount that Siebert Group LLC paid to Chase to payoff Ms. Mendez's mortgage less all damages suffered by Plaintiff as a result of the causes of action herein alleged;

B.    Declare that legal title to the property remains with plaintiff unless properly foreclosed in accordance with the Illinois Mortgage Foreclosure law, 735 ILCS 5/15-1101 et..seq.

C.    Grant Plaintiff such other and further relief as it deems equitable and proper.

**ANSWER:**    As for the unnumbered prayer for relief following paragraph 27 of Count I, no response is required.  Should a response be required, MERS and Countrywide deny each and every allegation.

## Count II: ACTION TO QUIET TITLE

**(against Thomas Ischkum and Karen Ischkum, GSF Mortgage Corporation, Mortgage Electronic Registration Systems, Countrywide Home Loans, and unknown occupants and non record claimants)**

1-26.    Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count II, verbatim, as though fully set forth herein.

**ANSWER:**    MERS and Countrywide repeat and incorporate Paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count II, as though fully set forth herein.

27.   This count is being pled against Defendants Thomas Ischkum and Karen Ischkum and against Defendant GSF Mortgage Corporation, Defendant Mortgage Electronic Registration Systems and Defendant Countrywide Home Loans.

**ANSWER:**   MERS and Countrywide admit the allegations in Paragraph 27 of Count II.

28.   The occurrences alleged above in paragraphs 1-26 of this Count II cast doubt on plaintiff's title to the property and the defendants mentioned in paragraph 27 of this Count II have asserted interests in the property that are adverse to plaintiffs interest.

**ANSWER:**   MERS and Countrywide admit they have asserted an interest in the property and that their asserted interest is adverse to Plaintiff's interest.  MERS and Countrywide deny the remaining allegations in Paragraph 28 of Count II.

29.   Because Defendant Siebert Group had only an equitable mortgage interest in the property, their attempt to transfer title to Thomas Ischkum and Karen Ischkum is void.

**ANSWER:**   MERS and Countrywide deny the allegations in Paragraph 29 of Count II.

30.   Therefore, the Ischkums' attempts to encumber the property is also void.

**ANSWER:**   MERS and Countrywide deny the allegations in Paragraph 30 of Count II.

31.   GSF Mortgage Corporation, as Mr. Siebert's company and the Ischkums' employer, knew that Siebert Group only had an equitable mortgage because GSF Mortgage knew that Ms. Mendez had sold her property for far less than fair market value, retained an option to repurchase, and entered into a lease agreement to remain in the property.

**ANSWER:**   MERS and Countrywide deny the allegations in Paragraph 31 of Count II.

32.   At the time of the issuance of the loan Plaintiff was in actual, open, exclusive, and visible possession of the subject property.  Because occupancy of residential property is public notice of a title interest or claim therein, Defendants had a duty to inquire into the nature of that interest.  Furthermore, GSF Mortgage had actual knowledge of the lease agreement between Plaintiff and Mr. Ischkum as well as Plaintiffs continuing possession and occupancy of the property through the date when GSF Mortgage issued its mortgage loan to the Ischkums.

**ANSWER:**   MERS and Countrywide deny that "[b]ecause occupancy of residential property is public notice of a title interest or claim therein, Defendants had a duty to inquire into the nature

of that interest." MERS and Countrywide lack knowledge or information sufficient to form a

belief as to the truth or falsity of the remaining allegations in Paragraph 32 of Count II and,

therefore, deny the allegations.

33. At the time it issued the mortgage, GSF Mortgage had notice of the claims Plaintiff asserts in this action and actual or constructive notice that at the time of the issuance of its loan, Defendant Siebert Group held at most an equitable mortgage interest in the subject property.

**ANSWER:** MERS and Countrywide deny the allegations in Paragraph 33 of Count II.

34. Due diligence on the part of GSF Mortgage would have confirmed through title records, tax records, and Plaintiff herself, that Plaintiff was the true owner of the property who had never validly transferred her fee simple interest in the subject property, but instead had given Siebert Group an "equitable mortgage" on that property.

