IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

| | |
|---|---|
| PATRICIA MENDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08cv1216 |
| v. ) | |
| ) | Judge Shadur |
| SIEBERT GROUP 1, LLC-S.G. SERIES 4, ) | Presiding |
| PHILLIP SIEBERT, as owner and in his individual ) | |
| capacity, THOMAS ISCHKUM, KAREN ISCHKUM, ) | |
| GSF MORTGAGE CORPORATION, MORTGAGE ) | |
| ELECTRONIC REGISTRATION SYSTEMS, INC., ) | |
| COUNTRYWIDE HOME LOANS, INC., and ) | |
| UNKNOWN OCCUPANTS AND NONRECORD ) | |
| CLAIMANTS, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' 12(b)(6) AND 9(b) MOTION TO DISMISS**

Defendants SIEBERT GROUP 1, LLC-S.G. SERIES, GSF MORTGAGE CORPORATION, PHILLIP SIEBERT, as owner and in his individual capacity, THOMAS ISCHKUM, and KAREN ISCHKUM, (hereinafter "Defendants") by and through their attorneys, Gomberg, Sharfman, Gold and Ostler, P.C., respectfully move this court to dismiss the Complaint of Plaintiff, Patricia Mendez, ("Plaintiff") pursuant to Rules12(b)(6) and 9(b). In support hereof, Defendants state as follows:

**I. Overview**

Plaintiff brings a nine-count complaint alleging that she was a victim of fraud and various other violations arising out of her transfer of title to her home located at 366 N. Central, Wood Dale, Illinois (the "property"). Defendants move to dismiss all of Plaintiff's nine counts for their failure to state causes of action upon which relief can be granted.

## II. Plaintiff's Complaint

Plaintiff alleges that she was the owner of the property commonly known as 366 N. Central Ave., Wood Dale, Illinois. Compl. ¶ 10. Plaintiff could not make her $1054.20 mortgage payment to her lender Chase. Compl. ¶ 14. Plaintiff contacted Thomas Ischkum, a loan originator through whom she had conducted three mortgage refinance transactions since 1997. Compl. ¶ 12, 13. Plaintiff then received a visit from Pat Cardoni, a real estate agent, who told her he worked with Ischkum; Cardoni explained he would be selling her house and renting it back, with an option to repurchase. Compl. ¶ 15.

Plaintiff attended the real estate closing on March 16, 2007. Compl. ¶ 17. Plaintiff did not bring a lawyer to the closing. Compl. ¶ 17. Plaintiff signed a warranty deed and sold her property for $165,000 to Siebert Group. Compl. ¶ 18. This $165,000 was dispersed as follows: a) $108,632 to Chase to pay off Mendez' mortgage; b) $10,500 to WMC to pay for repairs; c) $11,035.89 to Siebert Group for pre-paid rent; d) $550 "document preparation fee" to counsel at Siebert Group; e) $9,900 real estate commission to Home Buyers Realty; f) $8,863 cash to Plaintiff; g) $958 to Nationwide Credit Clearing for credit repair; and h) $8707.62 to several of Plaintiff's other creditors, including credit card companies. At the closing, Plaintiff signed an Option to Purchase Contract. Compl. ¶ 19. The Contract (attached to Complaint as Exhibit B) stated that if Mendez wished to purchase the property, the property price would be $218,000. It also stated that rent would initially be paid to Siebert Group (for less than one month) and would thereafter be payable to Thomas Ischkum.

## III. None of Plaintiff's Causes of Action State a Claim Upon Which Relief May Be Granted And Must Be Dismissed.

Plaintiff filed a nine-count complaint against numerous defendants. Counts I-IX are directed at one or all of the following defendants: Siebert Group, Phillip Siebert, in his individual

capacity and as owner of Siebert Group, GSF Mortgage, Thomas Ischkum and Karen Ischkum. Other defendants are named in some of these counts but are represented separately and thus will not be referred to here.  Plaintiff bases her causes of action on the theory that Siebert Group's purchase of the property and subsequent lease should be treated not as a transfer of title, but as an equitable mortgage.

