**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON**

| | |
|---|---|
| PATRICIA MENDEZ,            )<br>                            )<br>    Plaintiff,              )<br>                            )<br>    v.                      )<br>                            )<br>SIEBERT GROUP 1, LLC-S.G. SERIES 4,    )<br>PHILLIP SIEBERT, as owner and in his individual )<br>capacity, THOMAS ISCHKUM, KAREN ISCHKUM, )<br>GSF MORTGAGE CORPORATION, MORTGAGE )<br>ELECTRONIC REGISTRATION SYSTEMS, INC., )<br>COUNTRYWIDE HOME LOANS, INC., and )<br>UNKNOWN OCCUPANTS AND NONRECORD )<br>CLAIMANTS,                  )<br>                            )<br>    Defendants.             ) | Case No. 08 C 1216<br><br>Judge Shadur<br>Presiding |

**DEFENDANTS' 12(b)(6) AND 9(b) MOTION TO DISMISS**

Defendants SIEBERT GROUP 1, LLC-S.G. SERIES, GSF MORTGAGE CORPORATION, PHILLIP SIEBERT, as owner and in his individual capacity, THOMAS ISCHKUM, and KAREN ISCHKUM, (hereinafter "Defendants") by and through their attorneys, Gomberg, Sharfman, Gold and Ostler, P.C., respectfully move this court to dismiss the Complaint of Plaintiff, Patricia Mendez, ("Plaintiff") pursuant to Rules 12(b)(6) and 9(b). In support hereof, Defendants state as follows:

**I. Overview**

Plaintiff brings a nine-count complaint alleging that she was a victim of fraud and various other violations arising out of her transfer of title to her home located at 366 N. Central, Wood

Dale, Illinois (the "property"). Defendants move to dismiss Plaintiff's complaint for its failure to state any plausible claim upon which relief can be granted.

## II.  Plaintiff's Complaint

Plaintiff alleges that she was the owner of the property commonly known as 366 N. Central Ave., Wood Dale, Illinois.  Compl. ¶ 10.  Plaintiff could not make her $1054.20 mortgage payment to her lender Chase.  Compl. ¶ 14.  Plaintiff contacted Thomas Ischkum, a loan originator through whom she had conducted three mortgage refinance transactions since 1997.  Compl. ¶ 12, 13.  Plaintiff then received a visit from Pat Cardoni, a real estate agent, who told her he worked with Ischkum; Cardoni explained he would help sell her house but provide that she could rent it back, with an option to repurchase.  Compl. ¶ 15.

Plaintiff attended the real estate closing on March 16, 2007.  Compl. ¶ 17. Plaintiff did not bring a lawyer to the closing.  Compl. ¶ 17. Plaintiff signed a warranty deed and sold her property for $165,000 to Siebert Group.  Compl. ¶ 18.  This $165,000 was dispersed as follows: a) $108,632 to Chase to pay off Mendez' mortgage; b) $10,500 to WMC to pay for repairs; c) $11,035.89 to Siebert Group for pre-paid rent; d) $550 "document preparation fee" to counsel at Siebert Group; e) $9,900 real estate commission to Home Buyers Realty; f) $8,863 cash to Plaintiff; g) $958 to Nationwide Credit Clearing for credit repair; and h) $8707.62 to several of Plaintiff's other creditors, including credit card companies.  At the closing, Plaintiff signed an Option to Purchase Contract.  Compl. ¶ 19.  The Contract (attached to Complaint as Exhibit B) stated that if Mendez wished to purchase the property, the property price would be $218,000.  It also stated that rent would initially be paid to Siebert Group (for less than one month) and would thereafter be payable to Thomas Ischkum. Compl. ¶ 19

2

**III. Argument**

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a). This Rule is designed to "give the defendant fair notice of what the . . . claim is **and the grounds on which it rests.**" *Conley v. Gibson,* 355 U.S. 41, 47 (1957) (emphasis added). In its most recent term, the United States Supreme Court held that the mandate to allege the grounds on which the claim for relief rests "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. , 127 S. Ct. 1965 (May 21, 2007). Thus, while a court must accept the allegations of the Complaint as true for purposes of deciding a motion to dismiss,[1] "[c]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* citing *Papasan v. Attain,* 478 U.S. 265, 286 (1986). The *Bell Atlantic* standard of plausibility should guide the resolution of this Motion and Plaintiff's complaint should be dismissed.

