IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA MENDEZ,<br>    Plaintiff,<br><br>v.<br><br>SIEBERT GROUP 1, LLC-S.G. SERIES 4, et al.<br>    Defendants. | )<br>)<br>)  Case No. 08 C 1216<br>)  Judge Shadur<br>)  Presiding<br>)<br>)<br>) |

## **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER**

### **Statement of Facts**

Patricia Mendez is 61 years old and has resided in the house that her father built in 1944 at 366 N. Central Avenue, Wood Dale, Illinois for the majority of her life. Her mother deeded her the title to the house in March 1993 just before she passed away that November. Ms. Mendez moved back into her family home and has lived there continuously since.

In 1999, Ms. Mendez was contacted by one of the defendants, Thomas Ischkum, in his capacity as a mortgage broker for defendant GSF Mortgage about refinancing her mortgage. Mr. Ischkum was quite accommodating and showed up at her job during her lunch break to discuss her financing options. Ms. Mendez does not understand the complexities of real estate matters and indicated she changed her mind about entering into this transaction. However, Mr. Ischkum was able to assure her that he would manage the entire transaction for her since they were there to help. Ms. Mendez did not have to do much else besides attend the closing at Mr. Ischkum's

1

office. This being such a pleasant an uncomplicated transaction, Ms. Mendez contacted Mr. Ischkum again in October 2001 and December 2003 in order to refinance the mortgage. Each time, Mr. Ischkum took care of the details of the refinancing and all Ms. Mendez had to do was show up and sign where indicated.

In late 2006, Ms. Mendez was behind in her mortgage payments, and the payment she made in December 2006 was applied to November 2006. Having received assistance with no complications in the past, Ms. Mendez again contacted Mr. Ischkum for assistance, and he again assured her he would take care of it. This time, however, instead of arranging for a refinance, Mr. Ischkum initiated a series of transactions beginning with sending Pat Cardoni, a real estate broker, to her house to discuss the transaction. Ms. Mendez believed Mr. Cardoni worked for Mr. Ischkum and did not understand that he was a real estate broker. Since Ms. Mendez trusted Mr. Ischkum, because he had taken care of everything before, she agreed with what Mr. Cardoni presented. In all the previous transactions, when she had financial difficulties she called Mr. Ischkum, he handled everything and all she had to do was show up on the date she was told and sign the paperwork.

This complicated series of transactions differed from the others because, on March 16, 2007, Ms. Mendez had to transfer her property to Siebert Group. Mr. Ischkum is a broker for GSF Mortgage which is owned by Phillip Siebert, a member of Siebert Group. Siebert Group purchased the property from Ms. Mendez for $165,000. At that same time, Ms. Mendez executed an option to purchase and two leases for the property. Pursuant to the option to purchase and the first lease, she was to pay Siebert Group $1035.89 in rent for March and she had until October 6, 2008 to repurchase her property for $218,000. At the time of this sale-

leaseback transaction, Ms. Mendez was more than 90 days behind in her mortgage, as she owed her mortgage payment for December 2006 and January, February and March 2007.

The house was then appraised by GSF Mortgage for $250,000, on March 25, 2007. Siebert Group then, without Ms. Mendez's knowledge, transferred the house by warranty deed to Mr. Ischkum and his wife on April 6, 2007. Beginning April 6, 2007, by the terms of the second lease, Ms. Mendez's "rent" was $1557.15, minus $555.55 that was to be deducted each month from $11,000 held at the closing as pre-paid rent, for a total of $1001.60. After the Siebert Group transferred the property to Mr. and Mrs. Ischkum, Ms. Mendez had to pay the Ischkums rent of $1001.60 per month.

Ms. Mendez paid her rent from March until July. By August, 2007, Ms. Mendez was unable to afford her rent, as it was fairly equivalent to her previous mortgage payment for which she sought Mr. Ischkum's assistance. Mr. Ischkum filed a forcible entry and detainer action the very next month, in September 2007. That eviction case was dismissed without prejudice by Mr. Ischkum.

Plaintiff filed this action in DuPage County state court on January 24, 2008. The very next day, Mr. Ischkum filed a new forcible entry and detainer action against Ms. Mendez. While the cases were pending, plaintiff's counsel filed a motion to have the cases consolidated. However, before the motion on consolidation could be heard, the defendants removed the case to federal court. The state judge granted a stay of the eviction proceeding on March 26, 2008, and Ms. Mendez was ordered to pay use and occupancy of $1071.25 per month to Mr. Ischkum, on April 3, 2008. Ms. Mendez was unable to pay the use and occupancy and the forcible entry and detainer case is now set for trial on June 17, 2008.

