IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA MENDEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SIEBERT GROUP 1, LLC-S.G. SERIES 4, ) <br> PHILLIP SIEBERT, as owner and in his individual ) <br> capacity, THOMAS ISCHKUM, KAREN ISCHKUM, ) <br> GSF MORTGAGE CORPORATION, MORTGAGE ) <br> ELECTRONIC REGISTRATION SYSTEMS, INC., ) <br> COUNTRYWIDE HOME LOANS, INC., and ) <br> UNKNOWN OCCUPANTS AND NONRECORD ) <br> CLAIMANTS, ) <br> ) <br> Defendants. ) | Case No. 08 C 1216 <br> Judge Shadur <br> Presiding |

**SWORN DECLARATION OF THOMAS ISCHKUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to 28 U.S.C. §1746, Thomas Ischkum submits the following Declaration in Opposition to Plaintiff's Motion for Temporary Restraining Order:

1. At all times relevant to these proceedings I have been a Senior Vice President of GSF Mortgage, Corp. located in Schaumburg, Illinois. I am one of the Defendants in this action and the Plaintiff in a pending Forcible Entry Detainer Complaint in Du Page County, Illinois.

2. I had been involved in several loan refinances by Ms. Mendez starting in 1999. She and a co-owner, Jeff Norman, obtained refinances from GSF Mortgage Corp. in 2001 and 2003. My sole function was to provide information about the loan product, the processing of the loans and co-ordinate the closings. At no time did I provide any other advice to Ms. Mendez. Ms. Mendez relied upon the advice of her co-owner Jeff Norman regarding the refinance transactions.

2(sic) I was next contacted by Patricia Mendez on March 5, 2007 regarding a refinance. Mrs.

Mendez had first requested that her current lender refinance her existing mortgage but she was turned down. She then contacted me. She told me that her refinance request had been turned down because she had been late on some payments. She called me to see if GSF Mortgage Corporation could make her a new loan since her existing lender had declined to refinance.

3. On March 5, 2007 we took an application by phone and pulled her credit. All her credit scores were in the 400's which was too low to make her the loan she had requested.

4. I immediately contacted Ms. Mendez and told her that none of the banks we dealt with would provide her financing because of her low credit scores. I was unable to find her a loan.

5. Ms. Mendez asked if there were any other options. I explained to her that as far as financing or refinancing goes there were no other options. I did however offer to refer Ms. Mendez to Pat Cardoni at Home Buyers Realty Corp. ("HBRC") because he dealt with sales and also worked with investors that may or may not be able to help her. Ms. Mendez asked that I get Pat Cardoni to contact her so she could explore some options with them.

6. After the referral to Pat Cardoni I did not have any further contact with Ms. Mendez until some time later when Pat Cardoni contacted me and asked if I might like to buy the Mendez property, subject to her right to repurchase, from Siebert Group I, LLC. I did not participate in the discussions between Mr. Cardoni and Ms. Mendez regarding the sale and lease-back of her property. I never had any part of any negotiations. Ms. Mendez only dealt with Siebert Group and HBRC,

7. I was approached to purchase this property from Siebert Group. I was told that Siebert Group did not want any long term investment and was seeking a long term investor. My purchase was an investment under terms of a rent with option to repurchase (because Siebert Group purchased the property and was looking for investors to buy it from them). I thought

about it a couple days talked to my wife, checked our finances, and explored loan options and then my wife and I decided to buy it as an investment, under the terms that had been worked out between Siebert Group and Mendez.

8.  Although I had no further discussions with Ms. Mendez after putting her in contact with Pat Cardoni, my involvement in this transaction as the long term investor was disclosed to Ms. Mendez. If not beforehand, then at the closing Ms. Mendez signed a lease agreement to me because she knew I was in the process of buying the property from Siebert Group.

9.  The only reason I purchased the property is because I was assured by Cardoni/Siebert Group that Mendez had her son moving into the property with his girlfriend and they currently were paying $1,000 per month and between the 3 incomes they easily could make payments. With this steady source of income I believed that Ms. Mendez could greatly improve her credit scores, easily obtain approval for a new loan in 18 months and exercise her repurchase option.

10. Ms. Mendez did not rely on me for financial matters. On all her prior loans she was getting advice from someone, either her boyfriend who was on her loan or her son who was/and is dealing with her on this transaction.

11. Except for matters relating to her mortgage, I was never consulted about any financial decisions regarding her or her property. On her 1st loan in 1999 she did the application and closing by herself, after that she and her boyfriend took charge on two loans and for this current lease with an option she worked with her son. Most of all negotiating on the priors loans was done with her boyfriend as he called often to get more information and ask questions. In fact he was very interested in the way the loans were structured.

12. Ms. Mendez never sought my advice about financial matters other than prior loan refinancing. Ms. Mendez has never allowed me to make and personal or financial decisions for

her. So no, the notion of having me make her decisions is not true. I do not make financial decisions for any client. I make recommendations regarding mortgage loan products but only when the client qualifies for those products.

13. In this current situation I was not part of what she negotiated with the Siebert Group, I was not in the room, I had NO involvement in her negotiations at all.

**Hardship:**

14. I in good faith purchased this home from Siebert Group last year. Ms. Mendez and I understood that my purchase of the property would allow her a fresh start. She would erase her default to her existing lender, pay all of her existing creditors and fix the many problems in the home. She would be relieved of her obligation to pay $1,054.20 to Chase Home Finance and instead pay $1,001.60 in rent to me.[1] The rent obligation was made to mirror the expected rent to be paid to her from her son and his girlfriend.

15. I received only a few payments from Ms. Mendez and one them was only a partial payment. At his point I have not received a payment in 1 full year.

16. I had to increase the line of credit on my home just to keep up with the $1,557.00 mortgage payments on the property at 366 N. Central Ave., Wood Dale, Illinois.

17. As of this declaration I have paid over $18000.00 in mortgage payments. Ms. Mendez has received funds to repair her property and now lives in the property rent free, having shifted the burden of mortgage payments onto me and my wife.

---

[1] The actual rent payments are $1,557.15 per month to match the Ischkum loan payments. However in order to keep Ms. Mendez loan payments equivalent to the expected rent from her son and his girlfriend there was a "prepaid rent escrow" established at closing. Money was drawn from this escrow each month to add meet the total rent due.

18. I cant afford not getting any payments, and I plead with the court to please either let me collect payments as previously ordered by the Du Page court or let me rent out the property until this is all resolved.

19. This is and has been the biggest financial hardship for my family ever to endure, I have a wife and 2 young children, and I cannot afford this anymore.

20. Ms. Mendez has ignored the orders of the DuPage court to pay use and occupancy. No payments were made. Even with court orders I have not collected any rent and I am exhausting all my savings and equity in my current home as I extended my credit line to help pay this mortgage.

20. I thought finally a good agreement was made with the DuPage court for her to be able to pursue her claims as long as she paid to be in the property, but even then she does not pay, I collect no payments and I can no longer afford this property, and I am financially drained.

I declare under the penalty of perjury that the foregoing is true and correct.
Executed this 20th day of June, 2008 at Chicago, Illinois.

_____
Thomas Ischkum