**ANSWER:** MERS and Countrywide deny the allegations in Paragraph 34 of Count II.

WHEREFORE, the Plaintiff prays that the Court:

D. Void the transfer of the from Siebert Group LLC to Thomas and Karen Ischkum.

E. Void the mortgage liens executed by Thomas and Karen Ischkum in favor of GSF

Mortgage and declare that Thomas Ischkum, Karen Ischkum, GSF Mortgage, Mortgage

Electronic Registration Systems and Countrywide Home Loans, do not have any interest in the

Property;

F. In the alternative, declare that the various sale and leaseback transactions created

an "equitable mortgage" securing a sum to be determined at trial which represents the amount

that Siebert Group paid to Chase to pay off Ms. Mendez's mortgage, less all damages suffered by

Plaintiff as a result of the causes of action herein alleged;

G. In the alternative, declare that the GSF mortgages (now held by Countrywide)

constitute at most an equitable assignment of Defendant Siebert Group's equitable mortgage

interest in an amount to be determined at trial, which amount shall not exceed the amount that Plaintiff would have owed to Siebert Group;

H.     Further declare, if the Court finds an equitable mortgage exists, that Defendants Siebert Group and Thomas and Karen Ischkum are responsible for any shortfall between: (1) the amount Thomas and Karen Ischkum owe GSF Mortgage and (2) the amount for which Plaintiff is responsible under the equitable mortgage;

I.     Invalidate the title interests of any Unknown Owners or Nonrecord Claimants whose purported interests depend upon the validity of said mortgage lien; and

J.     Award such other relief as is equitable and just.

**ANSWER:**     As for the unnumbered prayer for relief following paragraph 34 of Count II, no response is required.  Should a response be required, MERS and Countrywide deny each and every allegation.

## Count III: Truth in Lending Violations

### (against Siebert Group and Phillip Siebert)

1-26.   Plaintiff repeats and realleges paragraph 1 through 26 of Count I as paragraph I through 26 of Count III, verbatim, as though fully set forth herein.

**ANSWER:**     MERS and Countrywide repeats and incorporates Paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count III, as though fully set forth herein.

27.     This Count is being pled against Defendant Siebert Group LLC and Defendant Phillip Siebert, individually and as owner of Siebert Group LLC.

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 27 of Count III is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 27 of Count III.

28.     The subject transaction, though structured as a deed transfer from Ms. Mendez to Siebert Group, is properly construed as an equitable mortgage loan.

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 28 of Count III is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 28 of Count III.

       29.     According to the Option to Purchase, the subject transaction is properly
construed as a mortgage loan requiring 18 payments of $1001.60 per month
beginning in April 2007 and running through September 2008, with a final
balloon payment of $218,000 due in October 2008.

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 29 of Count III is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 29 of Count III.

       30.     Under 12 C.P.R. § 226.18 of the Truth in Lending Act ("TILA"), the amount
financed on said mortgage loan is, according to the HUD-I, $141,519.60 (the
funds received by Plaintiff).

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 30 of Count III is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 30 of Count III.

       31.     Given this payoff and the above terms of the mortgage loan, the annual
percentage rate ("APR") of Ms. Mendez's loan is 32.9%.  12 C.P.R. § 226.18.

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 31 of Count III is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 31 of Count III.

       32.     Mortgage loans are covered by the TILA amendment known as the Home
Ownership and Equity Protection Act ("HOEPA") if the APR exceeds by
more than 8% the applicable Treasury security yield.  15 U.S.C. § 1602(aa).

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 32 of Count III is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 32 of Count III.

33.     Here, the applicable Treasury security yield was not more than 4.83% (the two-year Treasury security yield on February 15, 2007).

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 33 of Count III is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 33 of Count III.

34.     Ms. Mendez's loan APR of 32.9% exceeds the applicable Treasury rate by more than 28%.

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 34 of Count III is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 34 of Count III.

35.     Because Ms. Mendez's loan APR of 32.9% exceeds the applicable Treasury security yield by more than 8%, her loan is a high-cost loan covered by HOEPA.  15 U.S.C. § 1602(00).

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 35 of Count III is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 35 of Count III.

36.     Thomas Ischkum, an employee of GSF Mortgage and a licensed loan originator, initiated the transaction and therefore brokered the loan between Plaintiff and Siebert Group.

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 36 of Count III is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 36 of Count III.

37.     Because the loan transaction was covered by HOEPA and was brokered, Siebert Group is therefore a "creditor" for the purposes of TILA.  12 C.F.R. § 226.2.

**ANSWER:**     Count III is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 37 of Count III is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 37 of Count III.

38.     As a result of the subject transaction, Siebert Group acquired an interest in plaintiff's home that secures payment or performance of an obligation as set forth in 15 U.S.C. 1602(aa)(1) and Regulation Z, 12 C.P.R. §226.32.

**ANSWER:**     Count III is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 38 of Count III is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 38 of Count III.