In evaluating a motion to dismiss, the court determines whether a complaint sufficiently and properly states a claim upon which relief can be granted.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A claim should not be dismissed unless the plaintiff cannot prove any set of facts in support of his claim.  *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). Nonetheless, a complaint will be dismissed if the plaintiff does not allege sufficient facts to state a cause of action.  *Glatt v. Chicago Park Dist.*, 847 F.Supp. 101, 103 (N.D. Ill. 1994).

**A.  Plaintiff fails to allege how a valid deed is rendered an equitable mortgage.**

At the heart of Plaintiff's complaint lies the claim of an equitable mortgage, from which many of her other claims derive. Plaintiff's allegations of an equitable mortgage, however, are deficient. As far back as 1875 the Illinois Supreme Court held that "where it appears the parties really intend an absolute sale and a contract allowing the vendor to repurchase, such intention must control." *Hanford v. Blessing*, 80 Ill. 188 (1875).  There is a strong presumption that a deed absolute on its face is not an equitable mortgage, and such presumption can only be overcome by clear and convincing evidence.  *Havana Nat. Bank v. Wiemer*, 32 Ill.App.3d 578, 335 N.E.2d 506 (3rd Dist. 1975).  A deed will only be treated as an equitable mortgage in the event that the deed serves as security for a debt incurred at or before the conveyance owed by the grantor to the grantee. *Stamberg v. Hiller*, 41 Ill.App.2d 229, 190 N.E.2d 627, 629 (4th Dist. 1963)

Here, Plaintiff Mendez seeks to have the transaction declared an equitable mortgage, yet does not allege the necessary facts to support that theory. First, Mendez does not allege that the deed given to Siebert Group was not absolute on its face and presumably cannot. Moreover, there was no debt owed by Mendez to Siebert Group, Ischkum, GSF Mortgage or any other defendant before or at the time of the closing. The deed was not used as security for the payment of a debt owed by Mendez. The lease signed at closing created only a future obligation of monthly rent payments, not an obligation for payment of a pre-existing debt. Mendez's agreement is not the basis of an equitable mortgage. *Havana Nat. Bank*, 32 Ill.App.3d at 585.

At its most basic requirement, for a deed to operate as a mortgage there must be a debt or legal liability owing between the owner or grantor of the real estate to the grantee, which debt must be due upon a specific date or at a time which could be rendered definite, and the rights of the parties must be reciprocal in that there must be a continuation of the debt which the purported mortgagee could enforce. *Robison v. Moorefield,* 347 Ill.App. 508, 107 N.E.2d 278; *Spies v. DeMayo*, 396 Ill. 255, 72 N.E.2d 316. Here, there was no debt owed by Mendez to Siebert Group which would be secured by an equitable mortgage and Count I must be dismissed.

**B. Plaintiff fails to state a claim for a quiet title action.**

Count II is an action to quiet title and is directed against Thomas Ischkum, Karen Ischkum, and GSF Mortgage. An action to quiet title is an equitable proceeding in which a party seeks to settle a dispute over the ownership of property or to remove cloud upon the title of that property. *Lakeview Trust and Sav. Bank v. Estrada*, 134 Ill.App.3d 792,812 (1st Dist. 1985). It is a fundamental requirement that a plaintiff must rely on the strength if his or her title in order to quiet title or remove a cloud on that title. *Id*. Thus, "where a person has no title in himself, he

cannot claim that there is a cloud upon that title". *Id. See also Ford v. Witwer*, 383 Ill. 511, 518 (1943); *Klingel v. Kehrer*, 81 Ill.App.3d 431,439 (5th Dist. 1980).