"To survive Rule 12(b)(6) scrutiny, the complaint must (1) put the defendants on 'fair notice of what the ... claim is and the grounds upon which it rests' (Rule 8(a)) and (2) plausibly suggest that plaintiff has a right to relief." *Brown v. County of Cook*, --- F.Supp.2d ----, 2008 WL 902938, N.D.Ill., April 04, 2008 (No. 06 C 617) citing *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.2007), citing and quoting *Bell Atl. Corp. v.Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1964-65, 1973 n. 14, 167 L.Ed.2d 929 (2007)).

Because different legal theories do not multiply the number of claims for relief and because one set of facts producing one injury creates one claim for relief, Plaintiff's complaint should be dismissed because she has failed to state a claim. *NAACP v. Amer. Family Mut. Ins.*

---

[1] *See, e.g., Cler v. Ill. Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir. 2005) (citing *General Elec. v. Lease Resolution,* 128 F.3d 1074, 1080 (7th Cir.1997)).

*Co.*, 978 F.2d 287, 292 (7th Cir. 1992). Plaintiff plows "the same factual field over and over again" to allege her multiple causes of action, which results in a lengthy and repetitive series of allegations.  See *Al-Dabbagh v. Greenpeace, Inc.*, 1995 WL 9426 at *3 (N.D. Ill. 1995).  To distill Plaintiff's nine-count complaint to her basic claims for relief, it appears that Plaintiff has three separate legal theories for her claims for relief: (1) a title claim that revolves around the theory of an equitable mortgage; (2) tort claims; and (3) a contract claim. The first of these claims also contain a subset of statutory claims derived from lending laws.

### I. Plaintiff Fails to Make Proper Title Claim

At the heart of Plaintiff's complaint lies the legal theory of an equitable mortgage, from which many of her other claims derive. Plaintiff's allegations of an equitable mortgage, however, are deficient. As far back as 1875 the Illinois Supreme Court held that "where it appears the parties really intend an absolute sale and a contract allowing the vendor to repurchase, such intention must control." *Hanford v. Blessing*, 80 Ill. 188 (1875).  There is a strong presumption that a deed absolute on its face is not an equitable mortgage, and such presumption can only be overcome by clear and convincing evidence.  *Havana Nat. Bank v. Wiemer*, 32 Ill.App.3d 578, 335 N.E.2d 506 (3rd Dist. 1975).  A deed will only be treated as an equitable mortgage in the event that the deed serves as security for a debt incurred at or before the conveyance owed by the grantor to the grantee. *Stamberg v. Hiller*, 41 Ill.App.2d 229, 190 N.E.2d 627, 629 (4th Dist. 1963).

Here, Plaintiff Mendez seeks to have the transaction declared an equitable mortgage, yet does not allege the necessary facts to support that theory.  First, Mendez does not allege that the deed given to Siebert Group was not absolute on its face and presumably cannot.  Moreover,

4

there was no debt owed by Mendez to Siebert Group, Ischkum, GSF Mortgage or any other defendant before or at the time of the closing.  The deed was not used as security for the payment of a debt owed by Mendez.   The lease signed at closing created only a future obligation of monthly rent payments, not an obligation for payment of a pre-existing debt.   Mendez's agreement is not the basis of an equitable mortgage.  *Havana Nat. Bank*, 32 Ill.App.3d at 585.

At its most basic requirement, for a deed to operate as a mortgage there must be a debt or legal liability owing between the owner or grantor of the real estate to the grantee, which debt must be due upon a specific date or at a time which could be rendered definite, and the rights of the parties must be reciprocal in that there must be a continuation of the debt which the purported mortgagee could enforce. *Robison v. Moorefield,* 347 Ill.App. 508, 107 N.E.2d 278 (2nd Dist. 1952); *Spies v. DeMayo*, 396 Ill. 255, 72 N.E.2d 316 (1947).

The Court in *Spies v. DeMayo* found that the payment of plaintiff's debts by the defendant at closing did not constitute a debt owed by plaintiff to defendant to support his equitable mortgage claim.  *Id.* at 271.  Like Siebert Group in the present case, the defendant in *Spies* paid off plaintiff's mortgage and other debts at the time of closing.  *Id.* at 265.  According to the Illinois Supreme Court this was not by itself a debt which could support an equitable mortgage claim.  *Id.* at 270-271. Here, there was no debt owed by Mendez to Siebert Group which would be secured by an equitable mortgage and the title claims must be dismissed.