**Argument**

I. Ms. Mendez satisfies the requirements of the anti-injunction statute.

Ms. Mendez is seeking a temporary restraining order from the Court to prevent the defendants from prosecuting a pending forcible entry and detainer action in state court. While both this action and an eviction action, as well as a motion to consolidate the actions, were pending in state court, defendants chose to remove this controversy to federal court.

The lawsuit that is before this Court raises among other issues, the question of Mr. Ischkum's interest in Ms. Mendez's residence and the relief that Ms. Mendez is entitled to if she prevails. It also involves the validity of the documents that effected the "sale and leaseback" including the lease which is the basis for Mr. Ischkum's forcible entry and detainer action in state court. Defendants have chosen to remove this controversy to federal court. Yet, defendant Ischkum, in pursuing the forcible entry and detainer action, is seeking resolution in a summary proceeding in state court of issues that he and the other defendants removed to this court. Forcible entry and detainer actions under Illinois law are recognized as summary proceedings in which a serious contest regarding title and the resulting right to possession cannot be fully tried. See Urbach v. Green, 15 Ill. App.2d 186, 188 (1st Dist. 1957). Defendant's maneuvering is an attempt to dispossess Ms. Mendez from her residence without any considerations of the claims she makes in this case. Ms. Mendez seeks to enjoin defendant Ischkum from proceeding with the eviction while her claims regarding the validity of the sale-leaseback transaction are pending in this Court.

A federal court may grant an injunction to stay proceedings in a state court where it is

expressly authorized by act of Congress, where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. 28 U.S.C. § 2283. "Where necessary in aid of its jurisdiction" has been construed to refer to *in rem* proceedings in which two courts are vying over jurisdiction of the same res. Universal Business Computing Co. v. Comprehensive Accounting Corp., 539 F.Supp. 1142, 1144 (N.D. Ill. 1982).

An action to quiet title is an *in rem* proceeding. 40235 Washington Street Corp. v. Lusardi, 976 F.2d 587, 589 (9th Circuit 1992). See also Lohmyer v. Durbin, 206 Ill. 574, 581 (Ill. 1903)(proceeding to foreclose an equitable mortgage is *in rem)*. In proceedings *in rem* or *quasi in rem*, the court first assuming jurisdiction of the property at issue has exclusive jurisdiction to proceed. 40235 Washington Street Corp. v. Lusardi, 976 F.2d 587 at 589. It is well settled that a federal district court with prior jurisdiction of a suit *in rem* may issue an injunction to prevent any interference with its possession of the res, or "its effectual determination of the issues, rights and remedies involved in the litigation." Green v. Green, 233 F.2d 642, 644 (7th Cir. 1956). Ms. Mendez's complaint seeks to quiet title, invalidate the sale-leaseback transaction, and maintain possession of her home. She filed this action before defendant Thomas Ischkum filed the eviction action. Thus, the court hearing Ms. Mendez's complaint has exclusive jurisdiction to proceed in actions regarding the property. While Ms. Mendez initially filed her complaint in state court, defendants removed the case to federal court, which now has exclusive jurisdiction over the property at issue.

The "in aid of its jurisdiction" exception to the anti-injunction statute has also been more broadly defined as authorizing a stay where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the court's

flexibility and authority to decide that case." Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 389 U.S. 281, 295 (1970).

Courts have used this exception to stay state court proceedings, including eviction actions, while a federal action is pending. The U.S. District Court for the Southern District of New York relied on this exception to stay state court eviction actions while the tenants were challenging the New York City Housing Authority's policies. McNeill v. NYCHA, 719 F.Supp. 233 (S.D.N.Y. 1989). The court noted that unless eviction actions were stayed long enough for the federal claims to be resolved, the plaintiffs would be evicted before the case would be decided "and the court will be unable to accord meaningful relief to the parties." McNeill, 719 F.Supp. 233 at 256. The stay was granted because it was "essential to aid [the] Court's ability to decide the claims and accord the appropriate relief." Id. This same exception has also been used to enjoin state court-ordered sales of property. Piper v. Portnoff, 262 F.Supp. 2d 250 (E.D. Penn. 2003) (enjoining sale of home resulting from nonpayment of fees so that owner could pursue federal Fair Debt Collection Practices Act claim regarding fees).