39.     The transaction between Siebert Group and Ms. Mendez was a "consumer credit transaction" as that term is defined in the Truth in Lending Act, 15 U.S.C. § 1602(h), and Regulation Z, 12 C.F.R. § 226.2(a)(12).

**ANSWER:**     Count III is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 39 of Count III is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 39 of Count III.

40.      The transaction between Siebert Group LLC and Ms. Mendez was a "closed-end credit transaction" as that term is defined in 12 C.F.R. §§ 226.17 through 226.24.

**ANSWER:**     Count III is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 40 of Count III is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 40 of Count III.

41.     In the course of issuing a mortgage loan to Ms. Mendez, Siebert Group and Phillip Siebert committed material violations of TILA by failing to make the following disclosures required by TILA and its implementing Regulation Z, 12 C.P.R. §226.18: (a) the Annual Percentage Rate (APR), (b) the amount financed, (c) the itemization of amount financed, (d) the finance charge, (e) the total of payments, and (f) the schedule of payments.

**ANSWER:**     Count III is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 41 of Count III is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 41 of Count III.

42.     Siebert Group and Phillip Siebert committed an additional material violation of TILA by failing to provide a written notice of Ms. Mendez's absolute three-day right to rescind the transaction. 12 C.F.R. §226.23.

**ANSWER:** Count III is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 42 of Count III is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 42 of Count III.

43. These material violations give Ms. Mendez an extended three-year right to rescind the equitable loan transaction; such rescission automatically voids the lienhold or security interest held by Siebert Group or its successors. 15 U.S.C. § 1635(f), 12 C.F.R. §226.23(a)(3).

**ANSWER:** Count III is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 43 of Count III is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 43 of Count III.

44. Ms. Mendez hereby exercises her right to rescind the subject loan by delivering a copy of this Complaint upon Defendants Siebert Group and Phillip Siebert and to all Defendants through service of this Complaint.

**ANSWER:** Count III is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 44 of Count III is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 44 of Count III.

45. Subsequent to rescission, Defendants Siebert Group and Phillip Siebert must take whatever action is required to void the equitable mortgage lien, and they must take steps to ensure the return of all money or property that has been given to anyone in connection with the subject transaction (including but not limited to returning all of Ms. Mendez's monthly payments made on the loan). 15 U.S.C. § 1635.

**ANSWER:** Count III is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 45 of Count III is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 45 of Count III.

WHEREFORE, Plaintiff prays that this Court:

K. Declare the equitable mortgage and lien void as having been properly rescinded;

L.     Require Defendants Siebert Group LLC and Phillip Siebert to take whatever actions are required by 15 U.S.C. § 1635 to effectuate voiding the lien and rescinding the equitable mortgage and returning Plaintiff her money or property;

M.     Award statutory damages of $2,000 under 15 U .S.C. 1640(a)(2) for the disclosure violation;

N.     Award actual damages of $140,000, the amount of the lost equity in the home, under 15 U.S.C. 1640(a)(1 );

O.     Award recoverable costs under 15 U.S.C. §1640(a)(3); and

P.     Award such other relief as is equitable and just.

**ANSWER:**     As for the unnumbered prayer for relief following paragraph 45 of Count III, no response is required.  Should a response be required, MERS and Countrywide deny each and every allegation.

## Count IV: Home Ownership and Equity Protection Act

### (against Siebert Group and Phillip Siebert)

1-26     Plaintiff repeats and realleges paragraph 1 through 26 of Count I as paragraph 1 through 26 of Count IV, verbatim, as though fully set forth herein.

**ANSWER:**     MERS and Countrywide repeats and incorporates Paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count IV, as though fully set forth herein.

27.     This Count is being pled against Defendant Siebert Group and Defendant Phillip Siebert, individually and as owner of Siebert Group.

**ANSWER:**     Count IV is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 27 of Count IV is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 27 of Count IV.

28.     The Home Ownership and Equity Protection Act, P.L. No 103-325 (September 23, 1994) amended the Truth in Lending Act by adding what is now 15 U.S.C.

§1639. Simultaneously with the passage of this Act, Regulation Z was amended to implement the requirements of this Act.

**ANSWER:**    Count IV is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 28 of Count IV is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 28 of Count IV.

29-40. Plaintiff realleges paragraphs 29 - 40 of Count III as paragraphs 29 - 40 of this Count IV.

**ANSWER:**    MERS and Countrywide repeats and incorporates Paragraphs 29 through 40 of Count III as paragraphs 29 through 40 of Count IV, as though fully set forth herein.