Here, in her request for relief, Plaintiff makes conclusory and self-serving statements regarding an ownership interest in the property. Plaintiff states that, "[b]ecause Defendant Siebert Group had only an equitable mortgage interest in the property, their attempt to transfer title to Thomas Ischkum and Karen Ischkum is void." Complaint ¶ 29. Plaintiff makes this argument although Plaintiff signed a warranty deed, Option to Purchase, and lease. Complaint ¶ 18, 19. Despite having signed an Option to Purchase (which would denote that any ownership is void), Plaintiff continues to assert that because she remained on the property, admittedly as a tenant under the lease agreement with Ischkum, should serve as public notice such that GSF Mortgage and Thomas Ischkum and Karen Ischkum should have been aware of her interest in the property. Complaint ¶ 32. Plaintiff then asks this court to void the transfer of title from Siebert Group to Ischkum and to void the mortgage lien on the property executed by Thomas and Karen Ischkum. Plaintifff has not, however, successfully proven her title to the property, and because a plaintiff may not seek an action to quiet title or remove a cloud on title when that person has not title, Plaintiff's claim should fail and Count II should be dismissed.

**C. Plaintiff improperly asserts Defendants are "creditors" for purposes of TILA**

Count III is directed against Siebert Group and Phillip Siebert and alleges Truth and Lending Act violations based on the theory that defendants are "creditors" for the purposes of TILA. 12 C.F.R. § 226.2  As Siebert Group and Phillip Siebert are not "creditors", Count III of Mendez' Complaint must fail.

Both of Plaintiff's TILA claims are predicated on the assumption that Siebert Group and Phillip Siebert are "creditors". TILA defines a "creditor" as a "person who both (1) regularly

5

extends. . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the indebtedness or, if there is no such evidence of indebtedness, by agreement.  15 U.S.C. § 1602(f); *see also* 12 C.F.R. § 226.1(a)(17)(ii)(defining creditor as "[a] person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 monthly installments (not including a downpayment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract); *King v. Second City Construction Co.*, 1997 WL 627649 (N.D. Ill).

Here, Plaintiff nakedly asserts that Siebert Group and Phillip Siebert have violated TILA and demands that this court void the lien, rescind what Plaintiff declares to be not a deed but an "equitable" mortgage, award statutory damages of $2,000 under 15 U.S.C. 1640(a)(2), and award actual damages of $140,000 under 15 U.S.C. 1640(a)(1), all under the auspice that Siebert Group and Phillip Siebert are "creditors".  Plaintiff does not, however, even attempt to show how Siebert Group or Phillip Siebert fall under either or both of the requirements for being considered a "creditor".  Neither defendant regularly extends consumer credit nor is the person to whom the debt arising from the transaction is initially payable.  Plaintiff has therefore failed to show how Siebert Group or Phillip Siebert could be liable under TILA, and thus Count III  must fail.

### D.  Plaintiff improperly asserts Defendants are "creditors" for purposes of HOEPA

Count IV improperly alleges violations of the Home Ownership and Equity Protection Act against Siebert Group and Philip Siebert based on the faulty theory that Defendants are "creditors" and that the transfer of the deed was a "mortgage" that is covered by HOEPA.  Complaint ¶ 41, 44.  Again, Plaintiff makes several conclusory statements which begin with,

6

"Because Ms. Mendez's loan transaction is covered by the Home Ownership and Equity Protection Act…" and end with an alleged violation based on this faulty presumption. Complaint ¶ 41, 44.

As a threshold matter, Plaintiff must first prove that her transfer deed was actually a "mortgage", then she must satisfy that the alleged "mortgage" meets the definition of a "high-rate" transaction set forth under 15 U.S.C. 1602(aa). Only then can Plaintiff assert that this transaction is even covered by HOEPA, let alone declare violations of HOEPA. *Cunningham v. EquiCredit Corp. of Illinois*, 256 F. Supp.2d 785, 792 (N.D. Ill. 2003).