    A.    <u>Plaintiff's Statutory Claims Derived From the Title Claim Cannot Survive Because Defendants Are Not Creditors</u>

Continuing to plow over the same field, Plaintiff recites the same facts to claim her injury, but Plaintiff adds in one or two facts to assert claims under the Truth and Lending Act

5

("TILA")[2] and the Home Ownership and Equity Protection Act ("HOEPA")[3]. The claims derive from the legal theory that Plaintiff has an equitable mortgage, which Plaintiff has failed to plausibly allege. Nonetheless, these statutory claims for relief fail for another reason: the Defendants are not "creditors" for the purposes of TILA or HOEPA. 12 C.F.R. § 226.2.

Both of Plaintiff's claims are predicated on the assumption that Siebert Group and Phillip Siebert are "creditors". TILA defines a "creditor" as a "person who both (1) regularly extends. . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the indebtedness or, if there is no such evidence of indebtedness, by agreement. 15 U.S.C. § 1602(f); *see also* 12 C.F.R. § 226.1(a)(17)(ii)(defining creditor as "[a] person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 monthly installments (not including a downpayment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract); *King v. Second City Construction Co*., 1997 WL 627649 (N.D. Ill 1997).

Mendez makes no allegation that Siebert Group or Phillip Siebert may be a "creditor" except in paragraph 37, where, without support, Mendez concludes that Siebert Group is a creditor because the "transaction was covered by HOEPA and was brokered." Compl. ¶37. Plaintiff nakedly asserts that Siebert Group and Phillip Siebert have violated TILA and demands that this court void the lien, rescind what Plaintiff declares to be not a deed but an "equitable" mortgage, award statutory damages of $2,000 under 15 U.S.C. 1640(a)(2), and award actual damages of $140,000 under 15 U.S.C. 1640(a)(1), all under the auspice that Siebert Group and

---

[2] *See* Truth in Lending Act, 15 U.S.C. 1601 *et seq.*
[3] *See* Home Ownership and Equity Protection Act 15 U.S.C. 1639 *et seq.*

6

Phillip Siebert are "creditors". Plaintiff does not, however, allege how Siebert Group or Phillip Siebert meet either or both of the requirements for being considered a "creditor". Neither defendant regularly extends consumer credit and clearly Phillip Siebert is not the person to whom the debt arising from the transaction is initially payable. Again, Plaintiff makes several conclusory statements which begin with, "Because Ms. Mendez's loan transaction is covered by the Home Ownership and Equity Protection Act…" and end with an alleged violation based on this faulty presumption. Compl. ¶ 41, 44. Plaintiff has therefore failed to show how Siebert Group or Phillip Siebert could be liable under TILA, and thus Count III must fail.

With respect to HOEPA, as a threshold matter, Plaintiff must plausibly allege that her transfer deed was actually a "mortgage", then she must satisfy that the alleged "mortgage" meets the definition of a "high-rate" transaction set forth under 15 U.S.C. 1602(aa). Only then can Plaintiff assert that this transaction is covered by HOEPA, let alone declare violations of HOEPA. *Cunningham v. EquiCredit Corp. of Illinois*, 256 F. Supp.2d 785, 792 (N.D. Ill. 2003).

In order for a loan to qualify as a mortgage loan within the definition of 15 U.S.C. 1602 (aa), it must meet five requirements. *Lopez v. Delta Funding Corp.,* WL 1537755 at *5 (E.D.N.Y. 1998). The Complaint fails to meet at least three of these requirements, which are: (1) the mortgage loans must be a "consumer credit transaction", as defined in 15 U.S.C. 1602(h); (2) the mortgage loan must be a "consumer credit transaction" with a "creditor" as defined in 15 U.S.C. 1602(f); and (3) the mortgage loan must be a second or subordinate residential mortgage, not a "residential mortgage transaction, a "reverse mortgage transaction", or an open interest credit plan. See *Lopez* at *5.