Another exception to the anti-injunction statute is applicable to removed cases. A traditional application of the "necessary in aid of jurisdiction" exception also includes "removal cases (where a district court must ensure its exclusive government of the particular litigation removed). . ." 1975 Salaried Employees Retirement Plan for Eligible Employee of Crucible, Inc. v. Nobers, 968 F.2d 401, 407 (3rd Cir. 1992). Alternatively, the exception for removed cases could derive from the "expressly authorized by act of Congress" language of 28 U.S. § 2283 because the federal removal statute specifically provides that a state court cannot proceed once a case has been removed. 1975 Salaried Employees Retirement Plan for Eligible Employee of

Crucible, Inc. v. Nobers, 968 F.2d at 407 (citing Mitchum v. Foster, 407 U.S. 225, 234 (1972)). Regardless of the source of the exception, it applies in this case because the injunction is necessary to preserve the federal court's exclusive jurisdiction over the litigation. In this case, the defendants chose to remove this action before it could be consolidated with the eviction action. As a result, the eviction action, which involves the same facts and controversy as the removed action, remains in state court. Defendant Thomas Ischkum is attempting to proceed with an eviction action based on a lease, the validity of which is at issue in this action. Thus, an injunction is required here to preserve the federal court's exclusive jurisdiction over the removed case.[1]

---

[1] The *Younger v. Harris* doctrine does not apply here. As described by the Seventh Circuit in *Freeeats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (2007), *Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings. Here, plaintiff has not sought out a federal forum, defendants removed the controversy to federal court. Plaintiff does not challenge any state law or regulatory provision. This case involves private, non-governmental interests only. In this motion, plaintiff only seeks to enjoin consideration by the state forum of the controversy defendant has removed to federal court. See also, *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007)(*Younger* abstention is appropriate only when the federal plaintiff is contesting a state law and there is an action in state court against the federal plaintiff and the state is seeking to enforce the law [the plaintiff contests in the federal proceeding] in that proceeding").

II. Ms. Mendez meets the requirements for a temporary restraining order.

The Court of Appeals for the Seventh Circuit has established the standards that must be met to obtain emergency relief. In <u>Abbott Laboratories v. Mead Johnson & Co.</u>, 971 F. 2d 6, 11 (7th Cir. 1992), the court stated that as a "threshold matter" a party seeking such relief must demonstrate "(1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law" and will suffer 'irreparable harm' if preliminary relief is denied." If the moving party can meet those prerequisites the court is to consider (3) the irreparable harm to the non-moving party if the relief is granted balancing it against the irreparable harm to the moving party if the relief is denied and (4) the public interest, "meaning the consequences of granting or denying the injunction to non-parties. *See*, <u>Promatek Industries, LTD v. Equitrac Corp.</u>, 300 F.3d 808, 811 (7th Cir. 2002), <u>Roland Machinery v. Dresser</u>, 749 F.2d 380, 382-384 (7th Cir. 1984). These decisions have further explained that a "sliding scale approach is properly utilized so that the greater the balance of irreparable harm is to the moving party over the non-moving party, the less is the burden on the plaintiff to demonstrate probability of success on the merits. <u>Abbott Laboratories v. Mead Johnson & Co.</u>, 971 F.2d at 12. As discussed below, these standards are met in this case.

    A. Likelihood of Success on the Merits: An equitable mortgage and violations of the Illinois Mortgage Rescue Fraud Act

Ms. Mendez contacted her mortgage broker, Thomas Ischkum, when she fell behind in her mortgage payments in late 2006. She contacted him because in the past, when she was having trouble making her payments, he assisted her with refinancing her mortgage. However, in 2007, instead of refinancing, Mr. Ischkum arranged the subject sale-leaseback transaction, with

an option to repurchase. Under Illinois law, not every deed conveys title. 765 ILCS 905/5. There are several factors to consider when deciding whether a transaction constituted an equitable mortgage and not a transfer of title, including, but not limited to: the existence of a debt, the close relationship of the parties, the circumstances surrounding the transaction, the disparity of the situations of the parties, the inadequacy of consideration, and an agreement to repurchase. McGill v. Biggs, 105 Ill.App.3d. 706, 708 (3rd Dist. 1982). Several of these factors are present in this case, including the relationship between Ms. Mendez and Mr. Ischkum (her trusted mortgage broker), the fact that she contacted him to refinance her mortgage as she had done in the past, the fact that the house was purchased for $165,000, but its fair market value was $250,000, and the existence of an option to repurchase that gave Ms. Mendez the right to buy back the house. Ms. Mendez can show that the 2007 transaction was an equitable mortgage and that she remains the title holder. As the transaction was an equitable mortgage, Ms. Mendez was entitled to receive certain notices and disclosures pursuant to federal lending laws and regulations. Defendants violated the Truth in Lending Act (TILA) and the Home Ownership and Equity Protection Amendment to TILA (HOEPA) when they did not provide these notices or disclosures.