41. Because Ms. Mendez's loan transaction is covered by the Home Ownership and Equity Protection Act ("HOEPA"), Siebert Group was required to give Ms. Mendez a special cautionary notice setting forth the terms of the loan, including the APR and the required monthly payments, three or more business days prior to the loan closing. 12 C.F.R. §§ 226.31 and 226.32.

**ANSWER:**    Count IV is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 41 of Count IV is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 41 of Count IV.

42. Siebert Group did not give Ms. Mendez this required notice.

**ANSWER:**    Count IV is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 42 of Count IV is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 42 of Count IV.

43. HOEPA prohibits balloon payments on covered loans with a term of less than five years. 15 U.S.C. § 1639(e), 12 C.F.R. § 226.32(d)(1).

**ANSWER:**    Count IV is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 43 of Count IV is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 43 of Count IV.

44. Because Ms. Mendez's loan is covered by HOEPA and requires a balloon payment after less than two years, it violates the HOEPA statute.

**ANSWER:**    Count IV is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 44 of Count IV is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 44 of Count IV.

      45.    Both of the above HOEPA violations give Ms. Mendez an extended three year
right to rescind the equitable loan transaction, which automatically voids the
lienhold interest held by Siebert Group.  15 U.S.C. §§ 1635, 12 C.F.R. § 226.23.

**ANSWER:**    Count IV is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 45 of Count IV is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 45 of Count IV.

      46.    Ms. Mendez hereby exercises her right to rescind the subject loan by delivering a
copy of this Complaint upon Defendants Siebert Group and Phillip Siebert and to
all Defendants through service of this Complaint.

**ANSWER:**    Count IV is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 46 of Count IV is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 46 of Count IV.

      47.    Subsequent to rescission, Defendants Siebert Group and Phillip Siebert must take
whatever action is required to void the equitable mortgage lien, and it must take
steps to ensure the return of all money or property that has been given to anyone
in connection with the subject transaction (including but not limited to returning
all of Ms. Mendez's monthly payments made on the loan). 15 U.S.C. § 1635.

**ANSWER:**    Count IV is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 47 of Count IV is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 47 of Count IV.

      48.    HOEPA requires payments made by creditors to home improvement contractors
to be made jointly payable to the consumer and the contractor or through a third
party escrow agent in accordance with a written agreement signed by the
consumer.  15 U.S.C. § 1639(i), 12 C.F.R. § 226.34(a)( 1).

**ANSWER:**    Count IV is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 48 of Count IV is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 48 of Count IV.

49.    Because the home improvement contractor, WMC Consulting LLC, was paid directly from the proceeds at the closing, and, on information and belief, the instrument was not also payable to Plaintiff, the payment violates HOEPA.

**ANSWER:**    Count IV is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 49 of Count IV is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 49 of Count IV.

WHEREFORE, Plaintiff prays that this Court:

Q.    Declare the equitable mortgage and lien void as having been properly rescinded;

R.    Require Defendants Siebert Group LLC and Phillip Siebert to take whatever actions are required by 15 U.S.C. §1635 to effectuate voiding the lien and rescinding the equitable mortgage and returning Plaintiff her money or property;

S.    Award statutory damages $6,000 (consisting of $2,000 for the disclosure violation, $2,000 for the balloon payment violation and $2,000 for the home improvement contractor) under 15 U.S.C. § 1640(a)(2)(A);

T.    Award additional statutory damages in the amount of $32,943.89, the amount of all finance charges and fees paid by Plaintiff under 15 U.S.C. § 1640(a)(4);

U.    Award actual damages in the amount of $140,000, the amount of equity Plaintiff had in the home;

V.    Award recoverable costs under 15 U.S.C. §1640(a)(3); and

W.    Award such other relief as is equitable and just.

**ANSWER:**    As for the unnumbered prayer for relief following paragraph 49 of Count IV, no response is required.  Should a response be required, MERS and Countrywide deny each and every allegation.

### Count V:  MORTGAGE RESCUE FRAUD ACT

**(against Siebert Group, Phillip Siebert, Thomas Ischkum, and Karen Ischkum)**

1-26.    Plaintiff repeats and realleges paragraph 1 through 26 of Count I as paragraph 1 through 26 of Count V, verbatim, as though fully set forth herein.

**ANSWER:**    MERS and Countrywide repeats and incorporates Paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count V, as though fully set forth herein.

27.    Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum are "distressed property purchasers" as that term is defined by the Mortgage Rescue Fraud Act (MRFA), 765 ILCS 940/5.

**ANSWER:**    Count V is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 27 of Count V is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 27 of Count V.