In order for a loan to qualify as a mortgage loan within the definition of 15 U.S.C. 1602 (aa), it must meet five requirements. *Lopez v. Delta Funding Corp.,* WL 1537755 at *5 (E.D.N.Y. 1998). These five requirements are: (1)the mortgage loans must be a "consumer credit transaction", as defined in 15 U.S.C. 1602(h); (2) the mortgage loan must be a "consumer credit transaction" with a "creditor" as defined in 15 U.S.C. 1602(f); (3) the mortgage loan must be secured by "the consumer's principle dwelling", as defined with reference to the definition of "dwelling" in 15 U.S.C. 1602(v); (4) the mortgage loan must be a second or subordinate residential mortgage, not a "residential mortgage transaction, a "reverse mortgage transaction", or an open interest credit plan; and (5) either of the following two parts must be satisfied: a) the annual percentage rate at the time of the transaction exceeds by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or b) the total points and fees payable by the consumer at or before the closing will exceed the greater of i) 8% of the total loan amount; or ii) $400.00. *Id.*

A quick glance through the five requirements leads to the easy conclusion that neither HOEPA nor alleged violations thereof is at issue in this case.  It has already been established in Section II, Part III of this Motion that Defendants do not fall under the category of "creditors" under 15 U.S.C. 1602(f).  Further, as was also supported earlier, Plaintiff did not take out a loan, and therefore fails to meet the requirement that the loan be a mortgage loan and also "*consumer credit transaction*" secured by the "*consumer's* principle place of dwelling" (emphasis added).  Again, as this transfer of deed was not a loan, it can therefore not considered a second or subordinate residential mortgage, nor does this court need to consider whether this deed meets the fifth requirement regarding percentage rates.  Plaintiff therefore fails to satisfy not just one, but all five of the requirements for this deed to be covered by HOEPA, and therefore Count IV of this Complaint must be dismissed.

**E.  Plaintiff fails to allege that Defendants are "distressed property purchasers"**

Count V alleges violations of the Mortgage Rescue Fraud Act based on the conclusory statement that defendants are "distressed property purchasers" as defined by 765 ILCS 940/5.  This Count is directed against Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum.

Here, again, Plaintiff makes the totally unfounded assumption that she falls under a category that entitles her to relief in the sum of tens of thousands of dollars.  In her Complaint at ¶ 27, Plaintiff declares that Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum are "distressed property purchasers" as defined under 765 ILCS 940/5.  However, looking to the statute, it is clear that in order for Defendants to be "distressed property purchasers", the property itself must be "distressed".  Under 765 ILCS 940/5 "distressed property" means "residential property consisting of 1 to 6 family dwelling units that is in foreclosure or at risk of loss due to

8

nonpayment of taxes, or whose owner is more than 90 days delinquent on any loan that is secured by the property."

The property in question does not fall under any one of these three circumstances.  First, as Plaintiff stated in her Complaint at ¶ 26, the property was never in foreclosure.  Next, Plaintiff does not allege that the property was at risk of loss for nonpayment of taxes.  Further, though Plaintiff's unemployment prevented her from making her January, February and March 2007 mortgage payments, Plaintiff did pay her December 2006 mortgage three weeks late and then paid her mortgage to Chase in its entirety at the March 16, 2007 closing.  The property therefore never had an owner that was more than 90 days delinquent in the payment of any loan secured by the property, and because it meets none of the three circumstances, it is not now nor was it ever "distressed property".  Defendants therefore fail to be "distressed property purchasers" as defined under the statute:  "Distressed property purchaser means any person who acquires any interest in fee of a distressed property while allowing the owner to possess, occupy or retain any present or future interest in fee in the property, or any person who participates in a joint venture or joint enterprise involving a distressed property."  765 ILCS 940/5.

Plaintiff is unable to state facts to support that the property in question is or was distressed property and is similarly unable to prove that defendants are distressed property purchasers.  For these reasons, Count V of Plaintiff's Complaint must be dismissed.