A quick glance through these requirements leads to the conclusion that neither HOEPA nor alleged violations thereof is at issue in this case. As argued above, Defendants do not fall

7

under the category of "creditors" under 15 U.S.C. 1602(f).  Further, as discussed previously, Plaintiff did not take out a loan, and therefore fails to meet the requirement that the loan be a mortgage loan and also "*consumer* credit transaction" secured by the "*consumer's* principle place of dwelling" (emphasis added).  Finally, even if the Court rejects all the previous arguments, then it must accept as true the allegations that the Mendez "mortgage" is a first lien on the property and therefore HOEPA would not apply.  Plaintiff therefore fails to satisfy not just one, but at least three of the requirements for this deed to be covered by HOEPA, and therefore Count IV of this Complaint must be dismissed.

      B.    <u>The Plaintiff's Statutory Claim Under the Mortgage Fraud Rescue Act Also Fails</u>

Plaintiff bootstraps yet another claim for relief out of the same set of facts, this time claiming that the Defendants are "distressed property purchasers" as defined by 765 ILCS 940/5.

In her Complaint at ¶ 27, Plaintiff declares that Siebert Group, Phillip Siebert, Thomas Ischkum and Karen Ischkum are "distressed property purchasers" as defined under 765 ILL. COMP. STAT. 940/5.  However, in order for Defendants to be "distressed property purchasers", the property itself must be "distressed" as defined under the statute.  Under 765 ILL. COMP. STAT. 940/5 "distressed property" means "residential property . . . that is in foreclosure or at risk of loss due to nonpayment of taxes, or whose owner is more than 90 days delinquent on any loan that is secured by the property."

The property in question does not meet the definition of "distressed property".  First, as Plaintiff stated in her Complaint at ¶ 26, the property was never in foreclosure.  Next, Plaintiff does not allege that the property was at risk of loss for nonpayment of taxes.  Finally, though Plaintiff did not make her January, February and March 2007 mortgage payments, Plaintiff did

pay her December 2006 mortgage payment and then paid off her mortgage to Chase in its entirety at the March 16, 2007 closing. Compl. ¶ 17. The property therefore never had an owner that was more than 90 days delinquent in the payment of any loan secured by the property. Therefore the property is not a "distressed property" as that term is defined by the statute. Defendants therefore do not meet the "distressed property purchasers" definition, which is as follows: "Distressed property purchaser means any person who acquires any interest in fee of a distressed property while allowing the owner to possess, occupy or retain any present or future interest in fee in the property, or any person who participates in a joint venture or joint enterprise involving a distressed property." 765 ILL. COMP. STAT. 940/5. Plaintiff is unable to state facts to support that the property in question is or was distressed property and is similarly unable to allege that defendants are distressed property purchasers.

### II.     Plaintiff's Tort Claims Are Improper

Plaintiff's second legal theory relies on allegations of tortiuous conduct based on a purported fiduciary duty that Defendants owe Plaintiff. These claims do not meet the standard of plausibility under the standard set forth in *Bell Atlantic* and therefore should be dismissed.

The tortiuous causes of action set forth in Plaintiff's complaint, which are titled constructive trust (Count VII), breach of fiduciary duty (Count VIII), and consumer fraud (Count IX), all derive from one set of facts and create only one injury. Plaintiff fails, however, to make the tort claim plausible because she has failed to allege necessary facts and merely alleges conclusory statements. Plaintiff's theory that Defendants owed her a fiduciary duty and therefore she is entitled to relief, however fails to support this claim and her tort claims should be dismissed.

Addressing the core of Plaintiff's argument, in order to state a claim for a breach of fiduciary duty, it must be alleged that: (1) a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the plaintiff complains. *Neade v. Portes*, 193 Ill.2d 433, 444, 739 N.E.2d 496, 503 (2000). A fiduciary duty may exist as a matter of law, such as in an attorney-client relationship, in a guardian-ward relationship or in a principal-agent relationship. *Apple v. Apple*, 407 Ill. 464, 469 (1950). Where the duty does not exist as a matter of law, the facts from which the relationship exists must be shown by clear and convincing evidence. *Id.* A principal agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability. *Santana v. State Board of Elections*, 371 Ill. App. 3d 1044, (1st Dist. 2007). The relationship must be consensual. *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538 (1st Dist. 2005).