Furthermore, defendants violated the Illinois Mortgage Rescue Fraud Act (MRFA) when they entered into the transaction with Ms. Mendez. Ms. Mendez's house was a "distressed property" as defined by the act because she was more than 90 days behind in her mortgage on the date of the transaction.[2] See Exhibit A, Chase mortgage payment history. The MRFA requires

---

[2]While the complaint indicates that Ms. Mendez paid her December 2006 mortgage payment but paid it late, recently acquired documents show that the mortgage was already in arrears and the December payment was applied to November. Thus, in March 2007, plaintiff had

that distressed property purchasers provide the owner with a distressed property conveyance contract and a notice of a right to rescind. 765 ILCS 940/25, 765 ILCS 940/30, and 765 ILCS 940/40. Ms. Mendez did not receive either document.

The MRFA also requires the purchaser to ensure that the seller receives 82% of the value of the home or establish the repurchase price at 125% of the purchaser's cost. 765 ILCS 940/50(b)(2). Here, the property appraised for $250,000 a week after the sale-leaseback transaction. However, the sale price of the home was $165,000, and even assuming Ms. Mendez received all of the $165,000, that is only 66% of the fair market value. Additionally, the repurchase price was set for $218,000, which is 132% of their cost to purchase ($165,000). See Exhibit B, Option to Purchase. Ms. Mendez can therefore establish that defendants violated the MRFA.

Moreover, defendants have filed two motions to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). This court has summarily denied both motions. Accordingly, plaintiff has a substantial likelihood of success on the merits of her claim under the MRFA and in her claim for an equitable mortgage.

B. Adequate Remedy at Law and Irreparable Injury

In Roland Machinery, the Seventh Circuit has explained that no adequate remedy at law exists when an award of damages at the end of trial will be "seriously deficient as a remedy for the harm suffered." 749 F.2d at 386. The Seventh Circuit has further stated that the requirement

---

not paid her mortgage in December, January, February or March, and the mortgage was therefore more than 90 days past due.

of irreparable harm is to ensure that even if the object of the lawsuit is equitable and therefore that there is no adequate remedy at law, that the moving party will suffer harm in the interim - "harm that cannot be prevented or fully rectified by the final judgment after trial." Id.

Ms. Mendez stands to suffer serious harm if the pending state court eviction action proceeds. If defendant Thomas Ischkum is successful in the eviction action, Ms. Mendez will be forced to vacate her home. "The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury." McNeill v. NYCHA, 719 F.Supp. 233, 254 (S.D.N.Y. 1989)  Ms. Mendez's forced removal from her home is not something that can be rectified by a final judgment after trial in a year or more. She will suffer irreparable injury for which there is no adequate remedy at law.

    C.    The Risk Ms. Mendez Faces Without Relief Through a Temporary Restraining Order and/or Preliminary Injunction Outweighs any Harm to defendants.

An order that allows Ms. Mendez to remain in her home far outweighs any harm faced by defendants. Ms. Mendez is a low-income senior citizen with limited resources. Mr. Ischkum is a business man, and both he and his wife are employed by GSF mortgage. Any financial harm Mr. Ischkum and his wife will suffer is minimal compared to Ms. Mendez's potential homelessness. Furthermore, any harm he suffers is the result of his own conduct.

    D. Effect on the Public Interest

The granting of preliminary relief - staying the state eviction action while the federal action is pending, would have no detrimental effect on the public. No widespread change to non-parties would result from staying the state court eviction action.

## Conclusion

For the above-stated reasons, plaintiff respectfully requests that this Court enter a temporary restraining order and/or preliminary injunction enjoining defendants from prosecuting state court eviction proceedings.

By: /s/ Elizabeth Newkirk Jahoda<br>
One of the attorneys for plaintiff

Prairie State Legal Services, Inc.
Elizabeth Newkirk Jahoda (#6283149)
Ana Collazo
Eliot Abarbanel
350 S. Schmale Rd., Suite 150
Carol Stream, IL 60188
(630) 690-2130