28.    Defendants Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum violated procedural requirements of the Mortgage Rescue Fraud Act, including but not limited to:

a.    Failure to provide distressed property conveyance contract with required terms, 765 ILCS 940/25, 765 ILCS 940/30; and

b.    Failure to provide notice of right to rescind distressed property conveyance contract, 765 ILCS 940/40.

**ANSWER:**    Count V is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 28, including subparts (a)-(b), of Count V is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 28, including subparts (a)-(b), of Count V.

29. Defendants Siebert Group LLC, Phillip Siebert, Thomas Ischkum and Karen Ischkum violated substantive requirements of the MRFA set forth at 765 ILCS 940/50, including but not limited to:

    a. Entering into a distressed property conveyance without demonstrating Plaintiffs ability to make the required monthly payments and her reasonable ability to afford the repurchase, 765 ILCS 940/50(b)(1);

    b. Entering into a distressed property conveyance where the Plaintiff failed to receive 82% of the value of the home and failed to receive the opportunity to repurchase the home for no more than 125% of the Defendants' original cost to purchase the home, 765 ILCS 940/50(b)(2);

    c. Arranging a distressed property conveyance that was unfair and commercially unreasonable; 765 ILCS 940/50(b)(3);

    d. Representing that they were acting on behalf of Plaintiff and assisting her to save the house, 765 ILCS 940/50(b)(4);

    e. Accepting a conveyance from Plaintiff and recording the instrument of conveyance before the time for Plaintiff to cancel the transaction had expired, 765 ILCS 940/50(b)(6); and

    f. Causing the property to be conveyed and encumbered without the knowledge or permission of Plaintiff, 765 lLCS 940/50(b)(12).

**ANSWER:** Count V is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 29, including subparts (a)-(f), of Count V is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 29, including subparts (a)-(f), of Count V.

30. Defendants Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum are, by virtue of the above, subject to liability under the Consumer Fraud and Deceptive Business Practices Act. 765 ILCS 940/55.

**ANSWER:** Count V is not directed at either Countrywide or MERS. Accordingly, no response to Paragraph 30 of Count V is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 30 of Count V.

31. The actions taken by defendants Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum as described above were intentional, willful and wanton.

**ANSWER:**     Count V is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 31 of Count V is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 31 of Count V.

> 32.     As a direct and proximate cause of Defendants' actions, Plaintiff has suffered substantial economic harm including, but not limited to, the loss of title to the property, the loss of approximately $140,000 equity in the property, and the further encumbrance of the property due to the mortgages executed by the Ischkums.

**ANSWER:**     Count V is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 32 of Count V is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 32 of Count V.

WHEREFORE, Plaintiff asks this court to enter an order:

A.     Awarding actual damages of approximately $140,000 in equity taken by the Defendants, and punitive damages of $200,000;

B.     Voiding the Deed and subsequent mortgage liens and any other encumbrances;

C.     Awarding recoverable costs; and

D.     Awarding such other relief as is equitable and just.

**ANSWER:**     As for the unnumbered prayer for relief following paragraph 32 of Count V, no response is required.  Should a response be required, MERS and Countrywide deny each and every allegation.

## Count VI: UNCONSCIONABILITY

**(against Siebert Group, Phillip Siebert, GSF Mortgage Corporation, Countrywide, Thomas Ischkum and Karen Ischkum)**

> 1-26.     Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count VI, verbatim, as though fully set forth herein.

**ANSWER:**     MERS and Countrywide repeats and incorporates Paragraphs 1 through 26 of

Count I as paragraphs 1 through 26 of Count VI, as though fully set forth herein.

      27.     This count is being pled against Defendants Siebert Group, Phillip Siebert,
               Thomas Ischkum, Karen Ischkum, GSF Mortgage Corporation and Countrywide.

**ANSWER:**     Countrywide admits the allegations in Paragraph 27 of Count VI. Count VI is not

directed at MERS. Accordingly, no response by MERS to Paragraph 27 of Count VI is required.

Should a response be required, MERS denies the allegations in Paragraph 27 of Count VI.

      28.     Throughout the course of the subject transaction, an enormous disparity in
               bargaining power existed between Plaintiff and Defendants. Plaintiff is an
               unsophisticated homeowner who was facing desperate financial circumstances
               and the possible loss of her family home. In contrast, the Defendants are
               experienced in business, finance and real estate matters and sought to profit from
               the disparity in bargaining power, and did so by deliberately taking advantage of
               Plaintiff.

**ANSWER:**     Countrywide denies the allegations in Paragraph 28 of Count VI. Count VI is not

directed at MERS. Accordingly, no response by MERS to Paragraph 28 of Count VI is required.