**F.  Plaintiff lacks factual basis for claim of unconscionability**.

Count VI alleges that Plaintiff's transfer of title to the Defendants was unconscionable due to a disparity in bargaining power.  It is directed against Siebert Group, GSF Mortgage, Philip Siebert, Thomas Ischkum and Karen Ischkum.

Where the issue of unconscionability is alleged, the party alleging the unconscionability has the burden of producing sufficient evidence to prove that unconscionability. *Reuben H. Donnelly Corp., v. Krasny Supply Co., Inc.*, 227 Ill.App.3d 414, 418-19 (1st Dist. 1991). "A contract is unconscionable when it is improvident, oppressive, or totally one-sided." *Streams Sports Club, Ltd. v. Richmond*, 99 Ill.2d 182,191 (1983). In determining whether a contract is unconscionable, the courts will look to gross disparity in bargaining power together with unreasonable terms that strongly favor one party. *Ahern v. Knecht*, 202 Ill.App.3d 709, 716 (2nd Dist. 1990). However, the "mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations." *Streams Sports Clubs, Ltd.*, 99 Ill.2d at 191.

Plaintiff puts forth three assertions in support of her allegation of unconsciounability: (1) Defendants have more experience in business and real estate matters than Plaintiff. Complaint ¶ 28; (2) the terms of the subject transaction (Plaintiff does not name which transaction) are one-sided and abusive. Complaint ¶ 29; and (3) Plaintiff was not provided a reasonable opportunity to understand the terms of the transaction and its consequences. Complaint ¶ 19.

Disparity of bargaining power is not enough to relieve a party of its contractual obligations. *Streams Sports Clubs, Ltd.*, 99 Ill.2d at 191. Here, although Defendants may have more experience than Plaintiff, as Plaintiff has never purchased real estate, Plaintiff had multiple experiences with refinancing her mortgage. Complaint ¶ 2, 13. Her claim that she did not understand the terms of the transaction nor its consequences is belied by the terms laid out in the Option to Purchase and lease agreement. See Exhibits B, D.

Plaintiff also claims that the terms of the transaction were one-sided and abusive, despite the fact that the transaction allowed Plaintiff to pay off her mortgage (payments for which were almost several months delinquent), to make payments to her other creditors, to repair her credit,

10

and to receive $8,863.00 in cash. Complaint ¶ 18. Plaintiff states as support for her unconscionability claim that, "… she was facing the possible loss of her family home." Complaint ¶ 28. Plaintiff, however, cannot simply shift her burden of financial responsibility onto Defendants because unemployment and "desperate financial circumstances" forced her to seek options other than re-financing her property for the fourth time. Complaint ¶ 13, 28.

Lastly, Plaintiff claims that she was not provided with reasonable opportunities to understand the consequences of the transaction. This seems to imply that Plaintiff, despite having signed the Option to Purchase agreement, was unaware that a default or inability to borrow would mean she could not purchase the property. Again, though Plaintiff may not consider herself as "unsophisticated in real estate matters" (Complaint ¶ 2), she has conducted three refinancing transactions in the last eleven years, and should therefore be reasonably expected to read and understand a one-page Option to Purchase contract and a standard lease agreement. Plaintiff has failed to meet her burden of proving that the transaction was one-sided and oppressive and therefore this Count should be dismissed.

### G.  Plaintiff fails to state the basis for a constructive trust.

Count VII seeks to have a constructive trust placed on the title. It is directed against Siebert Group, GSF Mortgage, Phillip Siebert, Thomas Ischkum and Karen Ischkum.

Plaintiff has failed to allege any wrongdoing on the part of Defendants such that this court should order that the severe action of a constructive trust be taken. A "constructive trust" is a chancery order which compels a person or entity unjustly holding property to convey it to the party to whom it justly belongs. *People ex rel. Hardigan v. Candy Club*, 149 Ill.App.3d 498, 502 (1st Dist. 1986). The complainant must make specific allegations of wrongdoing in order to seek a constructive trust. *Perry v. Wyeth*, 25 Ill.2d 250, 253, 184 N.E.2d 861 (1962).