Here, Plaintiff nakedly asserts that a fiduciary duty existed based on an alleged "confidential relationship", and not even as a borrower-broker relationship. Compl. ¶ 28, 63. Plaintiff does not even allege an agency relationship. Plaintiff alleges no facts regarding the rights, duties and powers of Plaintiff and Ischkum or GSF Mortgage. There is no basis upon which to find the existence of an agency or fiduciary duties. Plaintiff has therefore failed to adequately plead a claim for breach of fiduciary duty and the derivative tort claims should be dismissed as implausible.

Next, a "constructive trust" is a chancery order which compels a person or entity unjustly holding property to convey it to the party to whom it justly belongs. *People ex rel. Hardigan v. Candy Club*, 149 Ill.App.3d 498, 502 (1st Dist. 1986). The complainant must make specific allegations of wrongdoing in order to seek a constructive trust. *Perry v. Wyeth*, 25 Ill.2d 250,

10

253, 184 N.E.2d 861 (1962). "A constructive trust will not be imposed unless the complainant makes specific allegations of wrongdoing such as fraud, breach of fiduciary duty, coercion or mistake and grounds for imposition of trust are so clear, convincing, strong and unequivocal as to lead to only one conclusion." *Suttles v. Vogel*, 126 Ill.2d 186, 192, 533 N.E.2d 901 (1988). , Mendez has not alleged a plausible claim for constructive trust and this count should be dismissed.

The last tort claim, Plaintiff's claim of consumer fraud, consists of legal conclusions and self serving statements that have no factual basis and that fail to meet the particularity and specificity that is required for pleadings of fraud under Rule 9(b). The elements of a claim under the Illinois Consumer Fraud Act are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Siegel v. Levy Organization Development Co.,* 153 Ill.2d 534, 542, 607 N.E.2d 194 (1992).

A violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud. *Connick v. Suzuki Motor Co, Ltd.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1997). To allege sufficient facts for a common law fraud claim, the plaintiff must plead with particular and specific facts from which fraud is the necessary or probable inference. *Id.* The allegations must include what misrepresentations were made, when they were made, who made them and to whom they were made. *Id.* Although reliance is not an element of statutory consumer fraud, a valid claim must show that the consumer fraud proximately caused plaintiff's injury. *Id.*

Here, Plaintiff's allegations lack the required specificity under the pleading standard for claims based on fraud under Rule 9(b). Plaintiff alleges (a) that Defendants failed to disclose

11

that Ischkum would purchase the property; (b) that Defendants inferred that Plaintiff transaction would help Plaintiff improve her credit so that she could repurchase the house; and (c) that the transaction was structured knowing that default was inevitable. Complaint ¶ 31. Throughout her Complaint, Plaintiff repeatedly states that she was not aware Siebert Group would sell the property to Thomas Ischkum. Complaint ¶ 15, 18, 31. However, it is not relevant to whom Siebert Group sold the property it bought from Plaintiff.

With regard to the purported misstatement that the transaction would improve Plaintiff's credit score, the natural inference from the transaction is that Plaintiff's credit score was objectively improved by the transaction since part of the proceeds went to paying her mortgage and debts to other creditors and also to fixing her credit score. Complaint ¶ 18. Plaintiff next complains that the transaction was structured so that default was inevitable. However, by remaining unemployed, Plaintiff herself ensured that default was inevitable. It is quite obviously Plaintiff's responsibility, and not Defendant's, to know what she can and cannot afford in the future.

Here, and throughout her Complaint, Plaintiff states that Defendants should have known that she could not afford to make rental payments (Complaint ¶ 22), that Defendants should have known that they had a much better understanding of real estate and financial matters, (Complaint ¶ 25), and that Defendants should have known that she stood to lose the equity in the property (Complaint ¶ 23, 31). However, these bare assertions do nothing to further her allegations of consumer fraud and are, in essence, nothing more than attempts by Plaintiff to shift her burden of financial responsibility onto Defendants.

### III.     Plaintiff's Contract Claim for unconscionability is not plausible

Plaintiff's final legal theory is that the contract that she entered into with the Siebert Group is unconscionable.  Plaintiff, however, claims that Defendants Siebert Group, Phillip Siebert, Thomas Ischkum, Karen Ischkum, GSF Mortgage Corporation and Countrywide are all parties to her contract.