Should a response be required, MERS denies the allegations in Paragraph 28 of Count VI.

      29.     The terms of the subject transaction are so one-sided as to be abusive and
               unconscionable. Defendants, for their benefit, used the disparity in bargaining
               power to cause a transfer of title to Plaintiff's home for approximately 64% of its
               value.

**ANSWER:**     Countrywide denies the allegations in Paragraph 29 of Count VI. Count VI is not

directed at MERS. Accordingly, no response by MERS to Paragraph 29 of Count VI is required.

Should a response be required, MERS denies the allegations in Paragraph 29 of Count VI.

      30.     The circumstances of the transaction did not provide Plaintiff with a reasonable
               opportunity to understand the terms of the transaction, the likelihood of a default
               on her part, and the consequences to her if she did default.

**ANSWER:**     Countrywide denies the allegations in Paragraph 30 of Count VI. Count VI is not

directed at MERS. Accordingly, no response by MERS to Paragraph 30 of Count VI is required.

Should a response be required, MERS denies the allegations in Paragraph 30 of Count VI.

WHEREFORE, the Plaintiff prays that this Court:

A.     Declare the aforementioned Deed filed in the DuPage County Recorders office, to be an unlawful and void cloud on title to said real estate, and that it be canceled of record, with sole title to the subject property restored to the Plaintiff;

B.     Declare the Deed issued to Defendants Thomas and Karen Ischkum by Siebert Group LLC to be an unlawful and void cloud on title to said real estate, and that it be canceled of record, with sole title to the subject property restored to Plaintiff;

C.     Decree the title to said real estate to be free and clear of any mortgage lien or interest in favor of GSF Mortgage, Countrywide, or any other purported assignee of GSF Mortgage and order the mortgage constitute an unlawful and void cloud on title to said real estate, and that it be canceled of record;

D.     Decree the subject property to be free of any mortgage or lien subsequent to and/or flowing from the deed;

E.     In the alternative, declare the various transactions to have created an "equitable mortgage" securing a sum to be determined at trial which represents the amount that Siebert Group LLC paid to Chase to pay off Ms. Mendez's mortgage less all damages suffered by Plaintiff as a result of the causes of action herein alleged;

F.     Grant Plaintiff such other and further relief as it deems equitable and proper.

**ANSWER:**     As for the unnumbered prayer for relief following paragraph 30 of Count VI, no response is required.  Should a response be required, MERS and Countrywide deny each and every allegation.

## Count VII: CONSTRUCTIVE TRUST

**(against Siebert Group, Phillip Siebert, GSF Mortgage Corporation, Thomas Ischkum and Karen Ischkum)**

1 - 26.  Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count VII, verbatim, as though fully set forth herein.

**ANSWER:**    MERS and Countrywide repeats and incorporates Paragraphs 1 through 26 of Count I as paragraphs 1 through 26 of Count VII, as though fully set forth herein.

27.    This count is being pled against Defendants GSF Mortgage Corporation, Siebert Group LLC, Phillip Siebert, Thomas Ischkum and Karen Ischkum.

**ANSWER:**    Count VII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 27 of Count VII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 27 of Count VII.

28.    Ms. Mendez, who has limited experience with real estate transactions and mortgages, trusted Mr. Ischkum with respect to financial affairs related to her home.

**ANSWER:**    Count VII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 28 of Count VII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 28 of Count VII.

29.    Mr. Ischkum gained Ms. Mendez's trust by successfully obtaining loans to solve Ms. Mendez's financial problems.

**ANSWER:**    Count VII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 29 of Count VII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 29 of Count VII.

30.    As a result, Mr. Ischkum gained great influence over Ms. Mendez with respect to financial affairs related to her home.

**ANSWER:**    Count VII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 30 of Count VII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 30 of Count VII.

31.    Mr. Mendez and Ms. Ischkum had a confidential relationship, which imposed fiduciary duties of loyalty and honesty on Mr. Ischkum.

**ANSWER:**    Count VII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 31 of Count VII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 31 of Count VII.

32.    Thomas Ischkum and GSF Mortgage Corporation, through its agents, abused the trust placed in them by Ms. Mendez, and breached their fiduciary duties of loyalty and honesty by obtaining title to Ms. Mendez's property and causing her to lose the equity in the home.

**ANSWER:**    Count VII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 32 of Count VII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 32 of Count VII.