The burden of proof required for imposing a constructive trust is an onerous one. "A constructive trust will not be imposed unless the complainant makes specific allegations of wrongdoing such as fraud, breach of fiduciary duty, coercion or mistake and grounds for imposition of trust are so clear, convincing, strong and unequivocal as to lead to only one conclusion." *Suttles v. Vogel*, 126 Ill.2d 186, 192, 533 N.E.2d 901 (1988). The mere existence of a confidential relationship or a fiduciary duty is not enough to seek a constructive trust. The complainant must show actual wrongdoing. *Id.* at 194.

Again Plaintiff fails to state facts to support a claim in that no facts allege either a confidential relationship or actual wrongdoing by any of the Defendants. Plaintiff makes the conclusory statement that Plaintiff and Thomas Ishkum had a "confidential relationship, which imposed fiduciary duties of loyalty and honesty on Mr. Ischkum." Complaint ¶ 31. Plaintiff seems to infer that because Ischkum helped her refinance several years ago, that that gave rise to a fiduciary duty as a matter of law. Complaint ¶ 29. It does not. *See Anderson v. New Dimension Financial Services, L.P.*, 2001 WL 883700 at 11 (N.D. Ill. 2001); *Taylor Bean & Whitaker Mortgage Corp., v. Cebulak*, 2004 WL 2106605 (N.D. Ill. 2004).

In order for Plaintiff's claim to be successful, she would have had to first show, with more than merely conclusory statements, that her relationship with not just Ischkum, but with all of the Defendants against whom she directed this Count, gave rise to a fiduciary duty. Plaintiff failed to show how her relationship with the other named Defendants gave rise to a fiduciary duty. She would have then had to specify the wrongdoing by each party. Plaintiff instead made general statements that Defendants "…breached their fiduciary duties of loyalty by obtaining title…" and that Defendants have been "…unjustly enriched by receiving money and property…" Complaint ¶ 33. A constructive trust cannot be imposed unless both a relationship

12

between the parties that would give rise to a fiduciary duty has been established and specific allegations of wrongdoing are made. Plaintiff has failed to meet either one of these requirements, and therefore this Count should be dismissed.

**H.  Plaintiff fails to assert the existence of any fiduciary duty owed to her.**

Similar to Count VII, Count VIII alleges a breach of fiduciary duty based on a "confidential" relationship. It is directed against GSF Mortgage and Thomas Ischkum. Plaintiff fails to allege facts sufficient to establish a fiduciary duty between either Thomas Ischkum and Plaintiff or GSF Mortgage and Plaintiff and therefore this claim should be dismissed.

In order to state a claim for a breach of fiduciary duty, it must be alleged that: (1) a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the plaintiff complains. *Neade v. Portes*, 193 Ill.2d 433, 444, 739 N.E.2d 496, 503 (2000). A fiduciary duty may exist as a matter of law, such as in an attorney-client relationship, in a guardian-ward relationship or in an principal-agent relationship. *Apple v. Apple*, 407 Ill. 464, 469 (1950). Where the duty does not exist as a matter of law, the facts from which the relationship exists must be shown by clear and convincing evidence. *Id.* The principal agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability. *Santana v. State Board of Elections*, 371 Ill. App. 3d 1044, (1st Dist. 2007). The relationship must be consensual. *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538 (1st Dist. 2005).

Here, Plaintiff nakedly asserts that a fiduciary duty existed based on an alleged "confidential relationship", and not even as a borrower-broker relationship. Complaint ¶ 28, 63. Plaintiff does not allege an agency relationship. Plaintiff alleges no facts regarding the rights,

13

duties and powers of Plaintiff and Ischkum or GSF Mortgage. There is no basis upon which to find the existence of an agency or fiduciary duties. Plaintiff has therefore failed to adequately plead a claim for breach of fiduciary duty and Count VIII must be dismissed with regard to both Ischkum and GSF Mortgage.