"A contract is unconscionable when it is improvident, oppressive, or totally one-sided." *Streams Sports Club, Ltd. v. Richmond*, 99 Ill.2d 182,191 (1983).  In determining whether a contract is unconscionable, the courts will look to gross disparity in bargaining power together with unreasonable terms that strongly favor one party.  *Ahern v. Knecht*, 202 Ill.App.3d 709, 716 (2nd Dist. 1990).  However, the "mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations." *Streams Sports Clubs, Ltd.*, 99 Ill.2d at 191.

Parties to a contract are not each others fiduciaries. *Original Great American Chocolate Cookie Co., Inc. v. River Valley*, 970 F.2d 273, 280 (7th Cir. 1992).  The doctrine of unconscionability is designed to prevent overreaching at the contract-formation stage and the presence of a "commercially unreasonable term, a term that no one in his right mind would have agreed to" may be relevant to drawing an inference of unconscionability but cannot be equated to unconscionability. *Id.* at 281.

Mendez seeks to argue that the contract was unconscionable; however, she mistakenly relies on a purported breach of a fiduciary duty in making her case.  Mendez states and then restates conclusions and not facts to support a claim of unconscionability.  See Compl. at Count VI.

Plaintiff also claims that the terms of the transaction were one-sided and abusive, despite the fact that the transaction allowed Plaintiff to pay off her mortgage (payments for which were

13

almost several months delinquent), to make payments to her other creditors, to repair her credit, and to receive $8,863.00 in cash. Complaint ¶ 18. Plaintiff states as support for her unconscionability claim that, "… she was facing the possible loss of her family home." Complaint ¶ 28. Plaintiff, however, cannot simply shift her burden of financial responsibility onto Defendants because unemployment and "desperate financial circumstances" forced her to seek options other than re-financing her property for the fourth time. Complaint ¶ 13, 28.

Lastly, Plaintiff claims that she was not provided with reasonable opportunities to understand the consequences of the transaction. This allegation is contrary to the allegations in Par. 15 wherein Plaintiff alleges that the exact terms she now claims were not understood, were in fact explained to her prior to, and in anticipation of, the closing by Pat Cardoni. This make implausible Plaintiffs allegation that she was unaware of the terms of her sale or the lease-back option.

It is a bedrock principle of contract law, that all parties to a contract are deemed to have read and understood its meaning and that it is each party's obligation to do so. *Melena v. Anheuser-Busch, Inc*., 219 Ill.2d 135 (2006). Plaintiff's allegations distinguish this case from one in which a party claims to have not read the contract and later is surprised at the terms buried in the agreement. Ms. Mendez had the nature of the agreement explained to her prior to the closing and she does not allege she did not read the documents at closing. This makes implausible the allegations that Plaintiff, despite having signed the Option to Purchase agreement, was unaware that a default or inability to borrow would mean she could not purchase the property. Again, though Plaintiff may not consider herself as "unsophisticated in real estate matters" (Complaint ¶ 2), she has conducted three refinancing transactions in the last eleven years, and should therefore be reasonably expected to read and understand a one-page Option to

Purchase contract and a standard lease agreement. Plaintiff has failed to meet her burden of proving that the transaction was one-sided and oppressive and therefore the contract claim should be dismissed.

### IV. Conclusion

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Honorable Court dismiss Plaintiff's Complaint for failure to plead any cause of action.

                                    Respectfully submitted,
                                    SIEBERT GROUP 1, LLC-S.G. SERIES, GSF MORTGAGE CORPORATION, PHILLIP SIEBERT, as owner and in his individual capacity, THOMAS ISCHKUM, and KAREN ISCHKUM

Dated: April 14, 2008

                                    By:    /s/ Nazia J. Hasan
                                             One of their attorneys

Raymond J. Ostler
Nazia J. Hasan
Gomberg, Sharfman, Gold & Ostler, P.C.
208 South LaSalle St., Suite 1200
Chicago, Illinois 60604
(312) 332-6194
fax (312) 332-4083

CERTIFICATE OF SERVICE

      I, Nazia J. Hasan, certify that, service of this document was accomplished pursuant to Rule 5(b)(2)(D) and Local Rule 5.9 through the District Court's electronic filing system ("ECF") which will send notice electronically to counsel registered to receive such notice on April 14, 2008.

                                                  /s/ Nazia J. Hasan