33.    By obtaining title to the subject property, by accepting monthly payments from Ms. Mendez and by further encumbering the subject property through the GSF Mortgage loan and enjoying the proceeds thereof, Defendants Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum have been unjustly enriched by receiving money and property properly belonging to plaintiff under circumstances that, in equity, the Defendants ought not be allowed to retain.

**ANSWER:**    Count VII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 33 of Count VII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 33 of Count VII.

WHEREFORE, Plaintiff prays that this Court:

A.    Declare that a constructive trust is placed on the legal record title to the subject property, the proceeds from the GSF Mortgage loan taken out by Thomas and Karen Ischkum and the payments that Ms. Mendez has paid to Siebert Group LLC and Thomas and Karen Ischkum;

B.    Order the Defendants to transfer title and possession of wrongfully acquired property to the plaintiff;

C.    Award such other relief as is equitable and just.

**ANSWER:**     As for the unnumbered prayer for relief following paragraph 33 of Count VII, no

response is required.  Should a response be required, MERS and Countrywide deny each and

every allegation.


## COUNT VIII: BREACH OF FIDUCIARY DUTY

### (against Thomas Ischkum and GSF Mortgage)

1-26.   Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs 1
through 26 of Count VIII, verbatim, as though fully set forth herein.

**ANSWER:**     MERS and Countrywide repeats and incorporates Paragraphs 1 through 26 of

Count I as paragraphs 1 through 26 of Count VIII, as though fully set forth herein.

27.     This count is pled against Thomas Ischkum and GSF Mortgage.

**ANSWER:**     Count VIII is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 27 of Count VIII is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 27 of Count VIII.

28.     Mr. Ischkum, as a licensed loan originator and employee of GSF Mortgage
Corporation, had extensive knowledge of real estate transactions, including
purchases and mortgages.

**ANSWER:**     Count VIII is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 28 of Count VIII is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 28 of Count VIII.

29.     Ms. Mendez, in contrast, has limited experience with real estate transactions and
mortgages.

**ANSWER:**     Count VIII is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 29 of Count VIII is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 29 of Count VIII.

30.    Mr. Ischkum, as an agent of GSF Mortgage, on three separate occasions assisted Ms. Mendez with obtaining a loan.

**ANSWER:**    Count VIII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 30 of Count VIII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 30 of Count VIII.

31.    Mr. Ischkum gained Ms. Mendez's trust by successfully obtaining those loans to solve Ms. Mendez's financial problems.

**ANSWER:**    Count VIII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 31 of Count VIII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 31 of Count VIII.

32.    As a result, Mr. Ischkum gained great influence over Ms. Mendez with respect to financial affairs related to her home.

**ANSWER:**    Count VIII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 32 of Count VIII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 32 of Count VIII.

33.    Mr. Mendez and Ms. Ischkum had a confidential relationship, which imposed fiduciary duties of loyalty and honesty on Mr. Ischkum.

**ANSWER:**    Count VIII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 33 of Count VIII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 33 of Count VIII.

34.    Mr. Ischkum breached these duties when he induced Plaintiff to enter into a transaction whereby he would ultimately obtain title to the property for less than fair market value and Plaintiff would lose the equity she had in the house.

**ANSWER:**    Count VIII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 34 of Count VIII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 34 of Count VIII.

35.     Plaintiff has suffered damages as a result of this conduct, as there is now a cloud on the title of her home and she is facing eviction from her home.

**ANSWER:**    Count VIII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 35 of Count VIII is required. Should a response be required, Countrywide and MERS deny the allegations in Paragraph 35 of Count VIII.

36.     Mr. Ischkum's breach of fiduciary duty was willful, wanton and intentional.

**ANSWER:**    Count VIII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 36 of Count VIII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 36 of Count VIII.

37.     Mr. Ischkum's abuse of his confidential relationship with Mendez is sufficient to establish a constructive trust.  <u>Kester v. Crilly</u>, 405 Ill. 425,431 (1950).

**ANSWER:**    Count VIII is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 37 of Count VIII is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 37 of Count VIII.

WHEREFORE, Plaintiff requests the Court to enter an order:

A.     Declaring that a constructive trust is placed on the legal title of the property for the benefit of Plaintiff;

B.     Awarding actual damages in the amount of $140,000 and punitive damages in the amount of $200,000;

C.     Ordering Mr. Ischkum to pay Plaintiffs litigation costs; and

D.     Awarding such other relief as it deems equitable and just.

**ANSWER:**    As for the unnumbered prayer for relief following paragraph 37 of Count VIII, no response is required.  Should a response be required, MERS and Countrywide deny each and every allegation.