**I.  Plaintiff improperly and on faulty basis seeks relief under the ICFA**

The allegations contained in Count IX against Siebert Group, GSF Mortgage, Phillip Siebert, and Thomas Ischkum consist of legal conclusions and self serving statements that have no factual basis and that fail to meet the particularity and specificity that is required for pleadings of fraud under Rule 9(b).

The elements of a claim under ICFA are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Siegel v. Levy Organization Development Co.,* 153 Ill.2d 534, 542, 607 N.E.2d 194 (1992).

A violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud. *Connick v. Suzuki Motor Co, Ltd.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1997). To allege sufficient facts for a common law fraud claim, the plaintiff must plead with particular and specific facts from which fraud is the necessary or probable inference. *Id.* The allegations must include what misrepresentations were made, when they were made, who made them and to whom they were made. *Id.* Although reliance is not an element of statutory consumer fraud, a valid claim must show that the consumer fraud proximately caused plaintiff's injury. *Id.*

Here, Plaintiff's allegations lack the required specificity under the pleading standard for claims based on fraud under Rule 9(b). Plaintiff alleges (a) that Defendants failed to disclose

14

that Ischkum would purchase the property; (b) that Defendants inferred that Plaintiff transaction would help Plaintiff improve her credit so that she could repurchase the house; and (c) that the transaction was structured knowing that default was inevitable.  Complaint ¶ 31. Throughout her Complaint, Plaintiff repeatedly states that she was not aware Siebert Group would sell the property to Thomas Ischkum.  Complaint ¶ 15, 18, 31. However, it is not relevant to whom Siebert Group sold the property it bought from Plaintiff.

With regard to the purported misstatement that the transaction would improve Plaintiff's credit score, the natural inference from the transaction is that Plaintiff's credit score was objectively improved by the transaction since part of the proceeds went to paying her mortgage and debts to other creditors and also to fixing her credit score.  Complaint ¶ 18.  Plaintiff next complains that the transaction was structured so that default was inevitable.  However, by remaining unemployed, Plaintiff herself ensured that default was inevitable.  It is quite obviously Plaintiff's responsibility, and not Defendant's, to know what she can and cannot afford in the future.

Here, and throughout her Complaint, Plaintiff states that Defendants should have known that she could not afford to make rental payments (Complaint ¶ 22), that Defendants should have known that they had a much better understanding of real estate and financial matters, (Complaint ¶ 25), and that Defendants should have known that she stood to lose the equity in the property (Complaint ¶ 23, 31).  However, these bare assertions do nothing to further her allegations of consumer fraud and are, in essence, nothing more than attempts by Plaintiff to shift her burden of financial responsibility onto Defendants.  For these reasons, Plaintiff's Count IX must fail.

**IV. Conclusion**

      WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Honorable Court dismiss Plaintiff's Complaint for failure to plead any cause of action.

      Respectfully submitted,
SIEBERT GROUP 1, LLC-S.G. SERIES, GSF MORTGAGE CORPORATION, PHILLIP SIEBERT, as owner and in his individual capacity, THOMAS ISCHKUM, and KAREN ISCHKUM

Dated: March 25, 2008

By: \_\_\_\_/s/ Nazia J. Hasan_____
      One of their attorneys

Raymond J. Ostler
Nazia J. Hasan
Gomberg, Sharfman, Gold & Ostler, P.C.
208 South LaSalle St., Suite 1200
Chicago, Illinois 60604
(312) 332-6194
fax (312) 332-4083

CERTIFICATE OF SERVICE

      I, Nazia J. Hasan, certify that, service of this document was accomplished pursuant to Rule 5(b)(2)(D) and Local Rule 5.9 through the District Court's electronic filing system ("ECF") which will send notice electronically to counsel registered to receive such notice on March 25, 2008.

                                            /s/ Nazia J. Hasan