### Count IX: Illinois Consumer Fraud and Deceptive Business Practices Act

### (against Thomas Ischkum, Phillip Siebert, Siebert Group, and GSF Mortgage)

1-26.    Plaintiff repeats and realleges paragraphs 1 through 26 of Count I as paragraphs I through 26 of Count IX, verbatim, as though fully set forth herein.

**ANSWER:**    MERS and Countrywide repeats and incorporates Paragraphs 1 through 26 of

Count I as paragraphs 1 through 26 of Count IX, as though fully set forth herein.

27.    This count is pled against Thomas Ischkum, Phillip Siebert, Siebert Group and GSF Mortgage.

**ANSWER:**    Count IX is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 27 of Count IX is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 27 of Count IX.

28.    Plaintiff is a "person" and "consumer" as defined by the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/(c) and 505/1(e).

**ANSWER:**    Count IX is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph 28 of Count IX is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 28 of Count IX.

29.    At all times relevant to this case, the Defendants were engaged in commerce and trade in Illinois.

**ANSWER:**    Count IX is not directed at either Countrywide or MERS.  Accordingly, no

response to Paragraph  29 of Count IX is required.  Should a response be required, Countrywide

and MERS deny the allegations in Paragraph 29 of Count IX.

30.    The Defendants employed deceptive acts and practices and made fraudulent misrepresentations and misstatements and omissions of material fact, with the intent that Plaintiff rely upon such acts, practices, representations, misstatements and omissions of material fact.

**ANSWER:**     Count IX is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 30 of Count IX is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 30 of Count IX.

      31.     Said deceptive acts and practices and fraudulent misrepresentations and misstatements and omissions of material fact include but are not limited to the following:

          a.     Misrepresenting the identity of the purchaser of the property and failing to disclose that Mr. Ischkum would be the owner of the property;

          b.     Misrepresenting to Plaintiff that the transaction would enable her to improve her credit so that she repurchase the house; and

          c.     Structuring the transaction as a sale-leaseback with an option to repurchase knowing that default was inevitable, with the intent to strip the equity from the property.

**ANSWER:**     Count IX is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 31, including subparts (a)-(c), of Count IX is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 31, including subparts (a)-c), of Count IX.

      32.     Said acts and practices and fraudulent misrepresentations and misstatements and omissions of material fact offend public policy, are immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to Plaintiff.

**ANSWER:**     Count IX is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 32 of Count IX is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 32 of Count IX.

      33.     Said acts and practices and fraudulent misrepresentations and misstatements were willful, wanton and intentional.

**ANSWER:**     Count IX is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 33 of Count IX is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 33 of Count IX.

34.     As a direct and proximate cause of Defendants' actions, Plaintiff has suffered substantial economic harm including but not limited to the loss of title to the property, the loss of approximately $140,000 equity in the property, and the further encumbrance of the property due to the mortgages executed by the Ischkums.

**ANSWER:**     Count IX is not directed at either Countrywide or MERS.  Accordingly, no response to Paragraph 34 of Count IX is required.  Should a response be required, Countrywide and MERS deny the allegations in Paragraph 34 of Count IX.

WHEREFORE, Plaintiff asks this Court to enter an order:

A.     Awarding actual damages of $140,000, the amount of equity taken by Defendants;

B.     Awarding punitive damages of $200,000;

C.     Voiding the Deed and subsequent mortgage liens and any other encumbrances;

D.     Awarding recoverable costs; and

E.     Awarding such other relief as is equitable and just.

**ANSWER:**     As for the unnumbered prayer for relief following paragraph 34 of Count IX, no response is required.  Should a response be required, MERS and Countrywide deny each and every allegation.

Dated: March 25, 2008          Respectfully submitted,

BRYAN CAVE LLP


By:  _____/s/ Jena Valdetero_____
        Steven R. Smith (#3128231)
        Jena M. Valdetero (#6290948)
        161 North Clark Street, Suite 4300
        Chicago, IL  60601-3315
        Telephone:  (312) 602-5000
        Facsimile:  (312) 602-5050

71529.5

*Attorneys for Countrywide Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was served via U.S. Mail, this 25th day of March, 2008, to the following:

    Prairie State Legal Services, Inc.
    Elizabeth Newkirk Jahoda
    Ana Collazo
    Eliot Abarbanel
    350 S. Schmale Rd., Suite 150
    Carol Stream, IL 60188

And via the Court's electronic docketing system to:

    Raymond Ostler
    Gomberg, Sharfman, Gold, and Ostler, P.C.
    rostler@gsgolaw.com



                                    _____/s/ Jena Valdetero_____
                                         Jena Valdetero